# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNE NEALE, KERI HAY, KELLY MCGARY, SVEIN A. BERG, and GREGORY P. BURNS, individually and on behalf of others similarly situated, <br><br><br> Plaintiffs, <br><br> vs. <br><br> VOLVO CARS OF NORTH AMERICA, LLC, and VOLVO CAR CORPORATION <br><br> Defendants. | No. 2:10-cv-04407-DMC-JAD <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION AND DISMISS OR STRIKE PLAINTIFFS' CLASS ALLEGATIONS

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

David A. Mazie
Matthew R. Mendelsohn
MAZIE SLATER KATZ
& FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

*Interim Co-Lead Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF ARGUMENT .............................................................................2

STATEMENT OF FACTS ....................................................................................4

ARGUMENT ..........................................................................................................7

I.     Standard of Review on a Motion to Strike ...................................................7

       A.     This Court Should Not Resolve the Class Certification
              Issues at this Early Stage of the Litigation.........................................10

II.    Even if the Court Were to Entertain the Issues Now,
       Volvo's Motion Should be Denied on the Merits .......................................12

       A.     Rule 23(b)(3) is Satisfied ...................................................................13

              1.     Plaintiffs' Allegations in the CAC are Sufficient to
                     Satisfy Rule 23(b)(3)'s Predominance Requirement ...............13

                     a.     New Jersey law should be applied to the
                            Class Members' Claims...................................................16

                     b.     Manifestation In Every Vehicle
                            Is Not Required For Certification  ................................24

              2.     Plaintiffs' Allegations in the CAC are Sufficient
                     to Satisfy Rule 23(b)(3)'s Superiority Requirement ................29

       B.     Rule 23(b)(2) is Satisfied ...................................................................32

III.   In the Alternative, the Court Should Allow this
       Matter to Proceed as Four Statewide Classes...............................................34

CONCLUSION......................................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Agostino v. Quest Diagnostics, Inc.*,
    2009 U.S. Dist. LEXIS 10451 (D.N.J. Feb. 11, 2009)......................18, 22, 23

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ...............................................................................13, 14

*Andrews v. Home Depot U.S.A., Inc.*,
    No. 03-CV-5200 (DMC),
    2005 U.S. Dist. LEXIS 44304 (D.N.J. Jun. 20, 2005) .........................3, 9, 10

*Anish v. National Securities Corp.,*
    2010 U.S. Dist. LEXIS 109939 (S.D. Fla. Oct. 15, 2010) ...........................34

*Augustus v. Board of Public Instruction of Escambia Cnty.,*
    306 F.2d 862 (5th Cir. 1962).........................................................................34

*Barbarin v. General Motors Corp.,*
    1993 U.S. Dist. LEXIS 20980 (D.D.C. 1993)...............................................28

*Barnes v. American Tobacco Co.,*
    161 F.3d 127 (3d Cir. 1998) .........................................................................32

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir.1975).........................................................................25

*Breakstone v. Caterpillar, Inc.,*
    2010 U.S. Dist. LEXIS 60437 (S.D. Fla. May 26, 2010) .............................32

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation,*
    288 F.3d 1012 (8th Cir. 2002)......................................................................27

*Briehl v. General Motors Corp.,*
    172 F.3d 623 (8th Cir. 1999)........................................................................28

*In re Cadillac V8-6-4 Class Action,*
    43 A.2d 736 (N.J. 1983) ...............................................................................25

*Carlson v. General Motors Corp.,*
   883 F.2d 287 (4th Cir. 1989) ........................................................................28

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) ....................................................................27

*Cooper v. Samsung Electrics America, Inc.,*
   374 Fed. Appx. 250, 2010 U.S. App. LEXIS 6602
   (3d Cir. 2010) .....................................................................................20, 21

*In re Countrywide Financial Corp. Data Security Breach Litigation,*
   No. 08-1998, 2009 U.S. Dist. LEXIS 119870
   (W.D. Ky. Dec. 22, 2009) ..........................................................................14

*Cuesta v. Ford Motor Co.,*
   Nos. 104480, 104485, 2009 Okla. LEXIS 25
   (Okla. Apr. 21, 2009) ................................................................................25

*In re DVI Inc. Sec. Litigation,*
   249 F.R.D. 196 (E.D. Pa. 2008) ................................................................13

*Daffin v. Ford Motor Co.,*
   458 F.3d 549 (6th Cir. 2006) .....................................................................25

*Dewey v. Volkswagen of America,*
   728 F. Supp. 2d 546 (D.N.J. 2010) ..................................4, 13, 14, 15, 29, 30

*Donovan v. Philip Morris USA, Inc.,*
   268 F.R.D. 1 (D.Mass. 2010) ....................................................................33

*Ehrhart v. Synthes (USA),*
   No. 07-01237 (SDW), 2007 U.S. Dist. LEXIS 94760
   (D.N.J. Dec. 21, 2007) .........................................................................8, 11

*Feinstein v. Firestone Tire and Rubber Co.,*
   535 F. Supp. 595 (1982) .......................................................................28, 31

*Ford Motor Co. v. Rice,*
   726 So. 2d 626 (Ala. 1998) ........................................................................28

*Frank v. DaimlerChrysler Corp.,*
    741 N.Y.S.2d 9 (N.Y. App. Div. 2002).........................................................28

*Green v. General Motors Corp,*
    2003 WL. 21730592 (N.J. Super. Ct. App. Div. 2003) ...............................28

*Harper v. LG Electrics United States, Inc.,*
    595 F. Supp. 2d 486 (D.N.J. 2009)..............................................................24

*Hovsepian v. Apple, Inc.,*
    2009 U.S. Dist. LEXIS (N.D.Cal. Dec. 17, 2009) .......................................32

*In re Hydrogen Peroxide Antitrust Litigation,*
    552 F.3d 305 (3d Cir. 2008) ..............................................................3, 9, 13

*Iannacchino v. Ford Motor Co.,*
    888 N.E.2d 879 (Mass. 2009)......................................................................35

*Jenkins v. Hyundai Motor Financing Co.,*
    No. C2-04720, 2008 U.S. Dist. LEXIS 23073
    (S.D. Ohio Mar. 24, 2008)............................................................................26

*Kohen v. Pacific Investment Management Company LLC and PIMCO*
    *Funds,* 571 F.3d 672 (7th Cir. 2009)...........................................................25

*L & L Gold Associates v. America Cash for Gold, LLC,*
    No. 09-10801, 2009 U.S. Dist. LEXIS 48767
    (E.D. Mich. June 10, 2009) ...........................................................................8

*Laney v. American Standard Companies, Inc.,*
    No. 07-3391 (PGS), 2010 U.S. Dist. LEXIS 100129
    (D.N.J. Sept. 23, 2010) .........................................................................23, 31

*Lau v. Arrow Finance Services, LLC,*
    245 F.R.D. 620 (N.D. Ill. 2007) ..................................................................33

*Lloyd v. General Motors Corp.,*
    916 A.2d 257 (Md. 2007) .............................................................................28

*Marcus v. BMW of North America, LLC*,
    No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908
    (D.N.J. Nov. 19, 2010) ..............................................................14, 16, 30, 36

*In re Mercedes-Benz Tele Aid Contract Litigation*,
    257 F.R.D. 46, 2009 U.S. Dist. LEXIS 35595
    (D.N.J. 2009) ......................................................................................*passim*

*In re Mercedes-Benz Tele Aid Contract Litigation*,
    No. 07-2720, 267 F.R.D. 113, 2010 U.S. Dist. LEXIS 23624
     (D.N.J. Mar. 15, 2010) ..........................................................................4, 20

*In re Mercedes-Benz Tele Aid Contract Litigation*,
    2010 U.S. App. LEXIS 8087 (3d Cir. Apr. 19, 2010) ..........................*passim*

*Microsoft Corp. v. Manning*,
    914 S.W.2d 602 (Tex. Ct. App. 1995) ........................................................26

*Nakamura v. Countrywide Home Loans, Inc.*,
    225 P.3d 680 (Haw. App. 2010)..................................................................35

*Nichols v. General Motors Corp.*,
    1999 WL. 33292839 (N.H. Super Ct. 1999) ...............................................28

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ......................................................................27

*P.V. v. Camp Jaycee*,
    962 A.2d 453 (N.J. 2008) .....................................................................17, 21

*Payne v. FujiFilm U.S.A., Inc.*,
    No. 07-385, 2010 U.S. Dist. LEXIS 52808
    (D.N.J. May 28, 2010).....................................................................21, 22, 31

*In re Philips/Magnavox Television Litigation*,
    No. 09-3072 (PGS) (D.N.J. July 7, 2010) ...................................................31

*In re Remeron End-Payor Antitrust Litigation*,
    No. 02-2007, 2005 U.S. Dist. LEXIS 27011
    (D.N.J. Sept. 13, 2005) ..................................................................14, 29, 30

*Rosen v. J.M. Automobile, Inc.*,
   270 F.R.D. 675 (S.D. Fla. Jan. 26, 2009) ......................................................34

*Samuel-Bassett v. Kia Motors America, Inc.*,
   212 F.R.D. 271 (E.D.PA. 2002),
   *vacated on other grounds*,
   357 F.3d 392 (3d Cir. 2004) ........................................................................26

*Smikle v. Coca-Cola Enterprises, Inc.*,
   Civ. 03-1431 (RBK), Slip Op. 7, (D.N.J. May 17, 2004) ..............................9

*Townsend v. Sears, Roebuck and Co.*,
   879 N.E.2d 893 (Ill. 2007)............................................................................17

*Thabault v. Chait*,
   541 F.3d 512 (3d Cir. 2008) .........................................................................16

*Union Ink. Co. v. AT&T Corp.*,
   352 N.J. Super. 617 (N.J. App. Div. 2002) ...................................................16

*Weld v. Glaxo Wellcome, Inc.*,
   746 N.E.2d 522 (Mass. 2001).......................................................................35

*Williams v. National Sec. Insurance Co.*,
   237 F.R.D. 685 (M.D. Ala. 2006) .................................................................14

*Winzler v. Toyota Motor Sales, Inc.*,
   2010 U.S. Dist. LEXIS 78428 (D. Utah 2010) .............................................28

*Wolin v. Jaguar Land Rover North America, LLC*,
   617 F.3d 1168 (9th Cir. 2010)...........................................................24, 26, 27

## <u>Statutes</u>

Fed. R. Civ. P. 12(f)(2) .......................................................................7, 8

Fed. R. Civ. P. 23 ..........................................................................*passim*

Fed. R. Civ. P. 23(a) .....................................................................2, 12

Fed. R. Civ. P. 23(b)(2) ................................................................2, 12, 32

Fed. R. Civ. P. 23(b)(3) ................................................................2. 12, 29

Fed. R. Civ. P. 23(c)(5).................................................................34

Fed. R. Civ. P. 26(d)(1) ................................................................12

## <u>Miscellaneous</u>

Restatement (Second) of Conflicts of Laws .....................................17, 18

## INTRODUCTION

Plaintiffs Joanne Neale, Keri Hay, Kelly McGary, Svein A. Berg, and Gregory P. Burns (together, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendant Volvo Cars of North America, LLC's ("Volvo" or "Defendant") Motion to Deny Class Certification and Dismiss or Strike Plaintiffs' Class Allegations, Docket Entry No. 20 ("Def. Mem."), from Plaintiffs' Consolidated Amended Complaint ("CAC").

Plaintiffs' lawsuit was brought as a class action on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees with defective sunroof drainage systems in Volvo models S40, S60, S80, V50, V70, and XC90 (the "Class Vehicles"). Because all of the Class Vehicles suffer from the common design defect described below, Plaintiffs asserted causes of action for breach of express warranty (Count II) and the implied warranty of merchantability (Count III), common law fraud (Count IV), breach of the duty of good faith and fair dealing (Count V), and violations of the New Jersey, Massachusetts, Florida, and Hawaii consumer protection statutes (Counts I, VI, VII, and VIII, respectively).  In the alternative to the nationwide class, Plaintiffs seek to represent state subclasses of consumers from Massachusetts, Florida,

Hawaii, and New Jersey.  Plaintiffs seek to certify one or more of these classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).  *See* CAC ¶ 98.

Volvo did not move to dismiss any of these claims.  Instead, on January 14, 2011, Volvo filed an Answer to the CAC.  *See* Docket Entry No. 18.  Volvo now moves to deny class certification and dismiss or strike Plaintiffs' class allegations.  As set forth below, however, none of Volvo's arguments have merit.  Accordingly, Plaintiffs respectfully request that this Court deny Volvo's motion in its entirety.

## SUMMARY OF ARGUMENT

Volvo's motion to strike (or otherwise dismiss) the CAC's class action allegations is procedurally improper, unsupported by the pertinent FED. R. CIV. P. 23 jurisprudence, and wholly inconsistent with the fact-intensive rigorous analysis that the Third Circuit requires district courts to undertake when determining whether class certification is appropriate. Volvo prematurely filed its motion before (a) Plaintiffs have filed a motion for class certification, (b) discovery has commenced, and (c) the Court has even conducted a Rule 16 conference.  Volvo's proffered justification for filing its premature motion is that "[n]o amount of discovery on any topic" could possibly support Plaintiffs' yet-to-be-filed motion for class

2

certification, Def. Mem. at 2, because "there is no possibility that a class could be certified." *Id.* at 4.

Volvo's speculative argument, on the current bare record, that there is "no possibility" of class certification, Def. Mem. at 4, is completely without merit. Volvo ignores this Court's opinion in *Andrews v. Home Depot U.S.A., Inc.*, No. 03-CV-5200 (DMC), 2005 U.S. Dist. LEXIS 44304 (D.N.J. Jun. 20, 2005), and decisions by other judges of this Court that have emphatically denied as procedurally premature similar motions to strike class allegations. And Volvo makes no attempt to explain how this Court could possibly perform the Rule 23 analysis mandated under *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008), based on the non-existent record here. Volvo's motion should be denied on this basis alone.

Even if the Court were to entertain the merits of Volvo's class certification arguments at this early stage, Volvo's motion should still be denied. The CAC adequately alleges how and why New Jersey law should apply to the conduct of this New Jersey defendant, whose wrongful conduct is alleged to have emanated from this state. Class certification is appropriate because Class members were injured by Volvo's uniform misconduct after purchasing or leasing one of the Class Vehicles that suffered from the same design defect. Noticeably absent from Volvo's brief is any reference to

Judge Debevoise's opinion in *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 115 (D.N.J. 2010) (certifying a nationwide class of vehicle owners under New Jersey law after conducting a comprehensive choice of law analysis),[1] and Magistrate Judge Shwartz's decision in *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010) (certifying, for purposes of settlement, a nationwide class of consumers whose vehicles suffered from a sunroof defect similar to the one alleged in this case).

Finally, even if the Court were to conduct this fact-intensive analysis now and decline to apply New Jersey law to the claims of the nationwide class, the CAC pleads four state classes in the alternative. For all these reasons, Volvo's request to strike or dismiss the class allegations should be denied in its entirety.

## STATEMENT OF FACTS

Volvo manufactures numerous models of vehicles, including the Class Vehicles. CAC ¶ 1. One available feature in the Class Vehicles was a "power glass moonroof," also referred to as a "sunroof."[2] *Id*. ¶ 56. This option provided the customer with an electronically controlled sliding panel

---

[1] The defendant in *In re Mercedes-Benz Tele Aid Contract Litig*. was represented by counsel from Bryan Cave's St. Louis office, which is the same office that represents Volvo in this case.

[2] Through its own consumer provided literature, Volvo also refers to this "power glass moonroof" as a "sunroof." CAC ¶ 56.

of transparent glass within the roof structure of the vehicle.  *Id*.  By definition, all "Class Vehicles" included a sunroof.

Due to environmental conditions, a properly designed sunroof requires a drainage system that will allow water to drain and/or become redirected to the exterior of the vehicle.  CAC ¶¶ 59, 60.  In a vehicle with a sunroof, a properly designed sunroof drainage system should prevent water from entering and/or becoming trapped within the passenger compartment of the vehicle.  *Id*.  Volvo incorporated the use of drain holes, drain tubes and sound traps in an attempt to direct water from the sunroof trays – located directly underneath the sunroofs – to the underside of the Class Vehicles.  *Id*. More specifically, the sunroof drainage systems in the Class Vehicles are designed to carry water from the exterior sunroof drain holes through the interior passenger compartment, via drainage tubes placed behind the vehicle's headliner and pillar panels, so that water will ultimately be redirected to the exterior of the vehicle through the underside. *Id*.

Plaintiffs' CAC alleges that all of the Class Vehicles suffer from a sunroof drainage system defect (the "Sunroof Drainage Defect"), which inevitably leads to the accumulation of dirt, debris, and other particles within the sunroof water drainage system, as well as the kinking of tubing within the drainage system.  CAC ¶ 2.  This defect – which typically manifests

shortly after the limited warranty period has expired – causes extensive damage to the Class Vehicles by allowing water that is intended to be directed to the exterior of the vehicle to instead penetrate into the passenger compartment. *Id.* ¶¶ 2, 61.

Volvo strains unsuccessfully to downplay the safety hazard created by this design defect, arguing that "there are no allegations here of reported instances of severe bodily harm or death from a sun roof water leak…" Def. Mem. at 16. But, as explained in the CAC, the Sunroof Drainage Defect poses a safety risk to the operator of the vehicle since this ingress of water can damage important electrical items and/or sensors.[3] CAC ¶ 70.

Not only did Volvo actively conceal the fact that particular components within the sunroof drainage system are defective (and require costly repairs to fix), but it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the vehicles, as well as potentially cause rust and water damage to surrounding electronic

---

[3] In the Class Vehicles, the yaw sensor and related wiring are located on the passenger side floorboard, under the front passenger seat. In some Class Vehicles, the audio system components and related wiring are also located under the front passenger seat. These components often become water damaged as a result of the Sunroof Drainage Defect. In turn, the yaw sensor may cease to function properly thereby causing a portion of the vehicle's Electronic Stability Control ("ESC") and/or Roll Stability Control ("RSC") safety system to become disabled. This poses a serious safety concern to the occupants of Class Vehicles, the occupants of other vehicles, and/or the public. CAC ¶ 70.

components and create a safety concern.  CAC ¶ 3.  Volvo has long been

aware of the Sunroof Drainage Defect.  *Id*. ¶ 86.   Yet, despite that

awareness (and failure to disclose it), Volvo has routinely refused to repair

Class Vehicles without charge when the defect manifests after the limited

warranty period has expired.  *Id*. ¶¶ 4, 84.

Now, in yet another attempt to avoid responsibility for this significant

defect, Volvo has moved to deny class certification and dismiss or strike

Plaintiffs' class claims.  *See* Docket Entry No. 20-1.  For the reasons

provided below, Volvo's motion should be denied in its entirety.

## **ARGUMENT**

## I.     **Standard of Review on a Motion to Strike.**

Volvo moves to deny class certification and dismiss or strike the class

allegations in the CAC pursuant to, among other things, FED. R. CIV. P.  23

and 12(f).[4]  *See* Def. Prop. Order (Dkt. No. 20).  Rule 12(f) permits a district

---

[4] FED. R. CIV. P. 12(f)(2) provides that a party may move to strike material in
a pleading "on motion made…either before responding to the pleading or, if
a response is not allowed, within 21 days after being served with the
pleading."  Here, Volvo moves to strike allegations in the CAC after having
filed an answer to the CAC on January 14, 2011.  *See* Docket Entry No. 19.
Volvo's Proposed Order relating to its motion also includes a reference to
FED. R. CIV. P. 12(b)(6) as a basis for this Court to grant its motion.
However, there is no reference to Rule 12(b)(6) in Volvo's memorandum.
*See* Docket Entry No. 20.  Regardless, Rule 12(f) does not permit a party to
file a motion to strike simultaneously with a responsive pleading; rather, a
Rule 12(f) motion must be filed before a party responds to a pleading. *L & L*

7

court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).   It is well established that motions to strike "should be used sparingly, and generally are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Ehrhart v. Synthes (USA)*, No. 07-01237 (SDW), 2007 U.S. Dist. LEXIS 94760, at *7 (D.N.J. Dec. 21, 2007) (collecting cases).  It is also "well established that striking a pleading should be sparingly used by courts.  It is a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* at *7-8 (citations omitted).

In addition to this general reluctance by courts to employ motions to strike, such a motion "will not be granted where the sufficiency of [an allegation] depends on disputed issues of fact." *Ehrhart,* 2007 U.S. Dist. LEXIS 94760, at *8 (citations omitted).  And even where there is not a disputed factual question, "Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law." *Id.* (citations omitted).  Finally, "[w]hen evaluating a motion to strike allegations of a

---

*Gold Assocs. v. Am. Cash for Gold, LLC*, No. 09-10801, 2009 U.S. Dist. LEXIS 48767, at *5 (E.D. Mich. June 10, 2009).  Volvo's motion to strike is therefore untimely since it filed the instant motion after answering the CAC.

complaint, the court must accept as true all factual allegations in the

complaint and view all reasonable inferences in the light most favorable to

Plaintiffs, just as on a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6)." *Andrews v. Home Depot U.S.A., Inc*., No. 03-CV-5200

(DMC), 2005 U.S. Dist. LEXIS 44304, at *6 (D.N.J. Jun. 20, 2005) (citing

*Smikle v. Coca-Cola Enterprises, Inc.*, Civ. 03-1431 (RBK), Slip Op. 7,

(D.N.J. May 17, 2004)).[5]

---

[5] In contrast to the standard of review for a motion to strike, in deciding a motion for class certification under FED. R. CIV. P. 23 a district court must conduct a rigorous analysis that includes resolving "all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action." *Hydrogen Peroxide*, 552 F.3d at 307.  This distinction demonstrates the type of rigorous analysis (and fact-finding) that a district court should undertake in connection with resolving the Rule 23 issues in a putative class action.  Significantly for purposes of Volvo's motion to strike the class allegations, "[f]actual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *Id.*  Indeed, it is very apparent that *Hydrogen Peroxide* does not expect this analysis to be done at the pleading stage.  As Chief Judge Scirica stated, "the requirements set out in Rule 23 are not mere pleading rules" *id.* at 316, and "[a] party's assurance to the court that it intends or plans to meet the [Rule 23] requirements is insufficient."  *Id.* at 318.  Without the benefit of discovery, Plaintiffs are unable to demonstrate facts by a "preponderance of the evidence," and this Court has no record from which to make this evaluation beyond what is set forth in the pleadings.  Granting Defendant's motion prior to allowing Plaintiffs to engage in discovery contravenes both legal rationale and common practicality.

**A.      This Court Should Not Resolve the Class Certification Issues at this Early Stage of the Litigation.**

Despite the fact that motions to strike are disfavored and are only to be "sparingly" used, Volvo contends that "it is apparent from the face of the complaint" that dismissing or striking the class allegations in the CAC is warranted.  Def. Mem. at 6-7.  Volvo fails to acknowledge this Court's decision in *Andrews*, 2005 U.S. Dist. LEXIS 44304, which strongly counsels against the granting of Volvo's Motion to Strike.

The defendant in *Andrews* – like Volvo here – filed a motion to strike the class allegations in a complaint on the grounds that "it is apparent from the face of the Complaint that Plaintiffs cannot maintain a class action under Rule 23(b)(1), 23(b)(2), or 23(b)(3)…".  *Andrews*, 2005 U.S. Dist. LEXIS 44304, at *7.  Construing the facts in the complaint as true, *see id.* at *2, this Court denied the motion as procedurally premature:

> [T]he shape and form of a class action evolves only through the process of discovery.  After conducting discovery, Plaintiffs in fact may be unable to satisfy the strict requirements of Rule 23. Yet at this juncture, and in consideration of the allegations of the Complaint in the light most favorable to Plaintiffs, the Court can envision a situation in which a hybrid class action might be maintained under Rule 23(c)(4). It does not appear beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations." Dismissal of the class action allegations would be premature at this stage of the litigation and is not appropriate.

*Id.* at *7-8 (internal citations omitted).

Similarly, in *Ehrhart,* 2007 U.S. Dist. LEXIS 94760, Judge Wigenton reached the same conclusion when faced with a motion to strike class allegations.  In *Ehrhart*, the defendant argued that the plaintiff's class action allegations should be dismissed since the case required the application of divergent laws of multiple states, thereby purportedly destroying the predominance of common issues and making the case unmanageable as a class action.  *Id.* at *9.  In rejecting these arguments as premature, Judge Wigenton explained that

> dismissal at this stage in the litigation would not allow Plaintiffs to fully develop their claims through discovery. Indeed, the usual practice favoring pre-certification discovery derives from the fundamental premise of Fed. R. Civ. P. 12, which is that claims, including class claims, should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."
>
> Decisions from our sister courts (and courts in a number of other jurisdictions) have made clear that dismissal of class allegations at this stage should be done rarely and that the better course is to deny such a motion because "the shape and form of a class action evolves only through the process of discovery."

*Id.* at *12-13 (internal citations omitted).

Likewise, adjudicating class certification at this early stage of this case would be premature because no discovery has occurred in the short

time this case has been pending.[6]  And in light of the class certification

jurisprudence discussed below and the pre-suit investigation conducted by

Plaintiffs' Counsel, the class action allegations in Plaintiffs' CAC are not

"redundant, immaterial, impertinent, or scandalous" for purposes of Rule

12(f).  Since there is no basis to strike these allegations from the CAC under

either Rule 23 or Rule 12, Volvo's motion should be denied for this reason

alone.

## II.    Even if the Court Were to Entertain the Issues Now, Volvo's Motion Should be Denied on the Merits.

Even if it were appropriate to address the merits of Volvo's class

certification arguments at this early stage – and it is not – Volvo's motion

should still be denied.  Volvo does not dispute that the adequacy, typicality,

commonality, or numerosity requirements of FED. R. CIV. P. 23(a) are met.

Instead, it argues that Rule 23(b)(3) and Rule 23(b)(2) cannot be satisfied in

this case.  As discussed below, these arguments are unavailing.

---

[6] In fact, as of this date, the parties have not even exchanged initial
disclosures or conducted a meet and confer pursuant to Rule 26(f).
Therefore, Plaintiffs cannot yet seek discovery from Volvo or from "any
source."  *See* FED. R. CIV. P. 26(d)(1).

### A.      Rule 23(b)(3) is Satisfied.

Plaintiffs have sufficiently pled their class action complaint pursuant

to FED. R. CIV. P. 23(b)(3), which provides:

> (b) A class action may be maintained if Rule 23(a) is satisfied
> and if:  (3) the court finds that the questions of law or fact
> common to class members predominate over any questions
> affecting only individual members, and that a class action is
> superior to other available methods for fairly and efficiently
> adjudicating the controversy.

The requirements of Rule 23(b)(3) are referred to as the "predominance

requirement" and the "superiority requirement."  Here, there can be no

question that the allegations in the CAC satisfy both of these requirements of

Rule 23(b)(3).  As a result, Volvo's motion should be denied.

### 1.      Plaintiffs' Allegations in the CAC are Sufficient to Satisfy Rule 23(b)(3)'s Predominance Requirement

"Predominance measures whether the class is sufficiently cohesive to

warrant certification."  *In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 207 (E.D.

Pa. 2008); *Amchem,* 521 U.S. at 623.  "To determine whether common

issues predominate over questions affecting only individual members, the

court must look at each claim upon which the plaintiffs seek recovery and

identify the law that applies to the claim."  *Dewey v. Volkswagen of*

*America*, 728 F. Supp. 2d 546, 568 (D.N.J. 2010) (*citing In re Hydrogen*

*Peroxide*, 522 F.3d at 311).  While predominance requires that common

questions outweigh individual questions, the existence of individual

questions of fact or law does not per se preclude class certification.  *Id.* at

568.  Predominance also requires a showing that the issues raised apply to

the class as a whole, support at least one cognizable common cause of

action, and involve common proof.  *Id.  See also In re Remeron End-Payor*

*Antitrust Litig*., No. 02-2007 FSH, 2005 U.S. Dist. LEXIS 27011, at *11

(D.N.J. Sept. 13, 2005) (internal citations omitted).

These standards are readily met here.  All of the claims asserted by

Plaintiffs in the CAC are based upon uniform defects in the sunroof drain

systems in Class Vehicles designed and/or manufactured by Volvo, and

Volvo's uniform omissions about the same.  *Dewey*  is instructive because in

that case this Court certified a nationwide class for purposes of granting final

approval to a class action settlement that involved the identical defects

which are the subject of this case.[7]  The plaintiffs in *Dewey* sought class

_____

[7] The fact that the *Dewey* opinion arose in the context of the final approval
of a settlement as opposed to a contested motion for class certification (or
motion to strike) does not diminish its significance here.  "Rule 23
requirements are not relaxed in the settlement context."  *In re Countrywide*
*Financial Corp. Customer Data Security Breach Litig.*, No. 08-1998, 2009
U.S. Dist. LEXIS 119870, at *13 (W.D. Ky. Dec. 22, 2009) (citing *Amchem*
*Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).  A district court
deciding whether to grant approval to a class action settlement must still
conduct a "rigorous analysis" of the Rule 23 elements.  *See Williams v. Nat'l*
*Sec. Ins. Co.*, 237 F.R.D. 685, 691 (M.D. Ala. 2006) (citing *Amchem*).
Moreover, both *Mercedes Tele-Aid* and *Marcus v. BMW of North America,*

relief on behalf of 5.5 million past and current owners of various

Volkswagen and Audi vehicles from all 50 states.  As in this case, the

*Dewey* plaintiffs alleged that each of the class vehicles contained defective

sunroof drain systems that were susceptible to clogging, resulting in water

damage to the interior of the vehicle.  In certifying a nationwide class and

granting final approval of the settlement, the Court made clear that plaintiffs

had satisfied all of the requirements of obtaining class certification,

including Rule 23(b)(3).  With respect to the predominance requirement the

Court stated:

> [A]ll class members seek recovery based upon common legal
> theories for similar damages that each class member sustained
> or could sustain because the plenum or sunroof drain failed to
> keep water out or because the maintenance requirements were
> not clearly conveyed.  Accordingly, individual inquiries will
> not predominate over the common questions of fact and law, at
> least as to the express warranty claim, that are shared among
> members of the potential class.  Therefore, the predominance
> factor is satisfied.

*Dewey*, 728 F. Supp. 2d at 569.  So too here, Plaintiffs have satisfied this

requirement by making allegations virtually identical to those asserted in

*Dewey.*

---

*LLC*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010)*, discussed *infra*, did arise in the context of a contested motion for class certification.

Similarly, in *Marcus v. BMW of North America, LLC*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010), the defendants argued that predominance was not satisfied because the Court would have to examine whether each individual class member actually suffered an economic injury as a result of the allegedly defective run-flat tires at issue there. *Id.* at 33. In rejecting this argument, Judge Hayden explained:

> The relevant issue, however, is whether the class members got less than what they expected. [Plaintiff] has adduced evidence that supports the claim that the defendants provided a defective product and failed to disclose problems with the product. If [Plaintiff] demonstrates that a defect existed, he will have shown that the class members got less than they expected. The class can establish ascertainable loss with common proofs.

*Id.* In this case, the CAC specifically alleges that Plaintiffs suffered an ascertainable loss by "receiving less than what was promised." CAC ¶ 113. Thus, predominance is readily satisfied here. *See also Union Ink. Co. v. AT&T Corp.*, 352 N.J. Super. 617 (N.J. App. Div. 2002) ("An ascertainable loss occurs when a consumer receives less than what promised.").

        a.    *New Jersey law should be applied to the Class Members' Claims.*

Since New Jersey is the forum state, it is well established that New Jersey choice of law rules should be applied to Plaintiffs' lawsuit. *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008). In 2008, New Jersey adopted the

"most significant relationship" test as outlined in section 148 of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008).  *See also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009).  The first step under this Restatement test is to determine whether a conflict exists between the laws of the various states. *Tele Aid,* 257 F.R.D. 57.  "If no conflict exists, the Court should apply the law of New Jersey, its forum state." *Id.* (internal citations omitted).

Generally, Volvo believes there are no conflicts pertaining to those putative Class members who have not yet experienced the Sunroof Drainage Defect.   Volvo contends, however, that "*if* there were a conflict" then the law of the state in which they purchased their vehicle would be applicable. *See* Def. Memo. at 8 (emphasis added).  This presumption is incorrect. Under New Jersey law, if a conflict is found to exist between the various state laws then the Court must weigh the considerations contained in the Restatement and determine which state has the "most significant relationship" to each cause of action asserted in the lawsuit.  *Tele Aid*, 257 F.R.D. at 57 (*citing Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 900 (Ill. 2007)).  "In doing so, the Court must consider two sets of factors: (1) the general considerations articulated in § 6 [of the Restatement], and (2) those specific to each claim." *Id.*

Volvo does not address the extensive analysis of §148 and §6 of the Restatement performed by Judge Debevoise in *Tele Aid*.  In *Tele Aid,* the Court concluded New Jersey law applied to a multi-district litigation that comprised ten separate actions, originally filed in six different states.  *See generally Tele Aid,* 257 F.R.D. 46. Of significance, the Court explained "the Restatement distinguishes between, on the one hand, fraud claims in which the defendant's alleged misrepresentations and plaintiff's reliance on those statements took place in the same state [§ 148(1)], and on the other, those in which the misrepresentations and reliance occurred in different jurisdictions [§ 148(2)]." *Id.* at 65.

Under § 148(1), the "most significant relationship" with the litigation is *presumed* to be the state in which both the fraudulent misconduct and the plaintiff's injuries occurred.[8] *Id.* (*citing* Restatement (Second) of Conflicts of Laws § 148; *Agostino v. Quest Diagnostics, Inc.*, 2009 U.S. Dist. LEXIS 10451 (D.N.J. Feb. 11, 2009) (emphasis added)).  However, where the fraudulent misconduct and the plaintiff's injuries occurred in different jurisdictions - such as those Plaintiffs and Class members purchasing vehicles outside of New Jersey - there is not a "home state" presumption.

---

[8] Accordingly, and as uncontested by Defendant, New Jersey law should apply to those Plaintiffs and Class members' claims who purchased and/or leased their vehicles within New Jersey pursuant to the home state presumption of § 148(1).

Instead, the court must weigh the factors enumerated in § 148(2) to determine which state has the greatest ties to the plaintiff's fraud claim. *Id*. (internal citations omitted).

In its choice of law analysis under Restatement § 148(2), the *Tele Aid* Court explained:

> [T]he NJCFA seeks to deter wrongful activity on the part of the corporations operating in New Jersey by imposing automatic treble damages on consumer fraud claims. That deterrent effect would be compromised if Mercedes were allowed to avail itself of the law of states which limit recovery in consumer fraud actions to compensatory damages simply because its alleged wrongful activity, which took pace within New Jersey, had nationwide effects. On the other hand, New Jersey's interest in limiting the liability of a corporation headquartered within its borders – and interest which is implicit in the fact that 'the only form of punitive damages expressly allowed by the NJCFA are treble damages,' – would be compromised if the company were subjected to the law of states that do not limit punitive recovery in consumer fraud cases. Therefore, the Court finds that New Jersey is 'the state of dominant interest and that its local law should control.'

*Id*. at 68 (internal citations omitted).

Next, under a § 6 analysis, the Court explained that applying NJCFA would not result in an unacceptable conflict between the states since,

> each of the states from which class members will be drawn has an interest in assuring that its citizens will be compensated for any harm they may have suffered. Only New Jersey, however, possesses the additional interest in regulating a corporation headquartered within its borders – the interest implicated by the availability, or lack thereof, of punitive damages.

19

*Id.*

Here, Defendant Volvo maintains its North American headquarters and principal place of business in Rockleigh, New Jersey.  CAC ¶¶ 47, 93. Volvo's headquarters is also the place where its misconduct emanated, thereby affecting and injuring Plaintiffs and Class members throughout the United States.  *Id.* at ¶ 96.  Volvo voluntarily placed its North American headquarters in a state that has a strong interest in deterring fraudulent conduct occurring within its borders by domestic businesses.  *Tele Aid*, 257 F.R.D. at 67.  As a result, that deterrent effect would be compromised if Volvo were now permitted to sidestep the application of New Jersey law simply because its wrongful activity had nationwide effects.  Accordingly, New Jersey law should be applied in this case since New Jersey has the "most significant relationship" to the claims asserted.

Defendant's reliance on the non-precedential 2-1 decision in *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 2010 U.S. App. LEXIS 6602 (3d Cir. 2010), is misplaced.[9]  In *Cooper*, a single plaintiff from

---

[9] The fact that *Cooper* is Non Precedential is significant because, as Judge Debevoise recently explained, citing to such unpublished Third Circuit decisions is "discouraged," and they are not regarded as binding precedent. *In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-2720, 2010 U.S. Dist. LEXIS 23624, at *68-69 (D.N.J. Mar. 15, 2010), *interlocutory appeal denied by In re Mercedes-Benz Tele Aid Contract Litig.*, 2010 U.S. App. LEXIS 8087 (3d Cir. Apr. 19, 2010) (citations omitted).

Arizona brought suit against Samsung in the District of New Jersey stemming from the purchase of a Samsung branded television at an Arizona retail store.  The District Court concluded, pursuant to the then applicable "governmental interest" analysis, that Arizona law applied and *sua sponte* construed plaintiff's consumer fraud claim under Arizona's consumer fraud statute.  *Id*. at 253.  "*P.V. v. Camp Jaycee*, which announced a new choice of law analysis in New Jersey, had not been filed when the District Court decided its choice-of-law analysis in favor of Arizona." *Id*. at 254, n.4. Therefore, and unlike here, which involves claims of multiple plaintiffs from multiple states, the district court in *Cooper* had no reason to apply the "most significant relationship" test in a choice of law analysis.[10]

Defendant also cites to *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385, 2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010), for the "strong presumption under Section 148[1]" that the state law in which each class

_____

[10]  While the Third Circuit affirmed the district court's decision to apply Arizona law, as noted by Judge Ambro in his dissent, the majority did not conduct an itemized six-factor analysis under Restatement § 148(2). *Cooper*, 374 Fed. Appx. at 257 (Ambro, J., dissenting).  The dissenting opinion goes on to explain that "[a]s for the interest in compensating fraud victims, because New Jersey's law is recognized as one of the strongest in the country, those residing in other states usually will receive no less – and perhaps more – protection than their own states would provide. Accordingly, application of New Jersey's law often will not frustrate other states' interests in compensation for their residents." *Id*. at 256.

member purchased or leased their vehicle apply to that Class member's claims.  Def. Mem. at 10.  Relying on *Agostino*, *Payne* applied the Restatement § 148(1) "presumption" and subsequently determined New Jersey law applied to the class members' claims.[11]

This underlying analysis from *Agostino*, however, is unpersuasive and should not be followed here.[12]  As Judge Debevoise stated in *Tele-Aid,* "[w]hile the Court in *Agostino* did apply a presumption in favor of the application of the law of each plaintiff's home state, it did so based on its implied ruling that the alleged misrepresentations underlying the claim in that case were made and received in the plaintiffs' home states, and therefore Restatement § 148(1) – not the *second subsection* of that rule – applied to the plaintiffs' consumer fraud claim." *Tele Aid*, 257 F.R.D. at 66 (emphasis

---

[11] *Payne* explained that while defendant's "Principal Business Address" was listed as "New Jersey" by the New Jersey Department of State, defendant's headquarters and key employees were actually located in New York.  *Payne*, 2010 U.S. LEXIS 52808, *23-24.  Plaintiffs' class complaint was filed in New Jersey and included three named plaintiffs from New Jersey and two named plaintiffs from New York.  The claims of one New York plaintiff were dismissed after her failure to attend deposition.  *Id*. at *2.

[12] In *Agostino II*, 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010), Judge Chesler explained that the factual scenario in *Agostino*, involving deceptive bills sent to each customer's home address in the state where defendant's underlying laboratory service was most likely obtained, was "quite distinct" from *Tele Aid* which involved "an automobile manufacturer's national promotion of its product presumably directed from the company headquarters." *id*. at *22

in original).  As explained in *Tele Aid*, the district court "erred by applying

the first subsection of that provision in *Agostino*" and, "in doing so, ignored

section 148(2)," which applies in cases where the misrepresentations and

reliance occurred in different jurisdictions.

Volvo's reliance on Judge Sheridan's class certification opinion in

*Laney v. American Standard Companies, Inc.,* No. 07-3391 (PGS), 2010

U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) is similarly misplaced.  At

the time of the *Laney* decision, the parties had engaged in extensive

discovery, including defendant's production of 1.2 million pages of

documents.[13] *Id*. at *2.  As a result, *Laney* is in complete contrast and

inapplicable to the situation in this case where the parties have not even

exchanged initial disclosures or conducted a meet and confer pursuant to

Rule 26(f).

In this case, it is clear that Volvo's misconduct emanated from New

Jersey.  Those Plaintiffs and Class members purchasing or leasing vehicles

outside of New Jersey, however, felt the effects and injuries of Volvo's

misconduct in states other than New Jersey.  Therefore, and contrary to

Defendant's argument, the "home state" presumption under § 148(1) would

---

[13] While Judge Sheridan does mention *Tele Aid*, the *Laney* decision does not
conduct any choice of law analysis under the rationale as explained and held
in *Tele Aid*.

not apply to Plaintiffs and Class members affected and injured outside of New Jersey.  Instead, Restatement § 148(2) would apply to those claims and warrant the application of New Jersey law, in accordance with the analysis in *Tele-Aid*.[14]

> b.  *Manifestation In Every Vehicle Is Not Required For Certification*

Volvo next argues that the classes described in the CAC should not be certified because they include some consumers that have a Class Vehicle which has not yet had the Sunroof Drainage Defect manifest.  *See* Def. Mem. at 12-14.  As a result, Volvo contends, individual issues will predominate over common ones.  *Id.*  Courts have routinely made it crystal-clear that where, as here, the defect is inherent in a defendant's product, the fact that the defect has not yet manifested itself for each class member does not bar certification of class claims.  The Ninth Circuit addressed this issue in a recent case, *Wolin v. Jaguar Land Rover North America, LLC,* 617 F.3d 1168 (9th Cir. 2010):

> The district court erred when it concluded, without discussion, that certification is inappropriate because Gable and Wolin did not prove that the defect manifested in a majority of the class's

---

[14] In light of the foregoing discussion, it is unsurprising that this Court has previously "defer[red] its choice-of-law decision until the parties present a factual record full enough to permit this Court to undertake [the necessary analysis]."  *Harper v. LG Elecs. United States, Inc*., 595 F. Supp. 2d 486, 491 (D.N.J. 2009).

vehicles.  *  *  *  However, we have held that proof of the manifestation of a defect is not a prerequisite to class certification.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.").  What Land Rover argues is whether class members can win on the merits.  For appellants' claims regarding the existence of the defect and the defendant's alleged violation of consumer protection laws, this inquiry does not overlap with the predominance test.

*Id.* at 1173.  *See also Kohen v. Pacific Investment Management Company LLC and PIMCO Funds,* 571 F. 3d 672, 677 (7th Cir. 2009) ("What is true is that a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.  Such a possibility or indeed inevitability does not preclude class certification..."); *In re Cadillac V8-6-4 Class Action,* 43 A2d. 736 (N.J. 1983) (class certified where members of class included all owners of engines at issue regardless of whether the problems were manifest); *Cuesta v. Ford Motor* Co., Nos. 104480, 104485, 2009 Okla. LEXIS 25 at *26 (Okla. Apr. 21, 2009) ("Manifestation of the defect is not required for certification"); *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) (upholding certification of a

25

class of all vehicles, regardless of whether they had manifested the defect);
*Samuel-Bassett v. Kia Motors America, Inc.*, 212 F.R.D. 271, 282 (E.D.PA.
2002), *vacated on other grounds*, 357 F.3d 392 (3d Cir. 2004) (rejecting
manifestation argument and certifying claims relating to defective brake
system on Kia's Sephia vehicles sold between 1995 and 2001); *Microsoft
Corp. v. Manning*, 914 S.W.2d 602, 610 (Tex. Ct. App. 1995) (class
members may include those who purchased the software but have not
experienced a manifestation of the defect); *Jenkins v. Hyundai Motor
Financing Co.*, No. C2-04720, 2008 U.S. Dist. LEXIS 23073, at *27 (S.D.
Ohio Mar. 24, 2008) (whether class members were ultimately able to recover
as a result of defendant's conduct was merits-based inquiry not properly
considered at class certification).

The present case is closely analogous to *Wolin.* There, the plaintiffs
claimed that their LR3 Land Rover vehicles had a geometry defect in the
vehicles' alignment, allegedly causing uneven and premature tire wear and
resulting in a rough ride and tires that wore prematurely, in many cases after
just 15,000 miles. The plaintiffs moved for class certification for claims
under state consumer protection statutes, as well as for breach of express and
implied warranties, and for unjust enrichment. The district court denied
class certification based on its determination that the number of people in the

class who experienced the alignment defect was an important factor in the
Rule 23 analysis, and that plaintiffs had not even estimated the percent of
prospective Class members whose vehicles manifested the defect, let alone
shown that a majority of Class members' vehicles experienced premature
tire wear.  The Ninth Circuit rejected this analysis and held that the district
court erred when it required the plaintiffs to show that a majority of vehicles
manifested the results of the defect.  *Wolin*, 617 F.3d at 1173.

Volvo relies upon cases that are clearly distinguishable on their face.
In *O'Neil v. Simplicity, Inc.,* 574 F. 3d 501 (8th Cir. 2009), contrary to this
case, the plaintiffs failed to allege that the defect ever occurred in their
product.  Volvo's reliance upon *In re Bridgestone/Firestone, Inc. Tires
Prods. Liab Litig.,* 288 F.3d 1012 (8th Cir. 2002), is similarly misplaced, as
there was no allegation by the named plaintiffs in that case that a uniform
defect in the vehicles was causing the problems with the tires equipped on
the vehicles that comprised the class.  Similarly unavailing is Volvo's
reliance on *Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D.N.J. 1998), because
*Chin* was merely discussing the potential difficulties in certifying claims
where there were substantial variations in state laws regarding the need for
manifestation.

Lastly, Defendants' attempted use of "four identical cases filed in four different states" as an illustration of the state of the law on unmanifested defects offers no assistance because in, each of those cases, the plaintiffs failed to allege that they ever experienced a manifestation of the alleged defect.[15] *Frank v. DaimlerChrysler Corp.,* 741 N.Y.S. 2d 9, 12 (N.Y. App. Div. 2002); *Green v. General Motors Corp,* 2003 WL 21730592, at *1-2 (N.J. Super. Ct. App. Div. 2003); *Nichols v. General Motors Corp.,* 1999 WL 33292839, at *1 (N.H. Super Ct. 1999). Moreover, in one of those four cases, *Lloyd v. General Motors Corp.,* 916 A.2d 257 (Md. 2007), the Supreme Court of Maryland reversed the dismissal of plaintiffs' claims. *Id.* at 293.

_____

[15] The other cases cited by Defendant similarly offer scant support for its position. *See*, *e.g.*, *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) (upholding grant of motion to dismiss where the plaintiffs themselves failed to plead that they had ever manifested the purported defect); *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) (dismissing damages claims for only those class members who did not manifest defect and predicated claims on "poor reputation"); *Winzler v. Toyota Motor Sales, Inc.,* 2010 U.S. Dist. LEXIS 78428, at *7 (D. Utah 2010) (dismissing named plaintiff's claim where she failed to allege any damages as a result of defect); *Barbarin v. General Motors Corp.*, 1993 U.S. Dist. LEXIS 20980 (D.D.C. 1993) (trial brought by government already resulted in verdict that vehicles were not defective); *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595 (1982) (many of the plaintiffs themselves had not manifested the defect); *Ford Motor Co. v. Rice*, 726 So.2d 626 (Ala. 1998) (dismissing claims where plaintiffs themselves had not plead any cognizable injury).

Here, Plaintiffs clearly allege, as Volvo admits in its recitation of the pertinent sections of the CAC, that Plaintiffs themselves "experienced water leaks from their sunroofs in their vehicles." *See* Def. Memo. at 2.  As a result, predominance is met in this case.[16]

### 2.  *Plaintiffs' Allegations in the CAC are Sufficient to Satisfy Rule 23(b)(3)'s Superiority Requirement*

Plaintiffs have also satisfied the superiority requirement of FED. R. CIV. P. 23(b)(3), which requires a court to consider whether a class action is the superior method of fairly and efficiently adjudicating the controversy. *Dewey*, 728 F. Supp. 2d. at 569.  A class action is considered to be superior where individual class members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit.  *See Remeron*, 2005 U.S. Dist. LEXIS 27011, at *12 (D.N.J. Sept. 13, 2005) (internal citations omitted).  *See also* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing the "matters pertinent" to the superiority analysis).

Similarly, as in this case, a Plaintiff's expense to prosecute an individual Sunroof Drainage Defect claim against Volvo would be large and would likely exceed their actual damages.  Therefore, it is not economically

---

[16] And even if the actual number of consumers who have had the Sunroof Drainage Defect manifest were relevant, it cannot be factored into the analysis now because there has been no discovery in this case.

feasible for individuals to pursue individual prosecution and relief against Volvo, thereby leaving aggrieved persons without any effective redress absent the class action device. *Id.* Moreover, Volvo's failure to identify any other case related to the Sunroof Drainage Defect currently pending in this or any other court bolsters Plaintiffs' argument. *See Marcus,* 2010 U.S. Dist. LEXIS 122908, at *43.

Further, in contrast to the inefficiency of duplicative individual lawsuits, resolving all claims of Plaintiffs and class members in a single proceeding allows for substantial economies of time, effort and expense for the litigants as well as the Court. *Id.* at *12 (citations omitted). Allowing this class action to go forward will avoid potentially duplicative litigation, potentially inconsistent rulings, and save judicial resources. *See In re Remeron*, 2005 U.S. Dist. LEXIS 27011, at *12. Finally, putative Class members can be identified from Volvo's own sales records, "thereby ensuring the efficiency of the action." *Marcus,* 2010 U.S. Dist. LEXIS 122908, at *43-44. For these reasons, the Court in *Dewey* found that the superiority requirement was satisfied. 728 F.Supp. 2d at 569-590.

All of the other cases cited by Volvo suffer from various infirmities which do not exist here. For example, in several of the cited cases, even after full discovery plaintiffs could still not establish that the alleged defect

actually damaged class members.  *See*, *e.g., Payne,* 2010 U.S. Dist. LEXIS

52808, at *14 (discovery revealed that the problems with the cameras could

have been caused by "a variety of factors" other than the alleged defect, and

that the number of cameras that manifested it was between one and two

percent); *Feinstein v. Firestone Tire and Rubber Co.,* 535 F. Supp. 595

(S.D.N.Y. 1982) (by the end of discovery, plaintiffs could not demonstrate

that there was any widespread failures in the subject tires); *Green,* 2003 WL

21730592 (after the conclusion of discovery there was no evidence that the

class vehicles did not perform as warranted*); Laney v. American Standard*

*Companies,, Inc.,* No. 07-3391 (PGS), 2010 U.S. Dist. LEXIS 100129

(D.N.J. Sept. 23, 2010) (as a result of changes which were made to the

design and manufacture of the subject toilets there was no way to determine

if any class member's toilet actually contained the alleged defect.).[17]  By

---

[17] Volvo's reliance on Judge Sheridan's class certification opinion in *Laney*
is particularly misplaced because in another putative class action involving
an allegedly defective consumer product – *In re Philips/Magnavox*
*Television Litig.*, No. 09-3072 (PGS) (D.N.J. July 7, 2010) – Judge Sheridan
rejected a similar preemptive motion to strike class allegations from a
complaint.  In advising Plaintiffs that they need not respond to the motion to
strike, Judge Sheridan explained that "… generally the way we usually
handle these cases is I usually have motions to dismiss, and then if we get
past the dismissal stage, then at some point there's some discovery. And then
after that there's usually a [motion] for class certification, and then we
decide whether there is an appropriate class or we can handle it as a class
matter."  *See* Exhibit A at 10-11.

contrast, the CAC, the only record at this point, makes clear that the water

damage to the Class Vehicles owned by Plaintiffs was caused by the Sunroof

Drainage Defect.[18]

>   **B.      Rule 23(b)(2) is Satisfied.**

Plaintiffs also seek certification under Rule 23(b)(2), which is

applicable where "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a

whole."[19] FED. R. CIV. P. 23(b)(2).  While a Rule 23(b)(2) class must be

cohesive, there are no predominance or superiority requirements as there are

under Rule 23(b)(3).  *Barnes v. American Tobacco Co.,* 161 F.3d 127, 143

(3d Cir. 1998).

Volvo does not contest Plaintiffs' allegations that it acted "on grounds

generally applicable to the Class."  *See* Def. Mem. at 27 (quoting CAC ¶

---

[18] Other cases relied on by Volvo are inapplicable for other reasons.
*Breakstone v. Caterpillar, Inc*., 2010 U.S. Dist. LEXIS 60437 (S.D. Fla. May
26, 2010) (plaintiffs' claims were barred by the doctrine of collateral
estoppel*); Hovsepian v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 117562
(N.D.Cal. Dec. 17, 2009) (claims were dismissed for failure to satisfy
pleading requirements).

[19] Among other things, the equitable relief sought on behalf of the class as a
whole includes an order extending the warranties to an appropriate period of
time, providing the class with curative notice of the defect, and requiring
Volvo to repair or replace the defective components.  *See* page 54 of CAC.

106).  Instead, it merely repeats the same argument that a class should not be

certified where fewer than all class members have had the problem

manifest.[20]  For the reasons set forth above, this argument is unpersuasive.

Moreover, the Class contained in the CAC is cohesive because it is defined

by reference to objective criteria.  *See Lau v. Arrow Fin. Servs, LLC,* 245

F.R.D. 620, 624 (N.D. Ill. 2007).  Either the Class Vehicles suffer from the

same, uniform design defect, or they do not.  Likewise, Class Members

either purchased or leased a Class Vehicle, or they did not.

Moreover, Volvo cannot contend that it lacks records sufficient to

identify Class members.  In *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D.

1 (D.Mass. 2010), a district court recently certified a class pursuant to Rule

23(b)(2) and Rule 23(b)(3) by referring to similar objective criteria.  *See id.*

at 17 ("Either someone has smoked for at least twenty pack-years or he has

not; either someone is under a physician's care for suspected cancer or he is

not.").  Therefore, certification of a Rule 23(b)(2) class is warranted in this

case.

---

[20] Additionally, Volvo's professed concern that "many" Class members
"have never had a water leak problem" is irrelevant to whether the Class is
cohesive, as the Class is not defined by reference to those owners of the
Class Vehicles that have and have not had the problem manifest.  *See* Def.
Mem. at 27.

### III.    In the Alternative, the Court Should Allow this Matter to Proceed as Four Statewide Classes.

Even if the Court rules that Plaintiffs cannot certify a nationwide class, the case still should be allowed to proceed as four individual state classes, as the law of each of the four states identified in the CAC: New Jersey, Massachusetts, Florida and Hawaii. *See* CAC ¶ 99.  FED. R. CIV. P. 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23]."

In *Rosen v. J.M. Auto, Inc.,* 270 F.R.D. 675 (S.D. Fla. Jan. 26, 2009), for example, a Florida class action was allowed to proceed where the plaintiff alleged that every Lexus ES 350 contained a defective airbag system.  *id.* at *1.  Defendants argued that plaintiffs could not demonstrate that the class action was the superior way of proceeding.  However, the court found that class certification was warranted because class members suffered the same damages.  *Id.* at *6-7.  Moreover, like New Jersey, Florida disfavors striking class allegations at this stage of the litigation.  See *Anish v. National Securities Corp*., 2010 U.S. Dist. LEXIS 109939, at *10 (S.D. Fla. Oct. 15, 2010) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty*., 306 F.2d 862, 868 (5th Cir. 1962)).

Massachusetts also follows the general rule that predominance is satisfied when consumers allege a common course of misconduct by the

defendant and that a class action is the preferred way to proceed.  *See, e.g., Weld v. Glaxo Wellcome, Inc*., 746 N.E.2d 522 (Mass. 2001) (because the alleged injuries were the result of the single course of conduct by defendants, the claims will turn largely on common questions of law and fact among all class members).  "Indeed, when common issues predominate, 'judicial economy and consistency of result dictate class treatment.'"  *Id.* at 532 (internal citations omitted).

Volvo mistakenly relies on *Iannacchino v. Ford Motor Co*., 888 N.E. 2d 879 (Mass. 2009) which held:

> Where, as in this case, there is no allegation that the plaintiffs – or indeed anyone else – have suffered personal injury or property damage, the complaint must identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not.

*Id*. at 888.  However, *Iannacchino* is unpersuasive to Volvo's position since Plaintiffs here have sufficiently alleged that their vehicles and the Class Vehicles suffered damage as a result of the Sunroof Drainage Defect. Therefore, under the reasoning of *Iannacchino*, Plaintiffs' claims would be allowed to proceed as a class action under Massachusetts law.

Similarly, Hawaii also permits class actions when the claims, like those in the present case, arise out of a common course of deceit by the defendant.  *See Nakamura v. Countrywide Home Loans, Inc*., 225 P.3d 680,

689-90 (Haw. App. 2010) (the common question of whether the defendants alleged deceptive practices, misled and caused the plaintiff and the Class to pay a fee for something when they would not otherwise have done so).

Finally, as discussed above, Judge Hayden recently certified a New Jersey sub-class in a case involving allegedly defective run-flat tires. *See Marcus*, 2010 U.S. Dist. LEXIS 122908. Accordingly, even if the case does not proceed as a nationwide class, the case should still be allowed to proceed as four state classes.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Volvo's Motion to Strike, Dismiss, or Deny Plaintiffs' Class Allegations in its entirety.

Dated:  February 8, 2011

Respectfully submitted,

By:   *//s// Joseph G. Sauder*
      Joseph G. Sauder
      Matthew D. Schelkopf
      Benjamin F. Johns
      CHIMICLES & TIKELLIS LLP
      One Haverford Centre
      361 West Lancaster Avenue
      Haverford, PA 19041
      Telephone: (610) 642-8500
      E-mail: JGS@chimicles.com
      MDS@chimicles.com
      BFJ@chimicles.com

David A. Mazie
Matthew R. Mendelsohn
David M. Freeman
MAZIE SLATER KATZ & FREEMAN,
LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
dmazie@mskf.net
mmendelsohn@mskf.net

*Interim Co-Lead Counsel for Plaintiffs and
the Proposed Class*

Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
Two Gateway Center
Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

Richard Norman
R. Martin Weber, Jr.
CROWLEY NORMAN LLP
3 Riverway, Suite 1775
Houston, Texas  77056
Telephone:  (713) 651-1771
rnorman@crowleynorman.com
mweber@crowleynorman.com

James C. Shah
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ  08107-1909
Telephone:  (856) 858-1770
Facsimile: (856) 858-7012
Email: jshah@sfmslaw.com

Thomas K. Brown
Justin Presnal
FISHER, BOYD, BROWN, &
HUGUENARD, L.L.P.
2777 Allen Parkway, 14th Floor
Houston, Texas  77019
Telephone:  (713) 400-4000
TomB@fisherboyd.com
JustinP@fisherboyd.com

Michael A. Caddell
Cory S. Fein
CADDELL & CHAPMAN
1331 Lamar, #1070
Houston TX  77010
713.751.0400 (phone)
713.751.0906 (fax)
Email: MAC@caddellchapman.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin F. Johns, certify that the foregoing **PLAINTIFFS'**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**

**MOTION TO DENY CLASS CERTIFICATION AND DISMISS OR**

**STRIKE PLAINTIFFS' CLASS ALLEGATIONS** was electronically filed on

this 8th day of February, 2011, using the Court's CM/ECF system, and was thereby

served upon all registered users in this case.


By: _____

Benjamin F. Johns