**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| JOANNE NEALE, KERI HAY, KELLY MCGARY, SVEIN A. BERG, GREGORY P. BURNS, DAVID TAFT, JEFFREY KRUGER and KAREN COLLOPY individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VOLVO CARS OF NORTH AMERICA, LLC, and VOLVO CAR CORPORATION, <br><br> Defendants. | No. 2:10-cv-04407-DMC-MF <br><br> **CLASS ACTION** <br><br><br> **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

David A. Mazie
Matthew R. Mendelsohn
MAZIE SLATER KATZ &
FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

*Interim Co-Lead Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

# **TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENT ........................................................................ 1

II.  FACTUAL BACKGROUND ........................................................................ 3

    A.   FACTS COMMON TO PLAINTIFFS AND CLASS MEMBERS. ....................... 3

    B.   ADDITIONAL FACTS UNCOVERED IN DISCOVERY. ................................ 7

III. ARGUMENT .......................................................................................... 11

    A.   THE PROPOSED CLASS AND ALTERNATIVE CLASSES. ........................... 11

    B.   APPLICABLE LEGAL STANDARDS. ...................................................... 13

    C.   CHOICE OF LAW. .............................................................................. 14

        i.   *The Law Applicable to the Consumer Fraud Claims.* .............. 15

        ii.  *The Law Applicable to the Breach of Warranty Claims.* ......... 21

        iii. *The Law Applicable to the Breach of Good Faith and Fair Dealing Claim.* ........................................................... 22

        iv.  *In the Alternative to Certification of the Nationwide Class, the Court Should Certify the State Sub-Classes.* ........... 22

    D.   THE APPLICABLE RULE 23 REQUIREMENTS ARE SATISFIED. ............... 23

        i.   *The Rule 23(a) Requirements are Satisfied.* ........................... 24

            1.   Numerosity. ................................................................. 24

            2.   Commonality. .............................................................. 25

            3.   Typicality. ................................................................... 26

            4.   Adequacy of Representation. ........................................ 27

i

a.    *Class Counsel Are Adequate.*..............................27

b.    *Plaintiffs are Adequate Class Representatives.* ........................................28

ii.    *The Rule 23(b)(3) Requirements are Satisfied.* ......................29

    1.    Predominance. ................................................................31

    2.    Superiority. ................................................................35

iii.    *Rule 23(b)(2) is Satisfied.* ........................................37

IV.    CONCLUSION .........................................................39

# TABLE OF AUTHORITIES

## Cases

*Agostino v. Quest Diagnostics Inc.,*
    256 F.R.D. 437 (D.N.J. 2009) .................................................................... 17

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................... 32, 33

*Barnes v. American Tobacco Co.,*
    161 F.3d 127 (3d Cir. 1998) ..................................................................... 37

*In re Bulk [extruded] Graphite Prods. Antitrust Litig.,*
    No., 02-6030 (WHW),
    2006 U.S. Dist. LEXIS 16619 (D.N.J. Apr. 4, 2006) .................................. 14

*Clark v. Prudential Ins. Co. of Am.,*
    No. 08-6197 (DRD),
    2009 U.S. Dist. LEXIS 84093 (D.N.J. Sept. 14, 2009) ............................... 22

*In re Countrywide Financial Corp. Customer Data Security Breach*
    *Litigation,*
    No. 08-1998,
    2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009) .......................... 33

*In re DVI Inc. Sec. Litigation,*
    249 F.R.D. 196 (E.D. Pa. 2008) ................................................................. 31

*In re DVI, Inc. Sec. Litigation,*
    639 F.3d 623 (3d Cir. 2011) ................................................................. 31, 32

*Dal Ponte v. Am. Mortg. Express Corp.,*
    *No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug.*
    *17, 2006)* ................................................................................................ 21

*Davis v. Kraft Foods N. America,*
    No. 03-6060,
    2006 U.S. Dist. LEXIS 3512 (E.D. Pa. Jan. 31, 2006) ............................... 27

*Dewey v. Volkswagen AG,*
    558 F. Supp. 2d 505 (D.N.J. 2008)...............................................................14

*Dewey v. Volkswagen of America, Inc.,*
    728 F. Supp. 2d 546 (D.N.J. 2010), Appeal Docketed,
    No. 10-3652 (3d Cir. Sept. 15, 2010), *reversed on other*
    *grounds* ...............................................................................2, 31, 34, 35, 37

*Dewey v. Volkswagen Aktiengesellscahft,*
    681 F.3d 170 (3d Cir. 2012) ..........................................................................2

*Elias v. Ungar's Food Products, Inc.,*
    252 F.R.D. 233 (D.N.J. 2008) ................................................................21, 22

*Fogie v. Thorn Americas, Inc.,*
    No. 3-94-359,
    1997 U.S. Dist. LEXIS 23562 (D.Minn. Feb. 19, 1997) ..............................38

*Forestal Guarani S.A. v. Daros International, Inc.,*
    613 F.3d 395 (3d Cir. 2010) ........................................................................22

*Gates v. Rohm & Haas Co.,*
    No. 06-1743,
    2010 U.S. Dist. LEXIS 20343 (E.D. Pa. Mar. 5, 2010)...............................13

*Gray v. Bayer Corp.,*
    No. 08-4716 (JLL),
    2011 U.S. Dist. LEXIS 79498 (D.N.J. Jul. 21, 2011) ......................16, 18, 23

*Hassine v. Jeffes,*
    846 F.2d 169 (3d Cir. 1988) ).................................................................14, 28

*Hayes v. Wal-Mart,*
    No. 10-460 (JBS/JS),
    2012 U.S. Dist. LEXIS 33329 (D.N.J. Mar. 12, 2012).........12, 28, 33, 35, 37

*In re Hydrogen Peroxide Antitrust Litigation,*
    552 F.3d 305 (3d Cir. 2008).........................................................................13

*Inmates of the Northumberland County*,
   No. 08-cv-345,
   2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17, 2009)...........................26

*In re Ins. Broker Antitrust Litig.*,
   579 F.3d 241, 271 (3d Cir. 2009)....................................................................31

*In re K-Dur Antitrust Litigation*,
   No. 10-2077,
   2012 U.S. App. LEXIS 14527 (3d Cir. Jul. 16, 2012).................................13

*Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig.*,
   MDL No. 2036), 275 F.R.D. 666 (S.D. Fla. 2011)..................................23, 36

*Marcus v. BMW of N. Am., LLC*,
   No. 08-5859 (KSH),
   2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010)......................*passim*

*In re McKesson HBOC, Inc. Sec. Litigation*,
   126 F. Supp. 2d 1239 (N.D.Cal. May 1, 2000)..............................................38

*In re Mercedes-Benz Tele Aid Contract Litigation*,
   257 F.R.D. 46 (D.N.J. 2009)...................................................2, 15, 16, 17, 18,
   19, 20, 21, 33

*Neale v. Volvo Cars of North America, LLC*,
   No. 10-cv-04407 (DMC)...........................................................................2, 34

*In re Netsmart Technologies, Inc. Shareholders Litigation*,
   924 A.2d 171 (Del. Ch. 2007).........................................................................38

*Newton  v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)............................................................................26

*Nikolin v. Samsung Elecs. Am., Inc.*,
   Civ. No. 10-1456,
   2010 U.S. Dist. LEXIS 110942 (D.N.J. Oct. 18, 2010)................................15

*In re OSB Antitrust Litigation,*
    No. 06-826,
    2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007) .............24, 25, 26, 27

*Oatman v. United States,*
    No. 92-0219,
    1996 U.S. Dist. LEXIS 2929 (D. Idaho Mar. 4, 1996) ................................38

*P.V. ex rel. T.V. v. Camp Jaycee,*
    962 A.2d 453 (N.J. 2008) ...........................................................................14

*Payne v. Fujifilm USA, Inc.,*
    No.  07-385 (GEB),
    2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) ................................21

*Pro v. Hertz Equip. Rental Corp.,*
    No. 06-CV-3830 (DMC),
    2008 U.S. Dist. LEXIS 100181 (D.N.J. Dec. 11, 2008) ..............................13

*In re Prudential Insurance Co. Sales Litigation,*
    148 F.3d 283 (3d Cir. 1998) ..................................................................25, 31

*In re Remeron End-Payor Antitrust Litigation,*
    No. 02-2007 FSH,
    2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005)....................32, 35, 36

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) .......................................................................12

*Saunders v. Berks Credit & Collections, Inc.,*
    No. 00-3477,
    2002 U.S. Dist. LEXIS 12718 (E.D.Pa. July 11, 2002) ...............................24

*Self v. TPUSA, Inc.,*
    No. 08-395,
    2008 U.S. Dist. LEXIS 71341 (D. Utah Sept. 19, 2008) .............................38

*Smith v. Merial Ltd.,*
    No. 10-439,
    2011 U.S. Dist. LEXIS 56461 (D.N.J. May 26, 2011) .................................15

*Stewart v. Abraham,*
   275 F.3d 220 (3d Cir. 2001) ........................................................... 24

*Sullivan, et al. v. DB Investments, Inc.,*
   667 F.3d 273 (3d Cir. 2011), *cert. denied,*
   *Murray v. Sullivan*, 132 S. Ct. 1876 (2012) ................................. 2, 29, 30, 33

*Union Ink. Co. v. AT&T Corp.,*
   352 N.J. Super. 617 (N.J. App. Div. 2002) ................................... 35

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ................................................... 13, 25, 30

*Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir. 2004) ................. 12

*Williams v. National Sec. Insurance Co.,*
   237 F.R.D. 685 (M.D. Ala. 2006) ................................................ 33

## **Statutes**

Fed. R. Civ. P. 23) .....................................................................*passim*

Fed. R. Civ. P. 30(b)(6) ................................................................ 10

Restatement (Second) of Conflict of Laws § 6.................................. 16, 20

Restatement (Second) of Conflicts of Law § 148........................ 17, 19, 21

I.    **SUMMARY OF ARGUMENT**

This case concerns a uniform design defect in the sunroof drainage systems of the following six Volvo vehicle models: S40, S60, S80, V70 (model years 2004 to present); XC90 (model years 2003 to present); and V50 (model years 2005 to present) (collectively, the "Class Vehicles").  As explained below, the sunroof drainage systems in the Class Vehicles harbor a defect which allows water − that should be directed to the exterior of the vehicle − to instead become entrapped within the passenger compartment floorpans, causing damage to the vehicles, including interior components, carpets, and safety-related electrical sensors and wiring.

Plaintiffs allege that Volvo[1] was well aware of this sunroof drainage system defect (the "Sunroof Drainage Defect"), as demonstrated by numerous consumer complaints, internal Volvo communications and Technical Service Bulletins issued by Volvo in an unsuccessful attempt to address the problem.  The evidence adduced by Plaintiffs in discovery confirms this knowledge by Volvo and verifies that the Sunroof Drainage Defect is indeed a widespread design defect common to all of the Class Vehicles.

---

[1] The two Defendants are Volvo Cars of North America, LLC and Volvo Car Corporation.  For purposes of this memorandum, they are collectively referred to as "Volvo" or "Defendants."

Plaintiffs' claims related to this defectively designed product are ideally suited for class certification. This Court has already rejected Volvo's initial attempt to have the Rule 23 allegations stricken from the complaint.[2] Since then, the *en banc* panel of the Third Circuit issued a comprehensive opinion which explains, among other things, that the proper focus at class certification is the conduct of the *defendant*, and that class certification is appropriate where its misconduct is common to all class members.[3] This is also consistent with a thorough opinion by Magistrate Judge Shwartz in which she certified a settlement class in a case related to virtually identical sunroof design defects in automobiles.[4] Such a result is also supported by numerous other decisions from this Court involving defective components of an automobile.[5] Because Plaintiffs' motion is supported by the applicable

---

[2] *Neale v. Volvo Cars of North Am., LLC*, No. 10-cv-04407 (DMC) (JAD), 2011 U.S. Dist. LEXIS 39154 (D.N.J. Apr. 11, 2011) (Dkt. Entry No. 43).

[3] *Sullivan, et al. v. DB Investments, Inc.*, 667 F. 3d 273, 298 (3d Cir. 2011), *cert. denied*, *Murray v. Sullivan*, 132 S. Ct. 1876 (2012).

[4] *Dewey v. Volkswagen of America, Inc.*, 728 F. Supp. 2d 546 (D.N.J. 2010), Appeal Docketed, No. 10-3652 (3d Cir. Sept. 15, 2010), *reversed on other grounds*, *Dewey v. Volkswagen Aktiengesellscahft*, 681 F.3d 170 (3d Cir. 2012).

[5] *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009), *decertification denied in In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113 (D.N.J. 2010),

law, and since the factual record clearly demonstrates that the Class Vehicles suffer from a uniform defect, Plaintiffs' motion for class certification should be granted.

## II.   FACTUAL BACKGROUND

### A.   FACTS COMMON TO PLAINTIFFS AND CLASS MEMBERS.

The sunroofs in the Class Vehicles consist of a frame, glass panel, and a sunroof tray (or "gutter") with four drainage holes.   Attached to the sunroof tray drainage holes is a sunroof drainage system that includes rubber drainage tubes and sound traps at the end of the drain tubes.



[7] The

---

*appeal denied by In re Mercedes-Benz Tele Aid Contract Litig.*, No. 10-8019, 2010 U.S. App. LEXIS 8087 (3d Cir. Apr. 19, 2010).



[7] Deposition of Staffan Sandberg ("Sandberg Dep."), 76:12-24, attached to Schelkopf Cert. at Exhibit 1.

diagram below shows the location of the sunroof tray, drainage holes, drainage tubes and sound traps (also referred to as sound plugs).



The two drain tubes closest to the front windshield are routed through the A-Pillars, and two rear drain tubes travel downward along the rear body pillars.



---

[8] Please refer to the expert report of Dr. Charles E. Benedict PhD, PE ("Benedict Report"), submitted in support of Plaintiffs' Motion for Class Certification. Dr. Benedict's report sets forth the liability, including the



[10]   Unfortunately, the sound traps are defective in that they greatly inhibited the flow of water and debris through the two front drainage tubes.  This restrictive design inevitably results in the sound traps becoming blocked and clogged with dirt, debris, leaves, and other naturally occurring particles thereby causing a backup of water in the sunroof drainage system.  When this occurs, the water will often enter the interior of the vehicle through the connections between the sound traps and the sunroof drainage tubes or by backing up into the sunroof tray and overflowing into the vehicle's interior.  As a result, the overflowed water gravitates to the lowest point in the vehicle and often collects in the driver and passenger side floorpans.

Plaintiffs allege that Volvo failed to disclose to Plaintiffs and Class Members that the Class Vehicles suffered from this Sunroof Drainage

---

existence, nature and scope of the sunroof drainage defect at issue, as well as, it being the result of a uniform design defect by Volvo.

[9] *See* Sandberg Dep. at 29:25-30:15.

[10]  *See* Deposition of Stefan Persson ("Persson Dep.") at 39:17-40:17, attached to Schelkopf Cert. at Exhibit 2.

Defect.  They contend that the defect has caused and will continue to cause extensive damage to the Class Vehicles by allowing an ingress of water into the interior of the Class Vehicles.  Moreover, when the Sunroof Drainage Defect occurs it may pose a safety risk to the operator of the vehicle since the water intrusion can damage important electrical items and/or sensors.[11]

Not only did Volvo actively conceal the material fact that the sunroof drainage system is defective (and will lead to costly repairs), it also did not reveal that the existence of this defect would diminish the intrinsic and resale value of the vehicles.  Nor did it disclose that this defect could potentially cause rust and water damage to surrounding electronic components and create a safety concern.

The named plaintiffs and proposed class representatives are Joanne Neale, Keri Hay, Kelly McGary, Svein A. Berg, Gregory Burns, David Taft, Jeffrey Kruger and Karen Collopy (together, "Plaintiffs").  At the time of their vehicle purchases, Plaintiffs were residents of New Jersey, California,

---

[11] Specifically, the water that accumulates at the bottom of the passenger compartment can disable the vehicle's "yaw sensor."  The yaw sensor is an electrical component which detects changes in vehicle momentum – or yaw rate – that may cause a vehicle to spin out, oversteer or understeer.  When the yaw sensor detects a sudden change in the yaw rate of a vehicle then it informs the Electronic Stability Control ("ESC") to take the appropriate actions by applying braking to only certain wheels as needed to correct vehicle stability.  Second Amended Complaint ("SAC") ¶¶ 88-96; *See also* Benedict Report at pp. 26-7.

Massachusetts, Maryland, Florida, and Hawaii.[12]   As alleged in the SAC, each Plaintiff purchased or leased a Class Vehicle, experienced the Sunroof Drainage Defect, and suffered economic injuries as a result of the defect.  At bottom, Plaintiffs assert the same legal claims based on the same legal theories against the same Defendants to remedy the same defect.  Plaintiffs will rely on common evidence to prove these claims, and each of the purported defenses raised by Defendants to date will turn on common factual and legal questions.  For these reasons, and for those that follow, the proposed class should be certified.

**B.   ADDITIONAL FACTS UNCOVERED IN DISCOVERY.**

The facts uncovered by Plaintiffs in discovery verify the allegations in the SAC and confirm that class certification is appropriate.



---

[12] Subsequent to his vehicle purchase in Hawaii, Plaintiff Berg moved to New York.  *See* SAC ¶ 32.  To the extent that Volvo argues (and/or the Court concludes) that New York law is applicable instead of Hawaii law, Plaintiffs reserve the right to move for class certification under New York law.

[13] *See* Persson Dep. at 39:24-40:17.





---

[14] McCloskey Dep. at 46:16-25; 47:2-4.

[15] *Id.* at 47:16-48:1.

[16] *Id.* at 48:11-24.

[17] *Id. See also* Deposition of Darren Bisaccia ("Bisaccia Dep."), 24:20-24, attached to Schelkopf Cert. at Exhibit 4.



[19] McCloskey Dep. at 53:10-18.



---

[20] *Id.* at 64:3-18; Bisaccia Dep. 120:11-21.

[21] McCloskey Dep. at 77:2-8. *See also* Deposition of Christopher Densley ("Densley Dep.") at 51:4-19, attached to Schelkopf Cert. at Exhibit 5.

[22] McCloskey Dep. at 78:25-79:8.

[23] *Id.* at 85:2-87:1.

[24] *See* Neale.VCC.0003856 (emphasis supplied) attached to Schelkopf Cert. at Exhibit 6.





[25] *See* Schelkopf Cert. at Exhibit 6,

[26] Bisaccia Dep., 81:14-82:25; 83:17-84:17.

[28]   These facts support the application of

New Jersey law to the proposed nationwide class.

### III.   ARGUMENT

#### A.   THE PROPOSED CLASS AND ALTERNATIVE CLASSES.

Plaintiffs seek class certification of the following counts asserted in the SAC: breach of express warranty (Count II), breach of the implied warranty of merchantability (Count III), breach of the duty of good faith and fair dealing (Count V) and the claims asserted pursuant to the consumer protection statutes of New Jersey, Massachusetts, Florida, California and Hawaii (Counts I, VI, VII, VIII respectively). Specifically, Plaintiffs seek to certify the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3):

> All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

---

[27] Densley Dep. at 26:2-6.

[28] *Id.* at 59:1-60:7.

In the alternative[29] to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above:

All persons or entities in Massachusetts who are current or former owners and/or lessees of a Class Vehicle (the "Massachusetts Class").

All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle (the "Florida Class").

All persons or entities in Hawaii who are current or former owners and/or lessees of a Class Vehicle (the "Hawaii Class").

All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the "New Jersey Class").

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class").

All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle (the "Maryland Class").[30]

---

[29] Should this Court decline to certify a Nationwide Class, Plaintiffs have submitted a Proposed Alternative Order granting class certification of the Massachusetts, Florida, Hawaii, New Jersey, California, and Maryland classes.

[30] The latter sub-class for Maryland residents was not included in the SAC. However, a court "is not bound by the class definition proposed in the complaint." *Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir. 2004) (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). In addition, a district court has "broad discretion to modify the definition of a proposed class…" *Hayes v. Wal-Mart*, No. 10-460 (JBS/JS), 2012 U.S. Dist. LEXIS 33329, at *17-18 (D.N.J. Mar. 12, 2012) (citations omitted). Plaintiffs only seek class certification of this alternative Maryland state sub-class for breach of express and implied warranty, and for breach of the duty of good faith and fair dealing (*i.e.,* Counts II, III, and V in the SAC). With respect to the other five state sub-classes, Plaintiffs seek certification for

**B.**   **APPLICABLE LEGAL STANDARDS.**

In order to certify a class, the plaintiff bears the burden of satisfying all of the prerequisites of FED. R. CIV. P. 23(a), and one of the three sub-parts of Rule 23(b). *See, e.g., Pro v. Hertz Equip. Rental Corp.*, No. 06-CV-3830 (DMC), 2008 U.S. Dist. LEXIS 100181, at *2-3 (D.N.J. Dec. 11, 2008). While this inquiry requires a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), a district court retains "broad discretion in determining whether to certify a class." *Gates v. Rohm & Haas Co.*, No. 06-1743, 2010 U.S. Dist. LEXIS 20343, at *11 (E.D. Pa. Mar. 5, 2010) (citations omitted).

The Third Circuit recently explained that, in deciding a motion for class certification, a court should not inquire into the merits of the case any more than necessary to address the Rule 23 elements. *See In re K-Dur Antitrust Litig.*, No. 10-2077, 2012 U.S. App. LEXIS 14527, at *60-61 (3d Cir. Jul. 16, 2012) (citing *In re Hydrogen Peroxide,* 552 F. 3d at 311-12). That is, while a court may delve beyond the pleadings to determine whether the requirements for class certification are satisfied, *see In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008), this does not

---

those counts and for the counts based on Massachusetts, New Jersey, Florida, California and Hawaii consumer fraud statutes.

extend to merits inquiry to the extent it is irrelevant to class certification, and plaintiffs need not actually establish the validity of claims at the certification stage. *Id.*  *See also, Marcus v. BMW of N. Am., LLC,* No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010) (stating, in the context of an automobile design defect, the plaintiff "need not prove the elements of its claim" at class certification, and "[t]he ability of a named plaintiff to succeed on his or her individual claims has never been a prerequisite to certification of the class.")  (quoting *Hassine v. Jeffes,* 846 F.2d 169 (3d Cir. 1988)); *In re Bulk [extruded] Graphite Prods. Antitrust Litig.,* No., 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619, at *30 (D.N.J. Apr. 4, 2006) (same).   Because Plaintiffs have demonstrated that the elements of FED. R. CIV. P. 23(a) and 23(b)(3) are met in this case, the Court should certify the Class.

### C.   CHOICE OF LAW.

A district court sitting in diversity "must apply the law of the forum state, including its choice of law rules." *Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 516 (D.N.J. 2008) (citations omitted).  The Supreme Court of New Jersey, the forum state here, has adopted a two-step process for the choice of law analysis.  *P.V. ex rel. T.V. v. Camp Jaycee,* 962 A.2d 453, 460 (N.J. 2008).  The first step "is to determine whether an actual conflict exists"

between the potentially applicable laws. *Id.*  If there is no conflict, "the Court will apply the law of New Jersey, its forum state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58.

In the event of an actual conflict, however, the second step in the inquiry is to conduct the applicable choice of law analysis.  *See, e.g., Smith v. Merial Ltd.*, No. 10-439, 2011 U.S. Dist. LEXIS 56461, at *6-7 (D.N.J. May 26, 2011) ("if a conflict does exist, the Court must determine which state has the 'most significant relationship' to the claim, by weighing the factors set forth in the Restatement section corresponding to the plaintiffs cause of action.") (quoting *Nikolin v. Samsung Elecs. Am., Inc.,* Civ. No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *9 (D.N.J. Oct. 18, 2010)).  Each of the causes of action for which Plaintiffs seek certification contains a discrete choice of law test, and are analyzed below in light of these applicable standards.

### i.    *The Law Applicable to the Consumer Fraud Claims.*

A conflict exists between the potentially applicable consumer fraud statutes.  *See, e.g., Nikolin*, 2010 U.S. Dist. LEXIS 110942, at *9-10 (collecting cases).  As such, the choice of law analysis for Plaintiffs' consumer fraud claims is governed by Section 148 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW.  *See In re Mercedes-Benz Tele Aid,* 257

F.R.D. at 63.  The Section 148 contacts are to be evaluated in light of the principles set forth in Section 6 of the Restatement.[31]  *Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498, at *8 (D.N.J. Jul. 21, 2011).

Judge Debevoise's choice of law analysis of the consumer fraud claims pursuant to Sections 148 and 6 of the Restatement in *In re Mercedes-Benz Tele Aid* is instructive.  Like this case, *In re Mercedes-Benz Tele Aid* was a class action brought on behalf of consumers who sought to remedy the economic injuries they suffered as a result of purchasing a high-end automobile that had a defective component[32] sold by Mercedes, a Delaware

---

[31] These factors are "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations,(e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

[32] Specifically, that case involved Mercedes vehicles sold with a Tele-Aid emergency response system that could only receive an analog signal.  *See In re Mercedes-Benz Tele Aid*, 257 F.R.D. at 48.  While Mercedes was allegedly well aware of a pending FCC rule that would allow service providers (including those that serviced the Tele-Aid system) to switch their signals from analog to digital, it continued to sell cars with Tele-Aid systems that were only capable of receiving an analog signal.  *Id.*  Once this switch was made, consumers were faced with either making a costly upgrade or having a "useless" analog system.  *Id.* at 51-53.  The plaintiffs asserted

corporation with its principal place of business in New Jersey. *See* 257 F.R.D. at 48-50.

The Court in that case began its choice of law analysis by reference to section 148(2) of the Restatement because, just as in this case, "plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made."[33] *In re Mercedes-Benz*, 257 F.R.D. at 66 (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148(2)). *Accord, Gray,* 2011 U.S. Dist. LEXIS 79498, at *11.

---

several claims based on Mercedes' alleged failure to disclose this impending switch, while simultaneously continuing to market these devices. *Id.* at 50.

[33] That decision criticized *Agostino v. Quest Diagnostics Inc.,* 256 F.R.D. 437 (D.N.J. 2009), which analyzed the plaintiffs' consumer fraud claims under § 148(1) instead of § 148(2). Judge Debevoise opined that the *Agostino* court "erred" by applying the home state presumption in Restatement § 148(1), and "ignored" the considerations set forth in Restatement § 148(2). *In re Mercedes-Benz,* 257 F.R.D. at 66. *Agostino,* a case involving an elaborate multi-party scheme to overbill consumers, is also factually distinguishable: this case, like *In re Mercedes-Benz* and others, involves a uniform design defect in a mass produced product. Further, Plaintiffs submit that *In re Mercedes-Benz* is better reasoned and should be followed. And even if the Court here were to conduct its choice of law analysis under § 148(1) – and it should not – it would ultimately end up in the same place (*i.e.,* § 148(2)) because §148(1) provides that the home state presumption does not apply if "some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties…" RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148. Here, New Jersey has the most significant relationship.



*See* §(II)(B), *supra.*

On the other hand, as in *In re Mercedes-Benz* and in this case, each of the putative class members received[35] Volvo's alleged misstatements in his or her home state, where the Class Vehicle was purchased or leased. *See In re Mercedes-Benz,* 257 F.R.D. at 69. Therefore, Section 148(2) of the Restatement is the appropriate starting point. *See id.*

Section 148(2) contains six factors to be considered in determining which state has the most significant relationship "to the occurrence and the parties." *See In re Mercedes-Benz,* 257 F.R.D. at 65, 67-69. After thoroughly examining each of these six factors (as well as those contained in § 6 of the Restatement), the *In re Mercedes-Benz* Court concluded that New Jersey law should apply to the claims of all class members – including non-

---

[34] *Accord, In re Mercedes-Benz Tele Aid*, 257 F.R.D. at 59 ("New Jersey is clearly the site of the alleged wrongdoing in this case. Mercedes is headquartered in that state, and all decisions related to the marketing of Tele Aid were made and implemented by a 'Telematics team' located in Montvale, New Jersey.").

[35] While the Restatement uses the phrase "reliance," reliance is not an element of a NJCFA claim. *See Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498, at *9, n.2 (D.N.J. Jul. 21, 2011) (citations omitted).

New Jersey residents.[36] 257 F.R.D. at 66-69.  The Court found it particularly

significant that New Jersey was "the only state with an additional interest in

regulating a corporation headquartered within its borders." *Id.* at 67.  Judge

Debevoise also referred to the comments to the Restatement, which provide

that the "purpose sought" in the litigation should weigh in the consideration

of which state has the most significant relationship.  *Id.*  In light of these

comments in the Restatement, the Court concluded that the

> deterrent effect [of the NJCFA] would be compromised if
> Mercedes were allowed to avail itself of the law of states which
> limit recovery in consumer fraud actions to compensatory
> damages simply because its alleged wrongful activity, which
> took place within New Jersey, had nationwide effects. On the
> other hand, New Jersey's interest in limiting the liability of a
> corporation headquartered within its borders -- an interest
> which is implicit in the fact that the only form of punitive
> damages expressly allowed by the NJCFA are treble damages
> would be compromised if the company were subjected   to the
> law of states that do not limit punitive recovery in consumer
> fraud cases.  Therefore, the Court finds that New Jersey is the
> state of dominant interest and that its local law should control.

---

[36] The Court reached this conclusion even after determining that four of the
six factors in § 148(2) supported the application of each plaintiff's home
state, observing that "the relative importance of each of the considerations
articulated by Restatement § 148(2) varies depending on the circumstances
underlying the claim asserted." *In re Mercedes-Benz Tele Aid*, 257 F.R.D. at
67.  The two most significant factors – the place where the defendant made
the representations, and the domicile, residence, nationality, place of
incorporation and place of business of the parties – supported the application
of New Jersey law, as they also do here.  *See id.* (*citing* RESTATEMENT
(SECOND) OF CONFLICTS OF LAW § 148(c), (d)).

*Id.* at 68 (internal citations omitted).   Finally, the Court found that the "overlap[ing]" factors in section 6 of the Restatement also supported the application of New Jersey law.[37]  *See id.* at 68-69.

When the most pertinent factors of § 148(2) and § 6 are analyzed here, it becomes apparent that New Jersey law should apply to the claims of the Nationwide Class members because it has the most significant relationship to their claims.[38]  As Judge Debevoise observed in *In re Mercedes-Benz Tele Aid*, "[g]iven the fact that all of the conduct underlying Plaintiffs' consumer fraud claim took place in [New Jersey], consideration of 'the place where the defendant made the representations,' strongly supports applying the NJCFA

---

[37] These factors include "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS §6.

[38] The six factors listed in § 148(2) are not to be applied in a "mechanical process in which the Court simply tallies up the factors…and applies the law of the jurisdiction supported by the majority of them."  *See In re Mercedes-Benz Tele Aid*, 257 F.R.D. at 67.  Indeed, the Court in *In re Mercedes-Benz Tele Aid* concluded that New Jersey law should apply even though four of the six factors listed in § 148(2) did not support applying it nationwide.  *See id.* at 67-68.  Judge Debevoise reached this conclusion after considering the "policies underlying the various states' laws" and finding that § 148(2)(c) "outweighs those [other factors] that support applying the law of each class member's home state."  *Id.* at 68.

to Plaintiffs' claims.  257 F.R.D. at 67 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS §148(2)(c)).  Similarly, because the putative class members will be drawn from all 50 states, § 148(2)(d) – which considers the domicile, residence, nationality, place of incorporation and place of business of the parties – also weighs in favor of the application of the law of New Jersey, "the only state with an additional interest in regulating a corporation headquartered within its borders."  *Id.* (quoting § 148(2)(d)).  This Court should likewise apply New Jersey law and certify the Nationwide Class, as New Jersey is the state where Defendant Volvo Cars of North America, LLC maintains its headquarters; is the location where the Defendants' made their decisions related to what maintenance instructions and known defects should be communicated to vehicle owners and whether warranty/goodwill claims should be permitted; and is the place where the pertinent design decisions were made.  *In re Mercedes-Benz Tele Aid*, 257 F.R.D. at 63.  *See also, Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2008); *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006).

### ii.   *The Law Applicable to the Breach of Warranty Claims.*

The state laws potentially applicable to the breach of warranty claims are also in conflict with one another.  *See Payne v. Fujifilm USA, Inc.*, No.

07-385 (GEB), 2010 U.S. Dist. LEXIS 52808, at *27 (D.N.J. May 28, 2010). New Jersey applies a most significant relationship test to breach of warranty claims pursuant to the principles set forth in § 188 and § 6 of the Restatement (Second) of Conflicts of Laws. *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010). As discussed above, the relevant factors in § 6 of the Restatement support the application of New Jersey law to the claims of all Nationwide Class members. *See also, Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 240 (D.N.J. 2008) (certifying nationwide class for breach of express warranty claim).

### iii.   The Law Applicable to the Breach of Good Faith and Fair Dealing Claim.

The state laws of good faith and fair dealing also contain material differences. New Jersey also applies the most significant relationship test to the conflict of law analysis for this claim. *Clark v. Prudential Ins. Co. of Am.*, No. 08-6197 (DRD), 2009 U.S. Dist. LEXIS 84093, at *57-58 (D.N.J. Sept. 14, 2009). For the same reasons discussed above, this analysis should lead to the conclusion that New Jersey law is applicable to this claim.

### iv.   In the Alternative to Certification of the Nationwide Class, the Court Should Certify the State Sub-Classes.

In the event that the Court concludes that some or all of the foregoing claims should not be certified on behalf of the Nationwide Class under New

Jersey Law, Plaintiffs respectfully request that the Court certify each of the alternative state sub-classes of Massachusetts, Florida, Hawaii, California, New Jersey and Maryland state residents.  *See* FED. R. CIV. P. 23(c)(5) (permitting a class to be divided into subclasses).   While Plaintiffs respectfully submit that the Court should certify a Nationwide Class, if that request is denied they still satisfy the applicable class certification requirements for each of the state sub-classes, for the reasons discussed in the next section.  *See Marcus*, 2010 U.S. Dist. LEXIS 122908, at *51 (denying class certification of a nationwide class under the NJCFA, but certifying a New Jersey state only class); *Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498, at *26-29 (D.N.J. Jul. 21, 2011) (denying certification of a nationwide class, but giving leave to the plaintiff to move for class certification of an alternative, single state class).[39]

### D.    THE APPLICABLE RULE 23 REQUIREMENTS ARE SATISFIED.

Regardless of which state law(s) are ultimately applied to the claims of Class Members (or which class the Court decides to certify), the applicable requirements of FED. R. CIV. P. 23 are satisfied.  In order to certify

---

[39] *See also, Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig., MDL No. 2036),* 275 F.R.D. 666, 681 (S.D. Fla. 2011) (granting class certification to, *inter alia*, two state good faith and fair dealing subclasses and a single state unfair competition subclass.).

a class, the moving party must establish each of the four requirements of Rule 23(a), and also establish that the action is one of the three types listed under Rule 23(b).  *See, e.g., Marcus*, 2010 U.S. Dist. LEXIS 122908, at *4 (citations omitted).  Those criteria are discussed below.

### i.     *The Rule 23(a) Requirements are Satisfied.*

The four requirements FED. R. CIV. P. 23(a) are numerosity, commonality, typicality, and adequacy.

### 1.     <u>Numerosity</u>.

In order to be certified, the class must be "so numerous that joinder of its members is impracticable."  *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D. Pa. Aug. 3, 2007).  "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met."  *Id.* (citations omitted).  *See also, Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  "Satisfaction of…numerosity, does not require evidence of the exact number or identification of the members of the proposed class..." *Saunders v. Berks Credit & Collections, Inc.*, No. 00-3477, 2002 U.S. Dist. LEXIS 12718, at *16 (E.D.Pa. July 11, 2002).   In the context of a motion for class certification on behalf of owners of vehicles with an allegedly defective component, Judge Hayden stated that "the ratio of complaining customers to

cars purchased is irrelevant [to numerosity]." *Marcus*, 2010 U.S. Dist. LEXIS 122908, at *9.

Volvo cannot credibly contest that the numerosity requirement is met here, as the Class consists of hundreds of thousands of geographically dispersed people. ███████████████████████████████████████████████ [40]  This element is easily satisfied.

## 2. __Commonality.__

"Plaintiffs must also demonstrate that there are questions of law or fact common to the class." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *5. "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

---

[40] *See* Densley Dep. at 55:10-56:11.

*Mart Stores,* 131 S. Ct. at 2556.  Both the majority and dissenting opinions in that case agreed "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there are multiple common questions of law and fact – all of which focus Volvo's conduct and the alleged uniform defect of the Class Vehicles.   These common questions include whether the sunroof drainage systems in the Class Vehicles are defective, whether Volvo knew of the defect but failed to disclose it to the Class, and whether the maintenance instructions were inadequate and/or uniformly deficient.  This is sufficient to satisfy commonality.  *See Marcus*, 2010 U.S. Dist. LEXIS 122908, at *10 ("Inasmuch as both [plaintiff] and the rest of the class members will seek to prove that the defendants failed to disclose their product's deficiencies, [plaintiff] has carried his burden [as to commonality].").

**3.    Typicality.**

"Plaintiffs must show that the claims of the class representatives are typical of the claims of the class as a whole."  *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *6.  "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established."  *Inmates of the Northumberland County*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *71 (M.D. Pa. Mar. 17, 2009) (quoting *Newton*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

In this case, each of the Plaintiffs purchased a Class Vehicle and suffered economic injuries as a result of the Sunroof Drainage Defect, which is a uniform defect common to all of the Class Vehicles.  Plaintiffs and Class members are pursuing the same claims based on the same theories arising from the same alleged misconduct by Volvo.   Typicality is, therefore, present here.  *See Marcus*, 2010 U.S. Dist. LEXIS 122908, at *13-14; *Hayes,* 2012 U.S. Dist. LEXIS 33329, at *22-23.

### 4.  <u>Adequacy of Representation</u>.

Plaintiffs must also demonstrate that they will "fairly and adequately protect the interests of the class."  *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584 at *6 (*citing* FED. R. CIV. P. 23(a)(4)).   "This requirement has two components: 1) adequacy of class counsel, and 2) adequacy of the class representative."  *Davis v. Kraft Foods N. Am.*, No. 03-6060, 2006 U.S. Dist. LEXIS 3512, at *27 (E.D. Pa. Jan. 31, 2006) *Hayes*, 2012 U.S. Dist. LEXIS 33329, at *23.  Both requirements are satisfied here.

### a.  *Class Counsel Are Adequate.*

"To meet the adequacy requirement, counsel must have the ability and incentive to represent the class vigorously."  *Davis,* 2006 U.S. Dist. LEXIS

3512, at *27.  On January 4, 2011, Magistrate Judge Dickson appointed the law firms of Chimicles & Tikellis LLP and Mazie Slater Katz & Freeman, LLC as interim co-lead counsel for the class and several other firms as Plaintiffs' Interim Executive Committee.  *See* Docket Entry No. 15.  That motion was not opposed by Volvo Cars of North America, LLC.  Plaintiffs' counsel have extensive litigation experience in complex class action cases,[41] are committed to representing Plaintiffs and the class, and are adequate to represent the Class here.

### b.    *Plaintiffs are Adequate Class Representatives.*

In addressing the adequacy of the proposed class representative, district courts examine whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hayes*, 2012 U.S. Dist. LEXIS 33329, at *23 (quoting *Hassine v. Jeffes*, 846 F. 2d 169 (3d Cir. 1988).

---

[41] The firm resumes of these firms were previously submitted to the Court in connection with their application for the appointment of interim lead counsel.  *See* Docket Entry No. 14.

The eight named plaintiffs in this case are adequate class representatives. Like members of the Class, they purchased one of the Class Vehicles, and experienced a Sunroof Drainage Defect. They have actively overseen the prosecution of this case, participated in meetings and worked closely with counsel, responded to the Defendant's discovery requests, and have all been deposed by defense counsel. They have no conflict(s) with members of the Class, and are committed to pursuing this case. The adequacy requirement is readily satisfied.

### ii.      The Rule 23(b)(3) Requirements are Satisfied.

Plaintiffs seek class certification under Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3).

The Third Circuit's recent comprehensive analysis of the predominance inquiry of FED. R. CIV. P. 23 analysis in *Sullivan, supra,* is instructive here. The majority opinion in *Sullivan* confirmed that, for consumer fraud claims, the predominance inquiry focuses on whether the *defendant's conduct* was common to all class members, which predominates

over minor individual differences between plaintiffs.  *Sullivan*, 667 F.3d at 297-98.  As *Sullivan* confirms, the proper focus of the inquiry here is the Defendants' conduct in designing and marketing the Class Vehicles which all contain defective sunroof drainage systems – not the conduct of the Plaintiffs.[42]

The Third Circuit also observed in *Sullivan* that "variations in the rights and remedies available to injured class members under the various laws of the fifty states do not defeat commonality and predominance." *Sullivan*, 667 F.3d at 301.  It found "no support in our Court's jurisprudence for the proposition that commonality and predominance are defeated merely because the available rights and remedies differ under the several laws that form the basis for class claims."  *Id.*  The court further confirmed that nothing in the case law or language of Rule 23 commands that everyone in a class must allege identical or uniform causes of action, noting that "where a defendant's singular conduct gives rise to one cause of action in one state, while providing for a different cause of action in another jurisdiction, the

---

[42] The Third Circuit also confirmed that the Supreme Court's opinion in *Wal-Mart Stores*, 131 S. Ct. 2541 does *not* require inquiry into the existence or validity of each class member's claim at the class certification stage. Rather, *Wal-Mart* makes clear that "the focus is on whether the defendant's conduct was common to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan*, 667 F.3d at 299-300.

courts may group both claims in a single class action... [which] advances the laudatory purposes of the class action device, preserving the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion." *Id.* at 302. The court reiterated its holdings that where, as here, differences in state law fall into a limited number of predictable patterns, similar state laws could be grouped together as a unit. *Id.* at 301-02 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) and *In re Ins. Broker Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009)).

### 1.   __Predominance__.

"Predominance measures whether the class is sufficiently cohesive to warrant certification." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 207 (E.D. Pa. 2008), *aff'd*, *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011); *Amchem*, 521 U.S. at 623. "To determine whether common issues predominate over questions affecting only individual members, the court must look at each claim upon which the plaintiffs seek recovery and identify the law that applies to the claim." *Dewey*, 728 F. Supp. 2d at 568. While predominance requires that common questions outweigh individual questions, the existence of individual questions of fact or law does not *per se*

preclude class certification.   *Id.* at 568.   Predominance also requires a showing that the issues raised apply to the class as a whole, support at least one cognizable common cause of action, and involve common proof.   *Id. See also In re Remeron End-Payor Antitrust Litig.*, No. 02-2007 FSH, 2005 U.S. Dist. LEXIS 27011, at *11 (D.N.J. Sept. 13, 2005) (internal citations omitted).   While a district court should not "relax its certification analysis, or presume a requirement for certification is met," the Supreme Court has stated that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws..." *In re DVI, Inc. Secs. Litig.*, 639 F.3d at 629 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, (1997)).

These standards are readily met here.   All of the claims asserted by Plaintiffs in the SAC are based upon uniform defects contained in the sunroof drainage systems in Class Vehicles designed and/or manufactured by Volvo, and Volvo's uniform omissions about the same.   In *Marcus*, 2010 U.S. Dist. LEXIS 122908, the defendants argued that similar claims failed to satisfy predominance because the Court would have to examine whether each individual class member actually suffered an economic injury as a result of the allegedly defective run-flat tires at issue there.   *Id.* at 33.   In rejecting this argument, Judge Hayden explained:

> The relevant issue, however, is whether the class members got less than what they expected. [Plaintiff] has adduced evidence that supports the claim that the defendants provided a defective product and failed to disclose problems with the product. If [Plaintiff] demonstrates that a defect existed, he will have shown that the class members got less than they expected. The class can establish ascertainable loss with common proofs.

*Id.*

Similarly, this Court's decision in *Dewey* is instructive because in that case this Court certified a nationwide class for the purpose of granting final approval to a consumer class action settlement that, like this case, involved allegedly defective vehicles.[43] The plaintiffs in *Dewey* sought class relief on behalf of 5.5 million past and current owners of various Volkswagen and Audi vehicles from all 50 states. As in this case, the *Dewey* plaintiffs alleged that each of the class vehicles contained defective sunroof drain

---

[43] The fact that the *Dewey* opinion arose in the context of the final approval of a settlement as opposed to a contested motion for class certification (or motion to strike) does not diminish its significance here. "Rule 23 requirements are not relaxed in the settlement context." *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 08-1998, 2009 U.S. Dist. LEXIS 119870, at *13 (W.D. Ky. Dec. 22, 2009) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). A district court deciding whether to grant approval to a class action settlement must still conduct a "rigorous analysis" of the Rule 23 elements. *See Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 691 (M.D. Ala. 2006) (citing *Amchem*). *See also, Hayes,* 2012 U.S. Dist. LEXIS 33329, at *26 (discussing and following, in the context of a contested litigation class certification motion, the recent *Sullivan* settlement opinion). Moreover, both *Mercedes Tele-Aid* and *Marcus*, 2010 U.S. Dist. LEXIS 122908, discussed *infra*, did arise in the context of a contested motion for class certification.

systems that were susceptible to clogging, resulting in water damage to the

interior of the vehicle.   In certifying a nationwide class and granting final

approval of the settlement, the Court made clear that plaintiffs had satisfied

all of the requirements of obtaining class certification, including Rule

23(b)(3).  With respect to the predominance requirement the Court stated:

> [A]ll class members seek recovery based upon common legal
> theories for similar damages that each class member sustained
> or could sustain because the plenum or sunroof drain failed to
> keep water out or because the maintenance requirements were
> not clearly conveyed.   Accordingly, individual inquiries will
> not predominate over the common questions of fact and law, at
> least as to the express warranty claim, that are shared among
> members of the potential class.   Therefore, the predominance
> factor is satisfied.

*Dewey*, 728 F. Supp. 2d at 569.   So too here, Plaintiffs have satisfied this

requirement through the evidential record and by making allegations

virtually identical to those asserted in *Dewey*.[44]   In this case, the SAC

specifically alleges that Plaintiffs suffered an ascertainable loss by

"receiving less than what was promised."   SAC ¶ 185, and because if the

defect had been disclosed by Volvo, "consumers would not have purchased

---

[44] It is also noteworthy that the Court has previously denied Volvo's motion
to strike the class allegations, which contended, among other things, that "it
will be impossible" to ever certify a class because "no amount of discovery
on any topic" could "prove that each and every class member both suffered
water damage, and that the damage was directly caused by the known
defect." *Neale*, 2011 U.S. Dist. LEXIS 39154, at *4.

them or would have paid less for the Class Vehicles had they decided to purchase them." *Id.* ¶ 159. Thus, predominance is readily satisfied here. *See Hayes,* No. 10-460 (JBS/JS) 2012 U.S. Dist. LEXIS 33329, at *1, *4-5, *27-28 (certifying a Rule 23(b)(3) class where the defendant allegedly sold service plans without disclosing material information about them; the elements of Plaintiffs' case could be satisfied with common proofs since the harm from the same conduct by the defendant). *See also Union Ink. Co. v. AT&T Corp.,* 352 N.J. Super. 617 (N.J. App. Div. 2002) ("An ascertainable loss occurs when a consumer receives less than what was promised.").

### 2. <u>Superiority</u>.

Plaintiffs have also satisfied the superiority requirement of FED. R. CIV. P. 23(b)(3), which requires a court to consider whether a class action is the superior method of fairly and efficiently adjudicating the controversy. *Dewey*, 728 F. Supp. 2d. at 569. A class action is considered to be superior where individual class members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit. *See Remeron*, 2005 U.S. Dist. LEXIS 27011, at *12 (D.N.J. Sept. 13, 2005) (internal citations omitted). *See also* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing the "matters pertinent" to the superiority analysis).

Similarly, as in this case, a Plaintiff's expense to prosecute an individual Sunroof Drainage Defect claim against Volvo would be large and would exceed his or her actual damages. Therefore, it is not economically feasible for individuals to pursue individual prosecution and relief against Volvo, thereby leaving aggrieved persons without any effective redress absent the class action device. Courts have routinely cited this as a factor supporting a finding of superiority. *See, e.g., Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig.,* MDL No. 2036), 275 F.R.D. 666, 679 (S.D. Fla. 2011). Moreover, Volvo's failure to identify any other case related to the Sunroof Drainage Defect currently pending in this or any other court bolsters Plaintiffs' argument. *See Marcus,* 2010 U.S. Dist. LEXIS 122908, at *43.

Further, in contrast to the inefficiency of duplicative individual lawsuits, resolving all claims of Plaintiffs and class members in a single proceeding allows for substantial economies of time, effort and expense for the litigants as well as the Court. *See, e.g., Hayes,* 2012 U.S. Dist. LEXIS 33329, at *30-31. Allowing this class action to go forward will avoid potentially duplicative litigation, potentially inconsistent rulings, and save judicial resources. *See In re Remeron,* 2005 U.S. Dist. LEXIS 27011, at *12. Finally, putative Class members can be identified from Volvo's own

sales records and registration records, "thereby ensuring the efficiency of the action." *Marcus,* 2010 U.S. Dist. LEXIS 122908, at *43-44.  For these reasons, the Court in *Dewey* found that the superiority requirement was satisfied. 728 F.Supp. 2d at 569-590.  *Accord, Hayes,* 2012 U.S. Dist. LEXIS 33329, at *31 ("It would be desirable to concentrate this litigation in one forum considering all the class members' claims arise out of the same uniform course of conduct allegedly engaged in by the Defendant.").  This Court should likewise find that superiority is satisfied here.

### iii.    *Rule 23(b)(2) is Satisfied.*

Plaintiffs also seek certification under Rule 23(b)(2), which is applicable where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  While a Rule 23(b)(2) class must be cohesive, there are no predominance or superiority requirements as there are under Rule 23(b)(3).  *Barnes v. American Tobacco Co.,* 161 F.3d 127, 143 (3d Cir. 1998).

Here, Volvo's sale of Class Vehicles with a uniform defect and its conduct in failing to disclose this material fact satisfies the requirements of FED. R. CIV. P. 23(b)(2).  Among other things, Plaintiffs seek an order that

requires Volvo to repair or replace this defective component, extend the warranty to a reasonable period of time and, at a minimum, provide Class Members with appropriate notification of the existence of the defect and the necessary maintenance instructions.  *See* SAC at pages 61-2.  Several courts have certified classes that sought similar class-wide relief pursuant to Rule 23(b)(2).[45]  Certification of a Rule 23(b)(2) class is likewise warranted in this case.

---

[45] *See Fogie v. Thorn Americas, Inc.*, No. 3-94-359, 1997 U.S. Dist. LEXIS 23562, at *8-9 (D.Minn. Feb. 19, 1997) (where letter sent to certain class members contained misstatements, appropriate remedy was to send them "curative notices"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245-1247 (N.D.Cal. May 1, 2000) (mailing curative notice is appropriate remedy where party had sent misleading solicitations that asked the potential clients to make decisions "without the benefit of adequate information"); *Self v. TPUSA, Inc.*, No. 08-395, 2008 U.S. Dist. LEXIS 71341, at *14-15 (D. Utah Sept. 19, 2008) (party who maintained website with misleading information required to send curative notice); *Oatman v. United States*, No. 92-0219, 1996 U.S. Dist. LEXIS 2929, at *9-10 (D. Idaho Mar. 4, 1996) (certifying a Rule 23(b)(2) class and requiring defendant to identify class members to whom it had previously sent misleading notices, and to re-send them accurate notification);  *In re Netsmart Technologies, Inc. Shareholders Litig.*, 924 A.2d 171, 177-178 (Del. Ch. 2007) (preventing a merger vote from going forward until the corporation's board provided shareholders with "more complete and accurate information," where it had previously distributed a proxy statement that was "materially incomplete").

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification.  A proposed order granting this relief is submitted herewith.  Also submitted herewith is a trial plan that sets forth how Plaintiffs propose to try the case if class certification is granted in whole or in part.

Dated:  August 7, 2012

Respectfully submitted,

By:  *//s// Joseph G. Sauder*
Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

David A. Mazie
Matthew R. Mendelsohn
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898

*Interim Co-lead Counsel for*
*Plaintiffs and the Proposed Class*

Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
Two Gateway Center
Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000

Richard Norman
R. Martin Weber, Jr.
CROWLEY NORMAN LLP
3 Riverway, Suite 1775
Houston, Texas  77056
Telephone:  (713) 651-1771

Thomas K. Brown
Justin Presnal
FISHER, BOYD, BROWN, & HUGUENARD
2777 Allen Parkway, 14th Floor
Houston, Texas  77019
Telephone:  (713) 400-4000

James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH
475 White Horse Pike
Collingswood, NJ  08107-1909
Telephone:  (856) 858-1770
Facsimile: (856) 858-7012

Michael A. Caddell
Cory S. Fein
CADDELL & CHAPMAN
1331 Lamar, #1070
Houston TX  77010
713.751.0400 (phone)
713.751.0906 (fax)

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew D. Schelkopf, certify that redacted and unredacted versions of the foregoing were electronically filed on August 7, 2012, using the Court's CM/ECF system, and were thereby served upon all registered users in this case.

By: <u>/s/ Matthew D. Schelkopf</u>