NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NEALE, et al., | : | |
| Plaintiffs, | : | **Hon. Dennis M. Cavanaugh** |
| v. | : | **OPINION** |
| VOLVO CARS OF NORTH AMERICA, LLC, et al. | : | Civil Action No. 2:10-cv-4407(DMC)(MF) |
| Defendants. | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before this Court upon Motions of Defendants Volvo Cars of North America, LLC and Volvo Car Corporation (collectively "Defendants") to Preclude the Testimony and Expert Report of Walter Bratic and Charles Benedict (ECF Nos. 216, 217). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based on the following, it is the finding of this Court that Defendants' Motions are **denied**.

I.  BACKGROUND

This case is a potential putative class action brought by eight named Plaintiffs, Gregory Burns, Karen Collopy, David Taft, Svein Berg, Jeffrey Kruger, Joane Neale, Keri Hay and Kelly McGary (collectively "Plaintiffs"), on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees. Plaintiffs allege that a uniform design defect existed in the sunroof drainage

1

systems in the following six Volvo vehicles models: S40, S60, S80, V50, V70 (model years 20034 to present), XC90 (model years 2003 to present), and V50 (model years 2005 to present) (collectively "Class Vehicles"). Plaintiffs allege that the sunroof drainage systems in these vehicles harbored a defect which allows water to become entrapped within the passenger compartment floorpans, causing damage to the vehicles, including interior components, carpets, and safety-related electrical sensors and wiring. The alleged defect in the drainage system, according to Plaintiff's is the result of defectively designed "sound plugs," found at the bottom of the drainage tubes. Plaintiffs further allege that Volvo had longstanding knowledge of this material design defect, based on Plaintiffs assertion that numerous consumer complaints existed as well as internal Volvo communications and Technical Service Bulletins issued by Volvo in an unsuccessful attempt to address the problem.

On August 7, 2012, Plaintiffs filed their pending Motion for Class Certification. (ECF No. 85). In support of that Motion, Plaintiffs disclosed two expert witnesses, Walter Bratic and Dr. Charles Benedict.[1] Defendants filed the instant Motions to Preclude the Testimony and Expert Reports of Walter Bratic and Dr. Charles Benedict on September 25, 2012. (ECF Nos. 216, 217). Plaintiffs filed their Opposition to Defendants' Motions on October 26, 2012. (ECF Nos. 238, 237). Defendants filed their Reply Briefs on November 16, 2012. (ECF Nos. 260, 261). The Motions to Preclude the Testimony and Expert Reports of Walter Bratic and Dr. Charles Benedict are now before this Court.

**II.    STANDARD OF REVIEW**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. That rule

---

[1] Plaintiffs also provided Dr. Benedict's Report in support of their respective Oppositions to Defendants' Motions for Summary Judgment. Dr. Benedict's Report can be found as Exhibit 3 to each of those Opposition Briefs. (ECF Nos. 140, 151, 199, 130, 172, 190, 162, and 181, respectively).

provides that an expert qualified by "knowledge, skill, experience, training, or education" may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence ro to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

The standards governing admissibility of expert testimony apply differently to each motion.

### A. Summary Judgment

Expert testimony is admissible on the merits if it meets three requirements: qualification of the expert, reliability, and relevancy. Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The seminal case for the admissibility of expert testimony is Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), which requires that the trial judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. Under Daubert, "[t]his entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

Plaintiffs do not have to "prove their case twice–they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994), abrogated on other grounds by General Electric Co. v. Joiner, 522 U.S. 136 (1997) (emphasis in original). As the Third Circuit has explained,

> The grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a

scientist's methodology has some flaws such that if they have been corrected, the scientist would have reached a different result.
Id.

### B. Class Certification

As to the class certification stage, while the law does not currently require that the Court conduct a full Daubert inquiry, in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2553-54 (2011), the Supreme Court expressed its "doubt" that "Daubert did not apply to expert testimony at the certification stage of class-action proceedings." See also, In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 323 (3d Cir. 2009) (stating that "opinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded, under Daubert or for any other reason"); Am. Honda Motor Co., Inc. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010) ("when an expert's report or testimony is critical to class certification, as it is here ... a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion") (citation omitted). On June 25, 2012, the Supreme Court granted certiorari in Comcast Corp. v. Behrend, --- S. Ct. ---, 2012 WL 113090, at *1 (June 2012), to consider "[w]hether a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." Regardless of whether a plenary Daubert inquiry applies at the class certification stage, Rule 702 requires that the expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID 702(a). Evidence may also be excluded, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

4

## III. DISCUSSION

### A. Walter Bratic

Plaintiffs assert that their pending Motion for Class Certification does not independently rely on the opinion of Mr. Bratic. Plaintiffs state that Mr. Bratic's opinions have only been offered in support of Plaintiffs' proposed Trial Plan. (ECF No. 238, "Pl. Bratic Opp. Br.," 1). As a result, Plaintiffs contend that Defendant's Motion to Exclude the opinion of Mr. Bratic should be denied as premature because it is directed exclusively at matters not critical to the Court's determination under Rule 23. (Pl. Bratic Opp. Br. 8). See, In re Hydrogen Peroxide, 552 F.3d 305, 324 (3d. Cir. 2008) ("In its sound discretion, a district court may find it unnecessary to consider certain expert opinion with respect to a certification requirement . . . ."); In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46 (D.N.J. 2009) ("The information contained in Dr. Lamb's expert report . . . is unnecessary to the Court's determination that Plaintiffs' claims are amenable to class treatment. Therefore, Mercedes' Motion to Exclude Dr. Lamb's report is moot . . ."). The Court agrees that it can properly make its determination on whether or not to certify the proposed class without considering Dr. Bratic's Report at this time. While consideration of Mr. Bratic's Report would certainly bolster Plaintiffs' arguments regarding damages, Plaintiffs' arguments regarding damages in their Motion for Class Certification do not rely exclusively on Mr. Bratic's Report. As such, the Court need not conduct any Daubert analysis on Dr. Bratic's Report at this time.

Accordingly, Defendant's Motion to Exclude the Report and Testimony of Walter Bratic is dismissed as moot.

### B. Dr. Charles Benedict

Plaintiffs offer Dr. Benedict's Report in support of both their Motion for Class Certification and their Oppositions to Volvo's Motions for Summary Judgment. It is Dr. Benedict's opinion that the sound traps[2], present in the drainage systems of all Class Vehicles, suffer from a common design defect.

As a threshold matter for both uses of the Report, the Court agrees with Plaintiffs first assertion that Dr. Benedict is qualified as an expert. Dr. Benedict is an electro-mechanical engineer who holds professional engineering licenses or registrations in four states. (Benedict Rpt., Ex. A, 1). He has designed, developed, and patented a number of sub-systems for vehicles. (Benedict Rpt. ¶ 2). Over the course of his forty one year career in the fields of product and machine design and analysis and product and system failure analysis, Dr. Benedict has investigated defects in over 100 vehicles. (Benedict Rpt. ¶¶ 2, 4). These qualifications satisfy the Daubert test.

In offering Dr. Benedict's Report in support of their Motion for Class Certification, Plaintiffs assert that Dr. Benedict's Report is reliable in assisting the Court to understand that the Class Vehicles suffer from an inherent, common design defect that is common to all Class Vehicles, and so, is susceptible to common proof. (ECF No. 237, "Pl. Benedict Opp. Br.," 6, 7). To reach his conclusion that a class-wide defect existed, Dr. Benedict examined, analyzed, and measured the sounds traps used in all Class Vehicles and confirmed that the narrow, restrictive plus-shaped slit openings that make the design defective were used in the sunroof drainage systems in all the Class Vehicles. (Benedict Rpt. ¶¶ 7,

---

[2] Sound traps exist at the ends of the drainage tubes. The intended purpose of these sound plus was to function as valves by reducing the amount of exterior wind noise entering the cabin of the vehicle, while still allowing water to draining from the sunroof. However, according to Plaintiffs, the sound traps are defective in that they greatly inhibited the flow of water and debris through the two front drainage tubes. (8/7/2012, ECF No. 87, Plaintiff's Motion for Class Certification Brief, 5).

6

11(pg.10), 21). Dr. Benedict relied on Volvo employees McCloskey, Sandberg and Bisaccia, who testified on behalf of Volvo, that all sound plugs utilized in the Class Vehicles have the same function and all have the same plus-shaped opening. (Benedict Rpt. ¶ 6, fn. 6). According to Plaintiffs, Dr. Benedict is not offering any opinion that any components of the sunroof drainage system other than the sound plugs are defective. (Pl. Benedict Opp. Br. 11, fn.7).

Conversely, Defendants contend that Dr. Benedict's opinion on the class-wide nature of the defect is unreliable because he did not personally examine all of the different models of Class vehicles. (ECF No. 217, Def. Benedict Mov. Br., 7-9, 11-12). Defendants also point out that some vehicles in the proposed class use the original sound plugs while other class vehicles use modified sound plugs with other part numbers, a statement which Dr. Benedict conceded when deposed. (Def. Benedict Mov. Br. 8). Defendants argue that Dr. Benedict has ignored the fact that Defendants increased the size of the sound plugs' openings in some of the models of Class Vehicles. Defendants point out that they increased the size of the opening in the May 2005 for new XC90 vehicles, and also for the new S40 and V50 vehicles in 2006. (ECF No. 261, Def. Benedict Rep. Br., 5).

The Court disagrees with Defendants' assertions that Dr. Benedict's failure to conduct more extensive scientific testing of drainage systems in all of the Class Vehicles renders his opinion inadmissible for purposes of Class Certification. Defendants' argument speaks to the weight that should be given to Dr. Benedict's opinion, not to its admissibility. See, e.g., Pineda v. Ford Motor Co., 520 F3d 237, 248 (3d. Cir. 2008) (holding that expert's failure to test the effectiveness of his proposed warning or compare it to warnings used by other manufacturers did not render his opinions inadmissible under Daubert, although they would have been more reliable had he done so); Altieri v. State Farm & Cas. Co., No. 09-2342, 2011 WL 1883054, at 83 (E.D. Pa. 2011) ("The shortcomings in Mr. Daniels' report

identified by Plaintiff (lack of testing, scientific information or mathematical equations) are certainly areas for cross-examination, as are Mr. Daniels' bases for his conclusions. However, under the circumstances, these go to the credibility, not the admissibility of his opinion.").

For purposes of class certification, Plaintiffs need not prove that the sound plugs in all Class Vehicles are actually defective. Rather, Plaintiffs only need to demonstrate that the existence of the Sunroof Drainage Defect can be established through common proof. See, In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311-12 (3d Cir. 1009) ("Plaintiffs' burden at the class certification stage is not to prove the element of antitrust impact . . . . Instead, the task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence common to the class rather than individual to its members.") Here, Dr. Benedict opines that all Class Vehicles contain a drainage system with sound plugs at the end of the drainage tubes and that all sound plugs are designed with a plus-shaped opening at the bottom. Dr. Benedict's Report attempts to identify one single piece, common to all class vehicles, that can be resolved by common proof. The issue of whether or not the modified sound traps are themselves defective or even that the sound traps are less likely to cause clogging in the drain tubes, is not as crucial at the class certification stage as it will be later in the trial proceedings.

Accordingly, Dr. Benedict's Report is admissible for purposes of class certification.

Next, in offering Dr. Benedict's Report in support of their Motion for Class Certification, Plaintiffs contend that Dr. Benedict's Report assists the trier of fact in understanding (1) how the sunroof drainage defect creates a safety risk and (2) the need to instruct Class Members that the sunroof drainage system requires maintenance. (Pl. Benedict Opp. Br., 15). Conversely, Defendants argue that Dr. Benedict's opinions should be excluded because they do not assist the trier of fact, are unreliable, and are

not the product of a scientific methodology.

Consistent with <u>General Electric</u>, but the Court believes that his opinion is good and reliable, for purposes of explaining how the alleged defect presents a safety issue. Dr. Benedict has explained that Volvo located non-waterproof electrical components in places n Class Vehicles that are exposed to water when the Sunroof Drainage System clogs. (Benedict Rpt. ¶¶ 11(p. 11), 17-19). He explains how the bathtub-shape of the floorpans in the Class Vehicles causes them to retain water that intrudes into the vehicles' interior, and how the carpeting can both hide the presence of the water and maintain the moisture. (Benedict Rpt. ¶¶ 43-44). Benedict further explains that contact with water can result in malfunction of those electrical components. (Benedict Rpt. at ¶ 45). While this may not be the most perfect form of evidence, Dr. Benedict's assessment of the safety risk posed by the allegedly defective sound plugs is helpful in assisting the Court, for purposes of Summary Judgment, as to the existence of a safety risk in Class Vehicles.

The Court also agrees with Plaintiffs' assertion that Dr. Benedict need not be an expert in writing automobile owners' manuals to be able to testify that Volvo owners needed to be instructed that maintenance of the sunroof drainage system was required to compensate, for the engineering flaw in the system's design. (Pl. Benedict Opp. Br., 18). Defendants have argued that Benedict's lack of experience and expertise in designing automobile manuals discredits his opinions regarding Volvo's failure to recommend necessary maintenance on the Sunroof Drainage System. (Def. Benedict Mov. Br, 23-24). The Third Circuit's decision in <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237 (3d Cir. 2008), is directly on point. The plaintiff in <u>Pineda</u> offered the testimony of an engineer to support his position that given the vehicle's design, Ford should have included additional instructions and safety warning in the vehicles service manual. <u>Id</u>. at 245. The trial court excluded that testimony, holding it failed to satisfy <u>Daubert</u>

9

because the plaintiffs' expert was an engineer, not a warnings expert. Id. at 241. The Third Circuit reversed, holding that although the plaintiff's expert might not be qualified to testify to the exact language that should be included in the manual or the typography to be used, as an engineer he was "substantively qualified" to testify that a warning of some sort was needed because "a proper warning is also a solution to an engineering problem." Id. at 245.

Dr. Benedict's Report recommends a warning to owners as a way to partially compensate for a defect that he has identified in the Defendants' design. The Report states, "[D]ue to the Sound Trap Defect . . . regular maintenance is necessary to ensure the system constitutes to function as intended." (Benedict Rpt., ¶ 28). Much like the expert in Pineda, Dr. Benedict's suggested instruction is intended to serve as a partial "solution to an engineering problem" and thus is within the scope of an engineer's expertise.

Accordingly, Dr. Benedict's Report may be considered for both the purposes of Summary Judgment and Class Certification.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions are **denied**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:        February 28, 2013
cc:          All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File