NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEALE, et al., | |
| Plaintiffs, | **Hon. Dennis M. Cavanaugh** |
| v. | **OPINION** |
| VOLVO CARS OF NORTH AMERICA, LLC, et al. | Civil Action No. 2:10-cv-4407(DMC)(MF) |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before this Court upon Motion of Plaintiffs to Preclude the Declaration and Testimony of Defendants' Expert Edward Caulfield (Nov. 09, 2012, ECF No. 242). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based on the following, it is the finding of this Court that Plaintiff's Motion is **granted**.

I.   BACKGROUND

This case is a potential putative class action brought by eight named Plaintiffs, Gregory Burns, Karen Collopy, David Taft, Svein Berg, Jeffrey Kruger, Joane Neale, Keri Hay and Kelly McGary (collectively "Plaintiffs"), on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees against Defendants Volvo Cars of North America, LLC and Volvo Car Corporation (collectively "Defendants"). Plaintiffs allege that a uniform design defect existed in the

1

sunroof drainage systems in the following six Volvo vehicles models: S40, S60, S80, V50, V70 (model years 20034 to present), XC90 (model years 2003 to present), and V50 (model years 2005 to present). Plaintiffs allege that the sunroof drainage systems in these vehicles harbored a defect which allows water to become entrapped within the passenger compartment floorpans, causing damage to the vehicles, including interior components, carpets, and safety-related electrical sensors and wiring. Plaintiffs further allege that Volvo had longstanding knowledge of a material design defect, based on Plaintiffs assertion that numerous consumer complaints existed as well as internal Volvo communications and Technical Service Bulletins issued by Volvo in an unsuccessful attempt to address the problem.

On July 3, 2012, Defendants filed nine summary judgment motions against each individual Plaintiff. (ECF Nos. 72-80). On August 7, 2012, Plaintiffs filed their pending Motion for Class Certification. (ECF No. 85). Defendants proffered declarations of Edward Caulfield ("Caulfield") in support of Defendants' Motions for Summary Judgment on the individual claims of the named Plaintiffs and in opposition to Plaintiffs' Motion for Class Certification. Plaintiffs' Motion to Preclude the Declaration and Testimony of Caulfield is now before the Court.

## II.  STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that an expert qualified by "knowledge, skill, experience, training, or education" may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence ro to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

The standards governing admissibility of expert testimony apply differently to each motionm

### A. Summary Judgment

Expert testimony is admissible on the merits if it meets three requirements: qualification of the expert, reliability, and relevancy. Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The seminal case for the admissibility of expert testimony is Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), which requires that the trial judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. Under Daubert, "[t]his entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

Plaintiffs do not have to "prove their case twice–they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994), abrogated on other grounds by General Electric Co. v. Joiner, 522 U.S. 136 (1997) (emphasis in original). As the Third Circuit has explained,

> The grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they have been corrected, the scientist would have reached a different result.
> Id.

### B. Class Certification

As to the class certification stage, while the law does not currently require that the Court conduct a full Daubert inquiry, in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2553-54 (2011), the Supreme Court expressed its "doubt" that "Daubert did not apply to expert testimony at the certification stage of

class-action proceedings." <u>See also, In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 323 (3d Cir. 2009) (stating that "opinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded, under <u>Daubert</u> or for any other reason"); <u>Am. Honda Motor Co., Inc. v. Allen</u>, 600 F.3d 813, 815-16 (7th Cir. 2010) ("when an expert's report or testimony is critical to class certification, as it is here ... a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion") (citation omitted). On June 25, 2012, the Supreme Court granted certiorari in <u>Comcast Corp. v. Behrend</u>, --- S. Ct. ---, 2012 WL 113090, at *1 (June 2012), to consider "[w]hether a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." Regardless of whether a plenary <u>Daubert</u> inquiry applies at the class certification stage, Rule 702 requires that the expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID 702(a). Evidence may also be excluded, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

### III. DISCUSSION

Caulfield has submitted two reports in this action: a Declaration dated July 2, 2012 offered as support to Defendants' Motions for summary judgment ("July Declaration") and a Declaration dated September 25, 2012 offered as support to Defendants' Opposition to Plaintiffs' Motion for class certification ("September Declaration"). Plaintiffs argue that "neither of these reports are based on the

analysis, methodology or fit necessary to withstand a Daubert challenge." (Pl's Mot. 4, ECF No. 243).

### A. July Declaration

Plaintiffs allege that Caulfield's July Declaration "misstates the work performed, is nearly entirely speculative, and lacks foundation for the opinions rendered" and ask the Court to exclude it in support of Defendants' motion for summary judgement. (Pl.'s Mot. 4). First, Plaintiffs argue that Caulfield's opinions are unsupported as Caulfield did very little work or research to substantiate his opinions. When deposed regarding the July Declaration, Caulfield admitted that there was "not too much work done so far" on the case prior to rendering his opinions, and that he had spent less than five total hours working on the case prior to his deposition. (Pl.'s Mot. 5, See Schelkopf Cert., Ex. 2, August Deposition of Edward Caulfield ("August Dep.") at 18:22-19:6, 17:8-9.) Plaintiffs argue that Caulfield misrepresented the amount and scope of work he did regarding this case; specifically, that the statements he made concerning the materials he reviewed and relied on forming the opinions of the July Declaration were shown to be false at his deposition "despite sworn statements." Plaintiffs state

> [Caulfield] did not review documents produced by defendants, merely "scanned" and/ or made a "cursory glance" at other discovery responses, did not review the plaintiff documents, and did not read *any* deposition transcripts, instead relying on summaries prepared by his staff.
> Compare July Declaration at ¶ 3 with Schelkopf Cert. Ex. 2, August Deposition of Edward Caulfield at 22:16-24:4; 26:11-19; 27:7-20).

(Pl.'s Mot 5).

Plaintiff next argues that as Caulfield did not perform adequate work prior to his July Declaration, his opinions expressed therein lack the substantive foundation or fit required by Daubert. The Court agrees. Caulfield gave his opinion on matters that he did not have understanding of, as his deposition testimony shows. For example, Caulfield opines that "water leaks can and do occur in vehicles of

5

essentially all makes and models for a variety of reasons unrelated to the sunroof drainage system," but conceded at his deposition that he had not seen any documents, testimony, or any other evidence that could demonstrate that these other causes were the cause of the leaks in the class vehicles. (August Dep. at 59:17 – 61:2).

Caulfield also opines that "based on the location of the yaw rate sensor . . . a substantial amount of water will have to enter the vehicle before the yaw rate sensor will be exposed to water." (July Declaration 8.) At the August deposition, Caulfield admits that although he discussed the location of the yaw sensor in three different vehicles, he only reviewed photographs from one 2004 XC90, and didn't know the location of the sensor in the other vehicles. (August Dep. at 79:9-74:-5).

Plaintiff cites to other instances of Caulfield's opining on issues that he admits he has not researched fully, or does not have the requisite knowledge to support. Defendant argues that "each of Dr. Caulfield's opinions meets the reliability standards of Daubert because each is supported by Dr. Caulfield's years of experience and practical engineering knowledge, as well as his research. (Def.'s Opp'n 6, ECF No. 263). Plaintiff alleges "the opinions contained in Caulfield's July Declaration are pure conjecture, are not based on substantive investigation, and are rebutted by his own deposition testimony." (Pl.'s Mot. 9) The Court agrees with Plaintiff. Daubert requires that an expert witness be reliable, going to "whether the expert's methodology is sound and whether his opinion is supported by 'good grounds.'" Milanowicz v. The Raymond Corp., 148 F. Supp. 2d 525, 530 (D.N.J. 2001) (citing In Re Paoli R.R. Yard PCB Litig., 35 F. 3d 717, 741-43 (3d Cir. 1994). An expert's personal qualifications and past experience is not sufficient. Caulfield's admitted lack of preparation and sound methodology convinces this Court that his opinion is not supported by "good grounds." Thus Plaintiffs Motion to Preclude the July Declaration is granted.

### B. September Declaration

Plaintiffs next asserts that the September Declaration is similarly speculative, unsupported by reliable investigation, and not the process of reliable scientific methodology. (Pl.'s Mot. 10).

Plaintiffs first bring to the Court's attention that Caulfield admitted in his deposition concerning that declaration that he himself did not follow the scientific method in rendering his own opinions. (Pl.'s Mot. 10, see Schelkopf Cert., Ex. 1, October Dep. at 38:17-40:10). The purpose of Caulfield's September Declaration is to assert that Plaintiffs' Expert Dr. Benedict's investigation was not the product of sound scientific principles. Plaintiffs argue "because Caulfield admitted that he did not follow the scientific method in rendering his September Declaration, the inquiry can end there – Daubert is not satisfied." (see October Dep. at 38:17-40:10).

Additionally, "notwithstanding his admitted failure to follow the scientific method in rendering his opinions," Plaintiffs also allege that Caulfield's opinions lack a reasonable basis. (Pl.'s Mot. 10). Plaintiffs challenge three specific opinions offered by Caulfield: First, his opinion that Volvos "warranty data show that for approximately 97% of the vehicles in the proposed class, the sunroof drainage systems in the vehicles operated without incident for as long as Volvo warranted it." (September Declaration at ¶28). During his deposition, Caulfield admitted that his opinion was based solely claims made within the specified warranty period. Plaintiffs argue that the opinion is not reliable because Caulfield does not include claims that were not covered under warranty or that fell outside the warranty period and because he did not do any additional testing to verify Volvo's warranty figures. (Pl.'s Mot. 11).

Second, Caulfield asserts that the majority of vehicle manufacturers do not include information about maintenance of sunroof drains, but admits in his deposition that he had not recently looked at any other manufacturers' owner's manuals aside from excerpts of Audi and Volkswagen manuals provided

7

him by Plaintiff's counsel at his prior deposition. ( Pl.'s Mot. 12, see Schelkopf Cert., Ex. 1, October Dep. at 79:15-80:12.) Defendants argue that "Dr. Caulfield relied on his background, experience from work conducted for other manufacturers and his general knowledge obtained from working thirty years in their industry." (Def.'s Opp'n 11-12).

Third, Caulfield opines that Dr. Benedict's reference to Retailer Technical Journals or Tech-Notes was improper, as those materials "are often issued to provide repair instructions to the technicians for a rare issue that the technicians do not regularly encounter," but at his deposition, Caulfield admitted they are also issued if there is a common problem that needs addressing. Defendants assert that "Dr. Caulfield based this opinion on years of his experience reviewing technical journals and similar documents routinely issued by every manufacturer." (Def.'s Opp'n 12-13, see October Dep. at 83: 6-12).

While Caulfield's admission that he did not use the scientific method and the lack of a reliable basis for his opinions separately might not be enough to exclude his declaration under Daubert, together they greatly undercut the reliability required to admit his declaration. The Court agrees with Plaintiffs that Caulfield's opinions are not reliable as they are not based on adequate, substantive research, a fact Caulfield admitted to in his deposition. Additionally, Defendants cannot rely exclusively on Caulfield's past experience to create a reasonable basis for his opinions. Thus the Court grants Plaintiff's motion to Preclude Caulfield's September Declaration.

8

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is **granted**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:   February 28, 2013
cc:     All Counsel of Record
        Hon. Mark Falk, U.S.M.J.
        File