NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEALE, et al., | : | |
| | : | |
| Plaintiffs, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| VOLVO CARS OF NORTH | : | Civil Action No. 2:10-cv–4407(DMC)(MF) |
| AMERICA, LLC, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on Plaintiffs' Motion for Class Certification (Aug. 7, 2012, ECF No. 85) and also on the Motions of Defendants Volvo Cars of North America, LLC and Volvo Car Corporation (collectively "Defendants") for Summary Judgment against the individually named Plaintiffs. (Jul. 3, 2012, ECF Nos. 72, 73, 74, 75, 76, 77, 78, 79). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. Based on the submissions of the parties, and for the reasons expressed herein, it is the decision of this Court that Plaintiffs' Motion for Certification of State Subclasses is **granted** and Defendants' Motions for Summary Judgment are **denied**.

## I.  BACKGROUND[1]

This case is a potential putative class action brought by eight named Plaintiffs, Gregory Burns, Karen Collopy, David Taft, Svein Berg, Jeffrey Kruger, Joane Neale, Keri Hay and Kelly McGary

---

[1]The facts in this section are taken from the parties respective submissions. The facts specific to each of the Plaintiffs are taken from the Second Amended Complaint ("SAC"). (ECF No. 66).

(collectively "Plaintiffs"), on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees. Plaintiffs allege that a uniform design defect existed in the sunroof drainage systems in the following six Volvo vehicles models: S40, S60, S80, V50, V70 (model years 2004 to present), XC90 (model years 2003 to present), and V50 (model years 2005 to present). Plaintiffs allege that the sunroof drainage systems in these vehicles harbored a defect which allows water to become entrapped within the passenger compartment floorpans, causing damage to the vehicles, including interior components, carpets, and safety-related electrical sensors and wiring. Plaintiffs further allege that Volvo had longstanding knowledge of a material design defect, based on Plaintiffs' assertion that numerous consumer complaints existed as well as internal Volvo communications and Technical Service Bulletins issued by Volvo in an unsuccessful attempt to address the problem.

In 2004, Plaintiff Kelly McGary ("McGary") and her husband, both Florida residents, purchased a new 2004 Volvo XC90 from Volvo of Tampa, an independent Volvo dealer located in Tampa, Florida. In December 2009, McGary noticed a sloshing sound in her vehicle by her driver's door area and saw that the carpet was wet. McGary brought her vehicle into Volvo of Tampa to repair the water leak. The invoice for the repair, dated December 19, 2009, states that the technician found the sunroof drains blocked, removed the A Pillar, and modified the sunroof drains. McGary paid about $700 to Volvo of Tampa for the repair. McGary's vehicle is now more than 7 years old and has been driven more than 70,000 miles.

Plaintiff Keri Hay ("Hay") is a Maryland resident who purchased her Volvo vehicle in Maryland. Hay went to Darcars of Rockville, Inc., a Maryland dealer, and bought a used XC90 on September 28, 2008. In May 2009, Hay noticed water spilling from her vehicle when she opened the door. On May 27, 2009, Hay took her vehicle to the dealer for repair. Darcars cleaned the vehicles sunroof drains and told

Hay that the repair to the sunroof drain was not covered under her warranty. She was charged approximately $775 for the repair.

Plaintiff Joanne Neale ("Neale") is a Massachusetts resident. On October 25, 2008, Neale purchased a certified pre-owned 2005 Volvo V50 4-door wagon from Dalzell Volvo, a dealership in Massachusetts. In March 2010, Neale heard a noise that sounded like sloshing water while she was driving her vehicle. She went to Dalzell Volvo to have it looked at, and Dalzell Volvo diagnosed the problem as a clogged sunroof drain. Neale asked Dalzell Volvo to repair the vehicle under the Certified Pre-Owned Limited Warranty, but they told her the water leak was not covered under that warranty. She paid $592.48 for the repair and received a free rental car while her vehicle was in the shop.

Plaintiff Gregory Burns ("Burns") is a New Jersey resident. On May 31, 2006, Burns and his spouse entered into a three year lease agreement with Red Bank Volvo, Inc., an independent Volvo dealer in New Jersey, for a 2006 Volvo V50 5-door wagon. Around March 2010, Burns noticed a water leak on the rear driver's side floorboard area. He did not stop driving the vehicle, but he used a wet vac to remove the water and took it to Garden State Volvo within a few days to diagnose the issue. Garden State Volvo found that the sunroof drains were clogged on the left side. The technician replaced the sound plug, and reinstalled the sunroof drain. Burns was charged $258.82 by Garden State Volvo for this service.

In February 2007, Plaintiff Karen Collopy ("Collopy"), a New Jersey citizen, purchased a pre-owned 2007 Volvo S40 from Red Bank Volvo in New Jersey. The vehicle previously had been used by the dealership as a loaner car to customers who brought their vehicles in for repair. In February 2012, Collopy noticed some water in her vehicle. Within a day or two, she took her vehicle to the Vovo Clinic, an independent service center, and the technician discovered that one drainage tube for her sunroof drain

3

was clogged and another was disconnected. The technician charged about $96 for cleaning and connecting the drainage tubes. The technician also advised Collopy to replace the carpet in her vehicle. In April 2012, she had the carpet replaced at a cost of $1,197.

In May 2003, Dr. David Taft ("Taft") and his spouse, both California residents, purchased a new 2004 Volvo XC90 from Smythe Volvo, an independent Volvo dealer in San Jose, California. Taft experienced water leaks after the warranty expired, and he paid for repairs in February 2009, February 2011, and February 2012.

On July 31, 2005, Plaintiff Jeffrey Kruger ("Kruger"), a California resident, purchased a new 2005 S40 from Volvo of Pleasanton in Pleasanton, California. After a rainstorm on January 28, 2012, Kruger found standing water in the driver's side front footwell that was about an inch deep. Shortly thereafter, he brought his vehicle to Precision Motors, and the technician found a plugged sunroof drain on the left side. The technician cleaned the sunroof drains, removed the driver's seat and front carpet, lifted up the left rear carpet and dried the vehicle out.

On January 28, 2007, Plaintiff Berg ("Berg"), a resident of Hawaii, purchased a used 2004 Volvo XC90 from Pflueger Acura in Hawaii. In August 2009, Berg discovered that the floor was wet on the passenger side in his vehicle. He found water on the floor several times after that, and each time he found water on the floor, he dried it up. Later in August 2009, Berg found standing water on the floor, dried it, and then started up the vehicle. When he started the vehicle, he received a urgent service message on the display, and then drove the vehicle to a mechanic that he used. The mechanic did a diagnostic examination and told Berg that the yaw sensor needed to be replaced. Berg experienced water in his vehicle again in January 2010. After drying it out, he found a description of a repair to the sunroof drainage pipe on the internet, brought the printout of the repair and his vehicle to his mechanic, and asked

4

the mechanic to cut the hose where it narrows as indicated on the internet printout. Berg paid about $187.50 for the mechanic to perform the work.  In July 2010, Berg sold the used MY 2004 XC90 to a private party in Hawaii.

On August 7, 2012, Plaintiffs filed the instant Motion for Class Certification. Plaintiffs also filed an accompanying Moving Brief ("Pl. Cert. Br.") in support of their Motion (ECF No. 87). Defendants filed an Opposition Brief ("Def Opp. Br.") on September 25, 2012. (ECF No. 215). Plaintiffs filed a Reply ("Pl. Rep") on November 9, 2012. (ECF No. 247).

Also before this Court are Defendants' individual Motions for Summary Judgment against each of the named Plaintiffs filed on July 3, 2012. (ECF Nos. 72, ,73, 74, 75, 76, 77, 78 and 79). Plaintiffs filed  Opposition Briefs to each of those Motions on August 24, 2012. (ECF Nos. 140, 151, 199, 130, 172, 190, 162, and 181). Defendants filed Reply Briefs on September 28, 2012. (ECF Nos. 218, 220, 225, 231, 233, 227, 229 and 223).

Both Plaintiffs' Motion for Class Certification and Defendants' individual Motions for Summary Judgment are now before the Court.

## II.   LEGAL STANDARDS

### A. Class Certification

Class certification under FED. R. CIV. P. 23 has two primary requirements.  First, pursuant to Rule 23(a), the party seeking class certification must demonstrate the existence of numerosity of the class, commonality of the questions of law or fact, typicality of the named parties' claims or defenses, and adequacy of representation.  Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in FED. R. CIV. P. 23(b).  Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to Plaintiffs or Defendants.  In re Ikon

Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 2000). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole. Certification under Rule 23(b)(3) is permitted when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008) (quoting FED. R. CIV. P. 23(b)(3)). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." Id.

### B. Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the (non-moving party), demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the (non-moving party) if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all

6

doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the (nonmoving party)." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III. DISCUSSION

### A. CLASS CERTIFICATION

#### 1. The Proposed Class

Plaintiffs seek certification of either a nationwide class or statewide classes as to their claims against Defendants. (Pl. Cert. Br. 11-12). Conversely, Defendants argue that class certification must be denied because the definitions for both Plaintiffs' proposed nationwide class and statewide classes are overbroad and because New Jersey law cannot be applied nationally. (Def. Opp. Br. 14). Plaintiffs' proposed definition for the nationwide class that they seek to certify is as follows:

> All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

In the alternative, pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes:

> All persons or entities in Massachusetts who are current or former owners and/or lessees of a Class Vehicle (the "Massachusetts Class").

> All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle (the "Florida Class").

> All persons or entities in Hawaii who are current or former owners and/or lessees of a Class Vehicle (the "Hawaii Class").

> All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the "New Jersey Class").

7

> All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class").
>
> All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle (the "Maryland Class").[2]

First, as a threshold matter, the Court disagrees with Defendants' contentions that all of the proposed class definitions are overbroad because they contain many Plaintiffs who have not experienced the manifestation of the alleged defect. (Def. Opp. Br. 14-16). As Plaintiffs properly argue, a class need not be limited to consumers who have actually experienced the defect where the product at issue suffers from a uniform design defect. Class certification has been granted in similar cases in other Circuits, where an automobile component suffers from a design defect that is uniform in a number of vehicles. See, Daffin v. Ford Motor Co., 458 F.3d 549, 553 (6th Cir. 2006); Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010). More recently, in Hayes v. Wal-Mart, Judge Simandle rejected attacks on the certification of a similar proposed class based on the argument that the proposed class definition was too broad because it "includes class members who suffered no harm." 281 F.R.D. 203, 210 (D.N.J. 2012). Judge Simandle wrote that the defendant's argument "ignores clear case law which states that 'plaintiffs need not prove that class members have been injured for purposes of defining the class.'" Id. (quoting Rowe v. E.I. Dupont Demours & Co., 262 F.R.D. 451, 455 (D.N.J. 2009)). Instead, the relevant inquiry is whether the defined class specifies a particular group that was harmed in a particularized way, and whether the class can be ascertained in some objective manner. Id.

Additionally, Plaintiffs proposed class definitions do not fail because they include former owners.

---

[2] The sub-class for Maryland residents was not included in the Sec. Amend. Compl. ("SAC"). However, a court "is not bound by the class definition proposed in the complaint." Weisfeld v. Sun Chem. Corp., 84 Fed. Appx. 257, 259 (3d Cir. 2004) (quoting Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993)).

A reading of the Amended Complaint reveals that Plaintiffs seek relief due to the fact that they would not have purchased the Class Vehicles or would have paid less for them, and the "substantial loss in value and resale value of the vehicles, and other related damage."(See, SAC ¶¶ 115, 122). These injuries apply to both current and former vehicle owners.

Next, Plaintiffs propose the certification of a nationwide class, and argue extensively for the application of New Jersey law to all claims in this action. (Pl. Cert. Br. 14-23). Defendants argue that New Jersey law cannot be applied nationally. (Def. Opp. Br. 10-13). A district court sitting in diversity "must apply the law of the forum state, including its choice of law rules." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 516 (D.N.J. 2008) (citations omitted). The Supreme Court of New Jersey, the Court for the forum state here, has adopted a two-step process for the choice of law analysis. P.V. ex. rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008). The first step "is to determine whether an actual conflict exists" between the potentially applicable laws. Id. If there is no conflict, "the Court will apply the law of New Jersey, its forum state." In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 58 (D.N.J. 2009). In the event of an actual conflict, however, the second step in the inquiry is to conduct the applicable choice of law analysis. "If a conflict does exist, the Court must determine which state has the 'most significant relationship' to the claim, by weighing the factors set forth in the Restatement section corresponding to the plaintiffs cause of action." Smith v. Merial Ltd., No. 10439, 2011 U.S. Dist. LEXIS 56461, at *6-7 (D.N.J. 2011) (quoting Nikolin v. Samsung Elecs. Am., Inc., Civ. No 10-1456, 2010 U.S. Dist. LEXIS 110942, at *9 (D.N.J. 2010)).

First, despite Plaintiffs extensive arguments, under the facts and circumstances here, it is not appropriate to apply the New Jersey Consumer Fraud Act ("NJCFA") to the proposed nationwide class. Where a fraud or misrepresentation claim has been alleged, the court looks to the factors set forth in §

148 of the Restatement (Second) of Conflict of Laws. Under subsection (1) of § 148, when the "plaintiff's action in reliance took place in the state where the false representations were made and received," there is a presumption that the law of that state applies. Under subsection (2), when the plaintiff's action in reliance takes place in a different state than where the false representations were made and received, courts weigh the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

§ 148(2). "The factors enumerated in [the Restatement] should be evaluated on a qualitative rather than a quantitative basis." David B. Lilly Co. v. Fisher, 18 F.3d 1112, 1119 (3d Cir. 1994). The relative importance to each of the factors in a given case "should be determined in light of the choice-of-law principles stated in § 6 [of the Restatement]." Restatement (Second) of Conflict of Laws § 148 cmt. e. Those principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; (and 5) the competing interests of the states." P.V. ex. rel. T.V. v. Camp Jaycee, 962 A.2d 453, 463 (N.J. 2008) (citations omitted).

Here, Plaintiffs contend that an analysis of their claims under § 148(2) warrants application of New Jersey law to a nationwide class because Defendants' alleged misconduct took place in New Jersey. (Pl. Cert. Br. 17, 18). Plaintiffs rely heavily on In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46 (D.N.J. 2009) in support of its argument. Plaintiffs argue that New Jersey is the state where

10

Defendant Volvo Cars of North America, LLC maintains its headquarters, made decisions related to what maintenance instructions and known defects should be communicated to vehicle owners and whether warranty/goodwill claims should be permitted, and made pertinent design decisions. (Pl. Cert. Br. 21).

However, Mercedes has been criticized, minimized, and rejected by a number of courts. Most recently, Mercedes was criticized by the Third Circuit in Maniscalco v. Brother Int'l (USA) Corp., No 11-3032, 2013 WL 856379 (3d Cir. Mar. 8, 2013), which this Court finds instructive as to the choice of law analysis. In Maniscalco, the plaintiff was a South Carolina resident who purchased a product in South Carolina that was manufactured in Japan and distributed by a New Jersey company. Id. The plaintiff brought an omission claim under the New Jersey Consumer Fraud Act against the New Jersey distributor. The District Court granted summary judgment in favor of the defendant, finding that New Jersey's choice-of-law rules required application of South Carolina law. Id. at *3. Applying the Restatement (Second) of Conflicts, the Third Circuit held that New Jersey's choice-of-law rules required application of the law of the state in which the plaintiff resided and purchased the product rather than the law of place in which the defendant resided and allegedly made the omission:

> Accepting Huryk's premise that there were actionable omissions by BIC at its headquarters in New Jersey, we conclude that this single contact—factor (c)—does not warrant applying New Jersey law. Nothing else about the relationship between the parties, other than the fortuitous location of BIC's headquarters, took place in the state of New Jersey. Huryk's home state, in which he received and relied on BIC's alleged fraud, has the "most significant relationship" to his consumer fraud claim. In so concluding, we adopt the overwhelming majority of courts' application of New Jersey choice-of-law rules under similar circumstances.

Id. at *5 (citations and footnote omitted).

The court's conclusion was supported by the comment accompanying Section 148(2) of the Restatement: "'If any two of the [§ 148(2)] contacts, apart from the defendant's domicile, state of

incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues.'" Id. at *6 (quoting Restatement (Second) of Conflicts of Law § 148, cmt j.) The Third Circuit held that the plaintiff's reliance, the receipt of the omission, the location of the product, and the sale of the product all took place in South Carolina, and thus the Section 148(2) factors weighed "strongly" in favor of applying South Carolina law. Id.

In Maniscalco, the plaintiff made the same argument and relied on the Mercedes case, as do the Plaintiffs here in arguing for application of New Jersey law nationwide. Both argued that New Jersey's deterrence interest required application of New Jersey law, even though the plaintiff [or putative class member] resided, received the omission, and purchased the product in a different state. The Maniscalco court decisively rejected this argument and the basis for Judge Debevoise's decision in Mercedes:

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state. New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

Maniscalco, 2013 WL 856379, at *6. The court also held that "[a]pplying New Jersey law to every potential out-of-state claimant would frustrate the policies of each claimant's state" and that "most importantly, the interest of South Carolina in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." Id. (emphasis added). Analysis of the Restatement § 6 factors thus also "bolsters the conclusion that South Carolina has the greatest interest in the litigation." Id.

Maniscalco is controlling authority and requires application of the law of each putative class member's home state to that class member's claims. Plaintiffs' proposed nationwide class here ignores

the state in which the transaction occurred, the state where the purchasers of the vehicles live, and the interests of the states in which the transactions took place. Thus, Plaintiffs proposed nationwide class cannot be certified.

The same is true with regard to Plaintiffs' contract-based claims. See, e.g., Clark v. Prudential Ins. Co. Of America, 2009 U.S. Dist. LEXIS 84093, *60-65 (D.N.J. 2009) (rejecting application of New Jersey law and applying the law of the plaintiff's home state); Maloney, 2011 WL 5864064, at *9 (implied warranty); Payne v. FujiFilm U.S.A., Inc., 2011 WL 5864064, *9-10 (D.N.J. 2010) (warranty and implied covenant claims); Yocham v. Novartis Pharms. Corp., 736 F. Supp. 2d 875, 883 (D.N.J. 2010) (express warranty); Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 464-65 (D.N.J. 2009) (contract).

While Plaintiffs' proposed nationwide class cannot be certified, for the reasons that follow, the Court finds that Plaintiffs' proposed state subclasses should be certified at this time and that the law of the state of each subclass should be applied to the subclass's claims.

## 2. Requirements of Rule 23(a)

### a. Numerosity

In order to be certified, the class must be "so numerous that joinder of its members is impracticable." In re OSB Antitrust Litig., No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D. Pa. 2007). "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met." Id. (citations omitted). See also, Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). "Satisfaction of. . .numerosity, does not require evidence of the exact number or identification of the members of the proposed class..." Saunders v. Berks Credit

& Collections, Inc., No. 00-3477, 2002 U.S. Dist. LEXIS 12718, at *16 (E.D.Pa. 2002).

Here, the record in this case clearly demonstrates that there were thousands of Class Vehicles sold in each of the six class states. (See, NEALE.VCNA.0010730-35, attached as Exhbit 2 to Schelkopf Cert.). Further, Volvo's own corporate designees testified that there were 100,000 vehicles sold during two years for only two of the six model at issue here, several thousand of which had records of "sunroof repairs" or "leak repair." (See, Densley Dep., 55:3-56:17 attached as Exhibit 3 to Schelkopf Cert.). Thus, numerosity is established.

### b. Commonality

"Plaintiffs must also demonstrate that there are questions of law or fact common to the class." In re OSB Antitrust Lit ig., 2007 U.S. Dist. LEXIS 56584, at *5. "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." In re Prudential Ins. Co. Sales Litig., 148 F.3d 283, 310 (3d. Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stoke." Wal-Mart Stores, 131 S. Ct. at 2556. Both the majority and dissenting opinions in that case agreed "for purposes of Rule 23(a)(2) even a single common question will do." Id. at 2556.

Here, multiple common questions of law and fact exist as to Defendants' conduct and the alleged uniform defect of the Class Vehicles. These common questions include whether the sunroof drainage systems in the Class Vehicles are defective, whether Defendants knew of the defect but failed to disclose it to the Class, and whether the maintenance instructions were inadequate and/or uniformly deficient.

14

This is sufficient to satisfy commonality. See e.g., Marcus v. BMW of North America, LLC, 687 F.3d 583, 597 (3d Cir. 2012) (Commonality was found where plaintiff and class members sought to prove that defendants failed to disclose their product's deficiencies.).

Defendants argue that there is no evidence of a uniform defect. (Def. Opp. Br. 20). Defendants point out the variations in overall size of the sound plugs and in the plus-sized opening of the sound plugs in certain vehicles in the proposed classes. Specifically, Defendants state that in 2005, the length of the sound plugs was reduced and the opening size of the sound plugs plus-sized slits was increased by three millimeters in the XC-90 vehicles. (Def. Opp. Br. 5). Defendants also did the same to new S40 and V50 vehicles in 2006, and in 2011 Defendants removed an additional three millimeters from sound plugs in S40 and V50 vehicles. (Def. Opp. Br. 5). Despite these slight variations in some of the vehicle models within the statewide classes, all of the proposed class vehicles have sunroof drainage systems with a uniform design. The sunroof drainage system's design exists in every Class Vehicle. The defect alleged by Plaintiffs is the sound traps at the bottom of the drainage tubes used in all Class Vehicles, which have a narrow, plus-shaped slit opening. The issue is whether the design of the sunroof drainage system was defective, not whether the existence of the alleged defect resulted in a clogged drain tube causing water to spill into the vehicle. Plaintiffs' proffered expert, Dr. Charles Benedict has examined, analyzed and measured the sound traps in the Class Vehicles and opines that the narrow, restrictive plus-shaped slit openings make the design defective and were used in the Sunroof Drainage Systems in all Class Vehicles. (ECF No. 87, Exh. 2 "Benedict Report" ¶¶ 7, 11, 21). In reaching his conclusion, Dr. Benedict also relied on Defendants' employees McCloskey, Sandberg and Bisaccia who testified, on behalf of Volvo, that all sound plus utilized in the Class Vehicles have the same function and all have the same plus-shaped opening. (See, Benedict Report, ¶ 6, n. 6). Thus, the commonality requirement is

satisfied.

### c. Typicality

"Plaintiffs must show that the claims of the class representatives are typical of the claims of the class as a whole." In re OSB Antitrust Litig., 2007 U.S. Dist. LEXIS 56584, at *6. "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established. Inmates of the Northumberland County, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479 , at *71 (M.D. Pa. 2009) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183-84 (3d Cir. 2001)).

The court disagrees with Defendants' argument and reliance on Cholakyan v. Mercedes-Benz USA, LLC, 281 F.R.D. 534 (C.D. Cal. 2012), for the proposition that a named plaintiff must have the exact same vehicle model(s) as all of the class members. (Def. Opp. Br. 36, 39). The defective "water management system" alleged by plaintiffs in Cholakyan was actually a "system" comprised of "an amalgamation of many different vehicle parts," and there was no evidence that "these disparate parts are conceptually part of a single system or physically connected to one another in any material way. Cholakyan, 281 F.R.D. at 552. As a consequence, the Court concluded that the plaintiff could not identify "a single design flaw that is common across all of the drains in question..." Id. at 553. Here, unlike Cholakyan, Plaintiffs' proffered expert, Dr. Charles Benedict, opines that all of the problems in all Class Vehicles stem from a single part: the sound plugs located at the ends of the drainage tubes contained in all Class Vehicles. (Pl. Cert. Br. 4-5).

Such a strict requirement for typicality, that named plaintiffs must have the exact same vehicle models as all of the class members, was rejected by the Third Circuit in Marcus v. BMW of North America, LLC, 687 F.3d 583 (3d Cir. 2012). The plaintiff in that case "leased only one model BMW

16

with one kind of Bridgestone [run flat tires]," and asserted claims that could potentially cover 49 different tire designs and sizes. Id. at 598-99. The Third Circuit concluded that this did not render the plaintiff atypical with respect to these other tires, explaining that "[w]hen a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." Id. at 599. Similarly, typicality is readily satisfied here because Plaintiffs allege that Volvo uniformly did not disclose the design defect common to all of the Class Vehicles. Thus, the typicality requirement is satisfied.

### d. Adequacy

Plaintiffs must also demonstrate that they will "fairly and adequately protect the interests of the class." In re OSB Antitrust Litig., 2007 U.S. Dist. LEXIS 56584 at *6 (citing FED. R. CIV. P. 23(a)(4)). "This requirement has two components: 1) adequacy of class counsel, and 2) adequacy of the class representative." Davis v. Kraft Foods N. Am., No 03-6060, 2006 U.S. Dist. LEXIS 3512, at *27 (E.D. Pa. January 31, 2006); Hayes, 2012 U.S. Dist. LEXIS 33329, at *23.

### i. Adequacy of Class Counsel

"To meet the adequacy requirement, counsel must have the ability and incentive to represent the class vigorously." Davis, 2006 U.S. Dist. LEXIS 3512, at *27. Here, on January 4, 2011, Magistrate Judge Dickson appointed the law firms of Chimicles & Tikellis LLP and Mazie Slater Katz & Freeman, LLC as interim co-lead counsel for the class and several other firms as Plaintiffs' Interim Executive Committee.(See, ECF No. 15). That motion was not opposed by Defendants. Plaintiffs' counsel have extensive litigation experience in complex class action cases, are committed to representing Plaintiffs and the class, and are adequate to represent the Class here.

### ii. Adequacy of Class Representatives

In addressing the adequacy of the proposed class representative, district courts examine whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." Hayes, 2012 U.S. Dist. LEXIS 33329, at *23 (quoting Hassine v. Jeffes, 846 F. 2d 169 (3d Cir. 1988).

The eight named Plaintiffs in this case are adequate class representatives. Like members of the statewide classes, they purchased one of the Class Vehicles, and experienced a Sunroof Drainage Defect. They have actively overseen the prosecution of this case, participated in meetings and worked closely with counsel, responded to the Defendant's discovery requests, and have all been deposed by defense counsel. They have no conflicts with members of the statewide classes, and are committed to pursuing this case. Thus, the adequacy requirement is readily satisfied.

### 3. Requirements of Rule 23(b)(3)

Plaintiffs seek certification under Rule 23(b)(3), which is permissible when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3).

### a. Predominance

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hydrogen Peroxide, 552 F.3d at 311 (quoting Windsor, 521 U.S. at 623). As this Court previously stated in this case in the April 11, 2011 Opinion, "It requires more than a common claim . . . rather, issues common to the class must predominate over

individual issues." (ECF No. 43, 5). "Because the nature of the evidence that will suffice to resolve the question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Id. (citations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. at *5-6 (citations omitted).

The Third Circuit's recent analysis of the predominance inquiry of FED. R. CIV P. 23 in Sullivan, is instructive here. The majority opinion in Sullivan confirmed that, for consumer fraud claims, the predominance inquiry focuses on whether the defendant's conduct was common to all class members, which predominates over minor individual differences between plaintiffs. Sullivan, 667 F.3d at 297-98. As Sullivan confirms, the proper focus of the inquiry here is the Defendants' conduct in designing and marketing the Class Vehicles which all contain defective sunroof drainage systems - not the conduct of the Plaintiffs.

Here, as discussed *supra*, the Court finds that these standards are readily met. All of the claims asserted by Plaintiffs in the SAC are based upon defectively designed sound traps contained in the sunroof drainage systems in Class Vehicles designed and/or manufactured by Defendants, and Defendant's uniform omissions about the same.

### b. Superiority

The superiority inquiry requires a balancing, based on fairness and efficiency, of the merits of a class action against those of alternative methods of adjudication. Georgine, 83 F.3d at 632. "One consideration is the economic burden class members would bear in bringing suits on a case-by-case basis." In re Ins. Brokerage Antitrust Litig., No. 4-5184, 2012 WL 1071240, at *12 (D.N.J. March 30,

2012).  Another such consideration is judicial economy; for example, "[i]n a situation where individual cases would each require weeks or months to litigate, would result in needless duplication of effort by all parties and the Court, and would raise the very real possibility of conflicting outcomes, the balance may weigh heavily in favor of the class action."  Id. (citations and internal quotation marks omitted).

This is a classic example of a case that warrants class action.  Plaintiffs seek to represent a six statewide classes of Volvo purchasers or lessees whose individual damages may well be small enough to render individual litigation prohibitively expensive.  Further, given the amount of Class members, individually litigating these matters could certainly raise the possibility of conflicting outcomes. Thus, the superiority requirement of Rule 23(b)(3) is satisfied.

Accordingly, the Court finds that this action satisfies the requirements of Rule 23(b)(3), and the Court will certify this matter as a class action.

### B. Summary Judgment

In finding that certification of Plaintiffs' proposed statewide classes is warranted, the Court finds that triable issues of fact exist. These issues include whether the design of the Sunroof Drainage Systems were defectively designed, whether Defendants knew of the defect but failed to disclose it to the Class, and whether the maintenance instructions were inadequate and/or uniformly deficient. These issues are more than sufficient to warrant denial of Defendants' individual Motions for Summary Judgment.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Certification of the proposed statewide classes

is **granted**, and Defendants' Motions for Summary Judgment are **denied**. An appropriate Order

accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:          March 26, 2013
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File

21