Paul Daly
Mark S. Kundla
**HARDIN, KUNDLA, MCKEON &
POLETTO, P.C.**
673 Morris Avenue
Springfield, NJ 07081
Phone: (973) 912-5222
Fax: (973) 912-9212
Pdaly@HKMPP.com
Mkundla@HKMPP.com

Peter W. Herzog III (pro hac vice)
**WHEELER TRIGG O'DONNELL LLP**
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone: (314) 326-4129
Fax: (303) 244-1879
pherzog@wtotrial.com

Joel Neckers (pro hac vice)
**WHEELER TRIGG O'DONNELL LLP**
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Fax: (303) 244-1879
neckers@wtotrial.com

Attorneys for Defendant Volvo Cars of
North America, LLC and Volvo Car Corporation

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| JOANNE NEALE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> VOLVO CARS OF NORTH AMERICA, LLC, ET AL., <br><br> Defendants. | Civil Action No.  2:10-CV-04407-JLL-JAD <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.  PLAINTIFFS' DEFICIENT TRIAL PLAN SHOWS THAT A CLASS
    TRIAL OF THE NEW JERSEY CLAIMS IS UNMANAGEABLE ............. 3

    A.  Individualized Inquiries Related to the Alleged Defect and
        Liability Will Overwhelm Phase I of Plaintiffs' Putative
        Class Trial. ........................................................................................ 3

    B.  Phase II of Plaintiffs' Putative Class Trial Plan Will Be Plagued
        by Unmanageable Individual Issues. .................................................. 6

    C.  Phase III of Plaintiffs' Proposed Trial Plan Is Unworkable and
        Unmanageable. ................................................................................ 10

II. PLAINTIFFS' FAILURE TO PROVIDE A TRIAL PLAN FOR THE
    CALIFORNIA, FLORIDA, MASSACHUSETTS, AND HAWAII
    PROPOSED CLASSES SHOWS THAT A CLASS TRIAL OF
    THOSE CLAIMS IS UNMANAGEABLE. ................................................ 11

CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Benner v. Becton Dickinson & Co.,*
   214 F.R.D. 157 (S.D.N.Y. 2003) ............................................................... 1

*Corcoran v. CVS Health,*
   2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) ..................................... 12

*Franco v. Connecticut Gen. Life Ins. Co.,*
   289 F.R.D. 121 (D.N.J. 2013), *aff'd* 647 F. App'x 76 (3d Cir. 2016).................. 10

*Gennari v. Weichert Co. Realtors,*
   691 A.2d 350 (N.J. 1997)................................................................... 5

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II),*
   2010 WL 2813788 (D.N.J. July 9, 2010)................................................ 9

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008)........................................................ 1, 2, 11

*In re Paxil Litig.,*
   212 F.R.D. 539 (C.D. Cal. 2003) ........................................................ 1, 6

*In re Vioxx Prods. Liab. Litig.,*
   760 F. Supp. 2d 640 (E.D. La. 2010)..................................................... 2

*Kelecseny v. Chevron, U.S.A., Inc.,*
   262 F.R.D. 660 (S.D. Fla. 2009).......................................................... 6

*McLaughlin v. Am. Tobacco Co.,*
   522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by*
   *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) .......................... 9, 10

*Richburg v. Palisades Collection LLC,*
   247 F.R.D. 457 (E.D. Pa. 2008)........................................................... 6

*Thiedemann v. Mercedes-Benz USA, LLC,*
   872 A.2d 783 (N.J. 2005)................................................................. 5, 9

*Vega v. T-Mobile USA, Inc.,*
   564 F.3d 1256 (11th Cir. 2009) ........................................................................ 1, 12

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.,*
   453 F.3d 179 (3d Cir. 2006).............................................................................. 1, 2

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ........................................................................................... 11

## Statutes, Rules & Other

2 McLaughlin on Class Actions § 8:16 (13th ed.) ................................................ 10

Fed. R. Civ. P. 23 .................................................................................................... 1

N.J.S.A 56:8-2 ......................................................................................................... 5

# INTRODUCTION

As we did in 2012 and again in 2016, we start with the proposition that a
trial plan is of no use to a court unless it is clear, detailed and specific. Indeed the
inability to provide a clear, detailed and specific plan is a strong indication that a
class trial is unmanageable. *See generally In re Paxil Litig.*, 212 F.R.D. 539, 548
(C.D. Cal. 2003) (plaintiffs' "unworkable trial plan" is one reason for denying
class certification); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 174
(S.D.N.Y. 2003) ("Plaintiffs' proposed trial plan highlights the management
nightmare this Court would face if the putative classes were certified"); *see also
Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009). The purpose of
a trial plan is to show whether a class case can be tried manageably or whether
individualized issues will overwhelm the trial:

> A critical need is to determine how the case will be tried.
> An increasing number of courts require a party
> requesting class certification to present a 'trial plan' that
> describes the issues likely to be presented at trial and
> tests whether they are susceptible of class-wide proof.

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3d Cir. 2008)
(quoting Fed. R. Civ. P. 23 Advisory Committee's Note, 2003 Amendments); *see
also Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 n.7
(3d Cir. 2006) (recommending submission of trial plans). Rather than
demonstrating that their claims are susceptible of class-wide proof and can be

managed in a single trial, Plaintiffs' proposal affirmatively illustrates that the trial they envision would be overwhelmed by individualized issues and would violate Volvo's due process rights and SCOTUS precedent.

## ARGUMENT

Plaintiffs propose a "bellwether" class trial of the New Jersey claims only, which obviously concedes that a class trial of all claims for which they seek certification is unmanageable.[1] But even the "plan" for the New Jersey trial is so inadequate and so elementary that it is not remotely helpful and shows that Plaintiffs have given no meaningful thought about how to try their own claims. In addition to flunking the requirement for a "readily discernible, clear and precise" class definition, *Wachtell*, 453 F.3d at 187-88, Plaintiffs' vision of a "three-phase" trial ignores numerous individualized issues and runs roughshod over Volvo's due process rights.

---

[1] The concept of a bellwether trial derives from multi-district litigation involving a large number of product liability cases and is rarely, if ever, used in this context. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 645-46 (E.D. La. 2010). Proposing a bellwether trial does not relieve Plaintiffs of their burden to show that a class trial for all their proposed classes is manageable. *See Hydrogen Peroxide*, 552 F.3d at 316 n.14 (burden on plaintiffs to prove all factors).

## I.   PLAINTIFFS' DEFICIENT TRIAL PLAN SHOWS THAT A CLASS TRIAL OF THE NEW JERSEY CLAIMS IS UNMANAGEABLE.

### A.   Individualized Inquiries Related to the Alleged Defect and Liability Will Overwhelm Phase I of Plaintiffs' Putative Class Trial.

The most specific "plan" Plaintiffs provide for the first phase of their putative class trial is their suggestion that there should be opening and closing statements/arguments along with the presentation of evidence. (ECF No. 400-3, at 4.) This rudimentary outline is barely sufficient for a high school civics class. Although they attempt to overcome this inadequacy by submitting a number of proposed "Special Verdict Forms," (*id.* at 4-6), those "forms" do not even hypothesize all the elements of the claims and appear to ask a jury to decide abstract questions untethered to the facts of the named Plaintiffs' claims or to the requirement for class-wide proof.

For example, Plaintiffs' special verdict on the breach of express warranty claim asks if Volvo gave Plaintiffs a warranty. (*Id.* at 4.) How can that question possibly be answered on a class-wide basis, where the majority of the proposed classes are comprised of second, third, and fourth purchasers who purchased in private transactions and not from Volvo? Another question asks the jury to decide in the abstract whether the sunroof drainage systems in 48 combinations of model and model year Volvo vehicles are "defective" according to some as yet unidentified standard and pursuant to jury instructions they fail to provide. (*Id.* at 6

("Do the Class Vehicles contain a uniform defect in their sunroof drainage systems ('Sunroof Defect')?"). But how can that question be answered for all vehicles when there are differences in the sunroof drainage systems and differences in the way those systems perform, as the named Plaintiffs' own experiences demonstrate?

Even Plaintiffs' experts concede the existence of individual issues that Plaintiffs' proposed trial plan studiously ignores. Their would-be damages expert says a jury can find some models are defective and others are not:

> If the trier-of-fact determines that there are vehicles that have been sufficiently modified, then I will adjust my analysis to eliminate the estimated repair costs associated with the sufficiently modified vehicles.

(ECF No. 87-3, Expert Report of Bratic ("Bratic E.R.") at ¶ 14, n.24).)[2] And their engineering expert admits that whether any vehicle experiences a clogged sunroof drain or water leak depends on any number of factors including where a vehicle is parked, weather conditions, and the way it is maintained.

The remaining claims that Plaintiffs suggest can be addressed through a handful of special interrogatories fare no better. For instance:

- There is no way to address the question of whether any or all of the vehicles are fit for their ordinary purpose of providing transportation without individual inquiry. Maybe there is a vehicle that had such a serious water leak that it was left undriveable, but Volvo would be entitled to adduce evidence from those who have driven their vehicles

---

[2] Plaintiffs filed the same Expert Report with their latest renewed motion for class certification.

for tens or hundreds of thousands of miles to show that at least some Plaintiffs or class members have no viable implied warranty of merchantability claim.

• On their special verdict form for breach of the implied covenant of good faith and fair dealing, Plaintiffs intend to ask whether Plaintiff and Volvo "enter[ed] into a valid contract." (ECF No. 400-3, at 5.) Nowhere do they explain how such a question could be answered "yes" or "no" for a class that includes some new car purchasers and some who purchased their cars used in private transactions.

• Plaintiffs purport to address whether Defendants "committed consumer fraud" by concealing a defect or failing to provide maintenance instructions. (*Id.* at 6.) Their "special verdict form" on this issue makes no mention of numerous elements that are required to prove an NJCFA omission claim, including ascertainable loss, proximate cause to that loss, materiality, intent that another rely on the concealment, and knowledge. N.J.S.A 56:8-2, *see also Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J. 2005); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997).[3]

Even further, any trial of the New Jersey claims would be based on proof supplied by Mr. Burns and Ms. Collopy with respect to their used 2006 Volvo V50 and 2007 S40. (SAC ¶¶ 40, 41, 65.) Plaintiffs have no other New Jersey plaintiffs who can represent the other 46 combinations of model and model year Volvo vehicles at issue in their motion, and they likewise offer no way to prove the claims of anyone who purchased one of those vehicles new. Nor do they have a

---

[3] Plaintiffs also propose to ask the jury to adjudicate an NJCFA omission claim based on Volvo's alleged failure to provide adequate maintenance instructions even though they did not allege an omission claim under *any* state's consumer protection law based on the inadequacy of maintenance instructions and even though our research has not identified a single case that has ever recognized such a claim under any consumer protection act.

New Jersey class representative who (a) leased a vehicle, (b) purportedly still needs to have the vehicle repaired (meaning they have no one to represent the class of persons who purportedly need a prospective repair), or (c) is in the class of former vehicle owners. Plaintiffs do not even attempt to show the Court how they can prove their claims on behalf of all these disparate groups. Finally, Phase I does not even try to address Volvo's affirmative defenses, all of which raise highly individualized issues. *See, e.g.*, *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 677 (S.D. Fla. 2009) (criticizing two-stage trial plan for ignoring individualized issues related to affirmative defenses).

In short, Phase I of Plaintiffs' proposed trial plan shows a class trial would be unmanageable. *See Paxil*, 212 F.R.D. at 544 (denying class certification in part because plaintiffs "failed to demonstrate that a manageable trial plan exists that would make a class action lawsuit feasible"); *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 462 n.2 (E.D. Pa. 2008) ("boilerplate trial plans consisting of the obvious do not amount to the requisite summary").

### B.  Phase II of Plaintiffs' Putative Class Trial Plan Will Be Plagued by Unmanageable Individual Issues.

In Phase II of Plaintiffs' proposed trial plan, once a jury decides Phase I's series of abstract issues that look like they were written for a mock trial exercise, Plaintiffs apparently envision that the parties will start over and provide new opening statements and evidence to the same jury regarding an amount of

"aggregate damages." (ECF No. 400-3, at 7.) Such a "proposal" is unworkable and unconstitutional.

The *only* substantive suggestion related to what this phase of the trial will look like is their suggestion that they will offer Mr. Bratic's opinion to provide evidence of an amount of class-wide damages:

> Mr. Bratic's report sets forth the methodology that he will utilize to calculate damages on a class-wide basis. He has also reserved the right to supplement his report with further detailed economic damages after specific classes have been certified by this Court.

(*Id.* at 7 n.3.) Mr. Bratic's 2012 methodology—that Plaintiffs resubmit here—does not support a claim for class-wide damages, and "aggregate" damages are not recoverable. Mr. Bratic's opinions were formed when Plaintiffs were trying to certify a nationwide class based on a different theory of loss than the one they assert in their renewed motion.[4]

Specifically, Plaintiffs' trial plan for their renewed motion addresses a New Jersey class only, and Plaintiffs' sole legal theory of loss in the renewed motion is based on a purported diminished value at the time of purchase. (ECF No.

---

[4] Mr. Bratic opines that all members of a *nationwide class* sustained a loss at least equal to either (a) the cost of mitigating or eliminating the alleged sunroof drainage defect in their vehicles (the "Cost of Mitigation Damages Opinion") or (b) the out-of-pocket costs incurred for repairs by those who experienced a water leak resulting from a clogged sunroof drain (the "Cost of Repair Damages Opinion"). (Bratic E.R. at ¶ 14.)

400, at 38.) Mr. Bratic's damages opinion and methodology, however, are based on a *cost of repair in 2012 for a nationwide class*; he testified that he was *not* offering any opinion on diminished value. (Bratic Dep., Exh. 4 to Volvo Opp'n at 137:25-138:4, 156:6-9; *see also* Bratic E.R. at ¶¶ 14-31.) Mr. Bratic's opinion is not based on the theory of loss now advanced by Plaintiffs and is therefore irrelevant to Phase II of the proposed class trial.[5]

Plaintiffs also ignore that Mr. Bratic has not identified or estimated, and does not have the ability to identify or estimate, the number of putative class members in the proposed New Jersey class. (*See* Marais Expert Report ("Marais E.R."), Exh. 33 to Volvo Opp'n at ¶¶ 25-32.) As a result, even if the purported "cost of repair" was the measure of damages sought, and it is not, Mr. Bratic has no way to calculate class-wide damages because he lacks one of the equation's necessary factors.

---

[5] Plaintiffs' response to Mr. Bratic's admission has been to argue that "[r]ead together Plaintiffs' two expert reports support a diminished value theory" because Dr. Benedict establishes a design defect and Mr. Bratic quantifies the cost of repair. (ECF No. 365, at 17 n.18.) But Mr. Bratic's opinion already incorporated Dr. Benedict's defect opinion by explicitly relying on it to establish the purported defect and the cost of repair he calculates. (Bratic E.R. at ¶¶ 10-13 and nn.13-22; Bratic Dep., Exh. 4 to Volvo Opp'n at 125:3-7.) Combining the two opinions does not create any greater evidence than Mr. Bratic's opinion alone. Both Mr. Bratic and Dr. Marais also agree that Mr. Bratic's opinion is not a diminished value opinion. (Bratic Dep. at 137:25-138:4, 156:6-9; Marais E.R., Exh. 33 to Volvo Opp'n at ¶ 40).

Still further, the "loss" Mr. Bratic calculated is the cost of repairing the alleged sunroof drainage defect for all vehicles regardless of whether or not the vehicle experienced a clogged sunroof drain or a resulting water leak. (Bratic Dep., Exh. 4 to Volvo Opp'n at 134:3-9.) This premise is directly contrary to New Jersey law holding that the existence of a defect, and the cost of manufacturing a defect-free component, does not establish an ascertainable loss. *Thiedemann*, 872 A.2d at 793 (rejecting argument that Plaintiffs could prove ascertainable loss based on the "cost of designing and installing into each class member's vehicle a fuel sending unit free of defects"); *see also In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *28 (D.N.J. July 9, 2010) ("even though a product may be defective, a subjective assertion of a diminution in value or loss of a benefit-of-the-bargain will be insufficient to support a quantifiable loss; rather, the plaintiff must produce specific proofs"). Thus, even if Mr. Bratic could provide a number of New Jersey class members and even if his opinion was based on the current theory of loss, his damages calculation would include a significant number of uninjured class members because it is undisputed that the majority of proposed class members have not suffered a clogged sunroof drain or a resulting water leak. A damages amount "that does not accurately reflect the number of plaintiffs actually injured by defendants" would violate "both the Rules Enabling Act and the Due Process Clause." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32

(2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Finally, a trial plan that "conclusorily asserts that damages can be determined on an aggregate basis," but fails to show how the case could be tried in "a manageable manner," is deficient and cannot support class certification. *See Franco v. Connecticut Gen. Life Ins. Co.*, 289 F.R.D. 121, 139-40 (D.N.J. 2013), *aff'd*, 647 F. App'x 76 (3d Cir. 2016). Accordingly, Phase II of Plaintiffs' proposed trial plan does nothing to advance their cause.

### C. Phase III of Plaintiffs' Proposed Trial Plan Is Unworkable and Unmanageable.

The same problems related to the second phase of Plaintiffs' proposed trial plan infect Phase III. Because Plaintiffs have no means to calculate class-wide damages, there will be nothing for the special master to allocate.[6] *See generally McLaughlin*, 522 F.3d at 231 ("Roughly estimating the gross damages to the class as a whole and only subsequently allowing for the processing of individual claims would inevitably alter defendants' substantive right to pay damages reflective of

---

[6] Plaintiffs cite a few antitrust cases that have allowed aggregate damages. (ECF No. 400-3, at 8 n.4.) They do not, however, cite a single consumer protection act case where a court allowed damages or restitution to be determined for the class as a whole without regard to the number of uninjured members. *See* 2 McLaughlin on Class Actions § 8:16 (13th ed.) ("Though aggregate classwide damages are not *per se* unlawful, courts have repeatedly rejected the use of fluid recovery or its equivalent as a substitute for individualized proof when the class pursues claims that seek redress for individualized injuries").

their actual liability"). Equally problematic, Plaintiffs suggest the Special Master will evaluate each claim submitted "according to a formula devised by Plaintiffs' expert." (ECF No. 400-3, at 9.) But Plaintiffs do not identify the expert or any presently existing formula or how the application of such a formula would be permissible after *Dukes*. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("The Court of Appeals believed that it was possible to replace such proceedings with Trial by Formula ... We disapprove that novel project").

Instead they ask the Court to assume that some unidentified expert will at some point in the future find a way lawfully to allocate an unidentified sum of money to a class of persons Plaintiffs cannot identify. These platitudes and promises are not a substitute for a trial plan. *See Hydrogen Peroxide*, 552 F.3d at 318 ("A party's assurance to the court that it intends or plans to meet the requirements is insufficient").

## II.   PLAINTIFFS' FAILURE TO PROVIDE A TRIAL PLAN FOR THE CALIFORNIA, FLORIDA, MASSACHUSETTS, AND HAWAII PROPOSED CLASSES SHOWS THAT A CLASS TRIAL OF THOSE CLAIMS IS UNMANAGEABLE.

Plaintiffs provided no trial plan for the proposed California, Florida, Massachusetts, and Hawaii classes. They want the Court to postpone any consideration of these class trials until a "case management pre-trial conference." (ECF No. 400-3, at 2.) Although the elements of the claims differ from the New Jersey claims and from each other, Plaintiffs provide no jury instructions or

any other guidance for a manageable trial. Plaintiffs' failure illustrates that a class trial for the California, Florida, Massachusetts, and Hawaii claims would be unmanageable. *Vega*, 564 F.3d at 1279 n.20 ("there is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents"); *Corcoran v. CVS Health*, 2017 WL 1065135, at *11 (N.D. Cal. Mar. 21, 2017) ("the trial plan should include details on how jury instructions could be structured and formulated to account for eleven statewide classes involving statutory and common law state claims").

## CONCLUSION

Plaintiffs have not provided a trial plan that demonstrates a class trial on any of their claims is feasible or manageable. This further shows that the Court should deny Plaintiffs' renewed motion for class certification.

Dated:  May 22, 2017

Respectfully submitted,

*/s/ Paul Daly*

Paul Daly
Mark S. Kundla
Hardin, Kundla, Mckeon & Poletto, P.C.
673 Morris Avenue
Springfield, NJ 07081
Phone:  (973) 912-5222
Fax:      (973) 912-9212
mkundla@HKMPP.com
pdaly@HKMPP.com

Peter W. Herzog III (pro hac vice)
Wheeler Trigg O'Donnell LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone:  (314) 326-4129
Fax:      (303) 244-1879
pherzog@wtotrial.com

Joel Neckers (pro hac vice)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone   (303) 244-1800
Fax:      (303) 244-1879
neckers@wtotrial.com

Attorneys for Defendants Volvo Cars of
North America, LLC, and Volvo Car
Corporation

## CERTIFICATE OF SERVICE

I Paul Daly, certify that the foregoing was electronically filed on May 22, 2017, using the Court's CM/ECF system, and was thereby served upon all registered users in this case.

By:   _/s/ Paul Daly_