NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNE NEALE, KELLY MCGARY, SVEIN A. BERG, GREGORY P. BURNS, JEFFREY KRUGER, and KAREN COLLOPY individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC and VOLVO CAR CORPORATION,<br><br>Defendants. | Civil Action No. 10-4407 (JLL)<br><br>OPINION |

**LINARES,** Chief District Judge

This matter comes before the Court by way of Plaintiffs' Renewed Motion for Class Certification. (ECF No. 399) ("Motion"). Defendants have filed their Opposition, (ECF No. 409), and Plaintiffs have filed a reply, (ECF No. 412).[1] The Court has read the submissions of the parties and considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Plaintiffs' Motion.

## I. BACKGROUND

This case involves a potential putative class action brought by six named Plaintiffs, Gregory Burns, Karen Collopy, Svein Berg, Jeffrey Kruger, Joanne Neale, and Kelly McGary ("Plaintiffs"), on behalf of themselves and five state subclasses of current and former Volvo

---

[1] Defendants have also requested leave to file a sur-reply brief in opposition to Plaintiffs' reply brief. (ECF No. 414). Plaintiffs then filed a motion for leave to file a sur-sur-reply brief. (ECF No. 415). The Court addresses these filings in its accompanying Order.

1

vehicle owners and lessees.[2] Plaintiffs allege that Defendants Volvo Cars of North America, LLC and Volvo Car Corporation ("Defendants") sold certain vehicles with defective sunroof drainage systems. Plaintiffs assert that a uniform design effect existed in the sunroof drainage systems in six Volvo vehicle models: the S40, S60, S80, V70 (model years 2004 to 2011), XC90 (model years 2003 to 2011), and V50 (model years 2005 to 2011) (the "Class Vehicles"). The sunroof drainage systems on the Class Vehicles allegedly contains defective sound plugs attached to the drainage tubes, which trapped water within the passenger compartment floorpans. The water damaged various parts of the Class Vehicles, including interior components, carpets, and safety related electrical sensors and wiring. Plaintiffs allege that Defendants knew of the material design defect based on numerous consumer complaints, internal Volvo communications, and Technical Service Bulletins issued by Volvo in an unsuccessful attempt to solve the problem.

Named Plaintiffs all either owned or leased one of the Class Vehicles with a sunroof, and experienced damage resulting from the aforementioned alleged defect. Plaintiff Kelly McGary and her husband are residents of Florida. In 2004, they purchased a new 2004 Volvo XC90 from Volvo of Tampa. Five years later, in December of 2009, Mrs. McGary heard a sloshing sound in her car, and after inspecting the area by the driver's side door, she noticed that the carpet was wet. Mrs. McGary brought the XC90 back to the dealership to address the sloshing sound and wet carpet. Volvo of Tampa returned the car to Mrs. McGary, with an invoice dated December 19, 2009. According to the invoice, the dealership's technician found that the sunroof drain was blocked. The technician had to remove the "A pillar" and modify the sunroof drains. The repairs cost Mrs. McGary roughly $700, and they were not covered by the warranty.

---

[2] Plaintiffs have removed two of the named plaintiffs and dropped their proposed Maryland class. (ECF No. 401 at 16 n.36).

2

Plaintiff Joanne Neal is a resident of Massachusetts. Ms. Neale purchased a certified pre-owned 2005 V50 from Dalzell Volvo on October 25, 2008. In March of 2010, Ms. Neale heard a sloshing noise while driving. She brought her car back to Dalzell, and the dealership told Ms. Neale she had a clogged sunroof drain. Dalzell charged $592.48 for the repair, which was not covered by the warranty. Ms. Neale did receive a free rental car while Dalzell repaired her vehicle.

Plaintiff Gregory Burns is a resident of New Jersey. On May 31, 2006, Mr. Burns and his spouse signed a three-year lease agreement for a 2006 V50 with Red Bank Volvo, Inc., a New Jersey dealership. In March of 2010, Mr. Burns noticed water leaking from the area around the rear driver's side floorboard. After using a wet vac to remove the water, Mr. Burns brought the car to Garden State Volvo, which diagnosed the problem as a clogged sunroof drain. The technician had to replace the sound plug and reinstall the sunroof drain, which cost Mr. Burns $258.82.

Plaintiff Karen Collopy is a citizen of New Jersey. Ms. Collopy purchased a pre-owned 2007 S40 from Red Bank Volvo in New Jersey in February 2007. Five years later, in February 2012, Ms. Collopy brought her car to the Volvo Clinic after noticing water inside her vehicle. The technician determined that one drainage tube on Ms. Collopy's car was clogged and that the other was disconnected. The technician advised Ms. Collopy that she needed to replace the carpet of her car. The cost of the repair for the tubes was $96, and the cost to replace the carpet was $1,197.

Plaintiff Jeffrey Kruger is a resident of California. Mr. Kruger purchased a new 2005 S40 on July 31, 2005 from Volvo of Pleasanton, in California. On January 28, 2012, Mr. Kruger found about an inch of standing water in the front driver's side footwell following a rainstorm. Mr. Kruger then brought his car to Precision Motors, where the technician found that Mr. Kruger's

3

sunroof drain was plugged on the left side. The technician had to clean the sunroof drain, remove the driver's seat and front carpet, and dry out the rest of the vehicle.

Plaintiff Svein Berg is a resident of Hawaii. On January 28, 2007, Mr. Berg purchased a used 2004 XC90 from Pflueger Acura in Hawaii. Mr. Berg repeatedly found water on the floor of his vehicle. In August 2009, after drying up standing water on the floor of his car, Mr. Berg started up his car. The dashboard displayed an urgent message, and Mr. Berg decided to bring the car to his mechanic. Following a diagnostic examination, the mechanic told Mr. Berg that he needed to replace the yaw sensor. In January 2010, Mr. Berg again found water in his vehicle. Mr. Berg found a description of the sunroof drainage pipe repair online and brought it with him to the mechanic. Mr. Berg asked the mechanic to cut the hose according to the instructions he found online. The repair cost Mr. Berg about $187.50, and in July 2010, Mr. Berg sold his XC90 to a private party in Hawaii.

Plaintiffs filed an initial Motion for Class Certification in this Court before Judge Dennis M. Cavanaugh on August 7, 2012. (ECF No. 85). Judge Cavanaugh issued an Opinion on March 26, 2013 denying Plaintiffs' motion to certify a nationwide class, but certifying Plaintiffs' proposed state subclasses. *Neale v. Volvo Cars of N.A., LLC*, No. 10-4407 (DMC)(MF), 2013 WL 1223354, at *8 (D.N.J. Mar. 26, 2013). Plaintiffs proposed a nationwide class of "[a]ll persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle." *Id.* at *4. Judge Cavanaugh determined that Plaintiffs' proposed nationwide class "ignores the state in which the transaction occurred, the state where the purchasers of the vehicles live, and the interests of the states in which the transactions took place," and thus refused to certify the proposed nationwide class. *Id.* at *8.

Plaintiffs also proposed a series of state subclasses consisting of:

4

- "All persons or entities in Massachusetts who are current or former owners and/or lessees of a Class Vehicle (the 'Massachusetts Class').

- All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle (the 'Florida Class').

- All persons or entities in Hawaii who are current or former owners and/or lessees of a Class Vehicle (the 'Hawaii Class').

- All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the 'New Jersey Class').

- All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the 'California Class').

- All persons or entities in Maryland who are current or former owners and or lessees of a Class Vehicle (the 'Maryland Class')."

*Id.* at \*4–5. Judge Cavanaugh found that the state subclasses satisfied the requirements of Rules 23(a) and 23(b)(3) and certified the state subclasses. *Id.* at \*8–12.

Defendants then filed a motion for reconsideration, (ECF No. 281), which Judge Cavanaugh also denied. (ECF No. 289). Defendants subsequently filed an appeal, (ECF No. 297), and the Third Circuit issued an opinion vacating the District Court's certification of the state subclasses and remanding the case to the District Court, *Neale v. Volvo Cars of N.A., LLC*, 794 F.3d 353 (2015). The Third Circuit found that the District Court's certification order did not specify the claims certified, failed to limit the "Class Vehicles" to those with sunroofs, and concluded that the Court's predominance analysis "made no distinction between the six statewide classes or the relevant claims brought by those putative classes." *Id.* at 369–71. On remand, the

Third Circuit requested that this Court "define the class membership, claims, and defenses, and . . . rigorously analyze predominance in the first instance." *Id.* at 375.

Plaintiffs now seek certification of five state subclasses under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). This Court now addresses Plaintiffs' Motion in light of the Third Circuit's guidance.

## II. LEGAL STANDARD

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, Plaintiffs must establish both that the four requirements of Rule 23(a) have been met – those being numerosity, commonality, typicality, and adequacy – as well as that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; *see also Hydrogen Peroxide*, 552 F.3d at 309 n.6. Plaintiffs must also establish that the class is ascertainable, since "[a]scertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015).

In analyzing whether Rule 23's requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Hydrogen Peroxide*, 552 F.3d at 307. This is true even if the class certification inquiry overlaps with the merits of the causes of action. *Id.*

Rule 23(b)(3) requires a finding "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3); *see also Hydrogen Peroxide*, 552 F.3d at 310. "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out [at trial] in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at 311 (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)). Therefore, in addition to the four requirements of Rule 23(a), Plaintiffs in this case bear the burden of establishing that common issues of fact and law predominate and that a class action is superior.

### III. ANALYSIS

If a District Court has doubts as to whether Rule 23 requirements are met, that court should not certify the class. *Hydrogen Peroxide*, 552 F.3d at 321. This Court has doubts as to the clarity of Plaintiffs' class definitions as well as the ascertainability of each subclass.

#### A. The Class Definitions

"An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ." Fed. R. Civ. P. 23(c)(1)(B). The class definition in a court's order or opinion must include: "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187–88 (3d Cir. 2006).

Plaintiffs define the state subclasses as follows:

7

- "[State]³ Class: All persons or entities who purchased or leased a Class Vehicle within [State] who: (1) currently own or lease that Class Vehicle, or (2) previously owned or leased that Class Vehicle and can offer proof or otherwise be identified as having incurred out-of-pocket expenses related to the Sunroof Defect."

(ECF No. 401 at 16–17). Plaintiffs also make clear that the terms "lease" and "leased" in the class definition refers to lessees rather than lessors. (*Id.* at 16 n.37). Plaintiffs seek certification of the following claims found in the Second Amended Complaint, (ECF No. 66):

- <u>New Jersey Claims Asserted by the New Jersey Class</u>: New Jersey Consumer Fraud Act (Count I); Breach of Express Warranty (Count II); Breach of the Implied Warranty of Merchantability (Count III); and Breach of the Duty of Good Faith and Fair Dealing (Count V).

- <u>California Claims Asserted by the California Class</u>: Breach of Express Warranty (Count II); Breach of the Implied Warranty of Merchantability (Count III); Breach of the Duty of Good Faith and Fair Dealing (Count V); California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (Count IX); and California Consumer Legal Remedies Act, CAL. CIV. CODE. § 1770 (Count X).

- <u>Massachusetts Claims Asserted by the Massachusetts Class</u>: Breach of Express Warranty (Count II); Breach of the Implied Warranty of Merchantability (Count III); Breach of the Duty of Good Faith and Fair Dealing (Count V); and Massachusetts Consumer Protection Act, MASS. GEN. LAWS ch. 93A, §1, *et seq.* (Count VI).

---

[3] The applicable states are New Jersey, California, Massachusetts, Florida, and Hawaii.

8

- Florida Claims Asserted by the Florida Class: Breach of Express Warranty (Count II); Breach of the Duty of Good Faith and Fair Dealing (Count V); and Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, *et seq.* (Count VII).

- Hawaii Claims Asserted by the Hawaii Class: Breach of Express Warranty (Count II); Breach of the Implied Warranty of Merchantability (Count III); Breach of the Duty of Good Faith and Fair Dealing (Count V); and Hawaii Uniform Deceptive Trade Practice Act, HAW. REV. STAT. § 481A-1 (Count VIII).

(ECF No. 401 at 17–18).

**B. Ascertainability**

The Third Circuit recently laid out in clear terms the scope of the ascertainability inquiry. *See Byrd*, 784 F.3d at 161–65. To satisfy the ascertainability requirement, a class must be "defined with reference to objective criteria," and there must be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Notably, Plaintiffs need not identify all class members at the certification stage. *Id.* All that is required is that they show that the class members "*can* be identified." *Id.* (quoting *Carrera*, 727 F.3d at 308 n.2). However, Plaintiffs "cannot merely provide assurances to the district court that it will later meet Rule 23's requirements." *Id.* at 164. (citing *Carrera*, 727 F.3d at 306). Plaintiffs must also have some evidentiary support that their method of ascertaining a class will be successful. *Id.*

   *i. The State Subclasses Are Not Properly Defined*

Defendants argue that these class definitions are "obtuse," lack clarity, create choice of law problems, include entities who cannot recover under consumer fraud statutes, and require

"impermissible and impossible merits determinations." (ECF No. 409 at 13–18). Defendants are correct that the class definitions that Plaintiffs provide suffer from definitional deficiencies.

Critically, Plaintiffs' class definitions lack any class period. (ECF No. 401 at 16–17). This creates issues regarding the used vehicle market, in that new purchases of used Class Vehicles could create a seemingly endless supply of new potential class members.[4] *See Byrd*, 784 F.3d at 165 (stating that the ascertainability requirement mandates that the plaintiff show that class members can be identified). While not necessary, as there are date ranges for each Class Vehicle model, a beginning date for the class period would substantially clarify expected issues regarding statutes of limitations, and help eliminate individual inquiries in that regard.

Defendants claim that it is unclear whether members of the proposed classes "must have resided in one of the designated states at the time of purchase." (ECF No. 409 at 13). As written, the class definitions clearly indicate that the class members are members of the state class where they *purchased* or *leased* the Class Vehicle. The state of residency is not a component of the class definition. Defendants then argue that "defining the proposed classes by reference to the state of purchase or lease does *not* eliminate the need for a choice-of-law analysis." (*Id.* at 16).

In *Maniscalco v. Brother Int'l (USA) Corp.*, the Third Circuit addressed the choice-of-law problem in a class action based on a defective product.[5] 709 F.3d 202 (3d Cir. 2013). "Where a fraud or misrepresentation claim has been alleged, the court looks to the factors set forth in § 148 of the Restatement (Second) of Conflict of Laws." *Id.* at 207. These factors are:

---

[4] In light of the various other deficiencies in Plaintiffs' class definitions, the Court declines Plaintiffs' invitation to impose its own back end limitations on the class definition. (ECF No. 412 at 2).

[5] "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Maniscalco*, 709 F.3d at 206. Thus, this Court applies the choice-of-law rules of New Jersey. New Jersey applies the "most significant relationship" test in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 962 A.2d 453, 459–60 (N.J. 2008). The first step in the most significant relationship test is to determine whether or not an actual conflict exists between the laws of the forums. *Id.* at 460. Judge Cavanaugh previously determined that the application of *Maniscalco* to the facts at hand "requires application of the law of each putative class member's home state to that class member's claims." *Neale*, 2013 WL 1223354, at *8.

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2).

Here, the class definitions ensure that the state named in the subclass is the state where the car was located at the time of the transaction. Thus, factor (e) weighs in favor of the place of purchase, yet factors (b) and (d) weigh in favor of the state of residence. Defendants are right to note that the increase of automobile purchases over the Internet makes it increasingly unlikely that a buyer or lessee resides in the same state where he or she purchased the automobile. (ECF No. 409 at 16 n.32). Even assuming the Internet did not facilitate interstate automobile transactions, consumers still might cross state lines to purchase a car, and Plaintiffs have provided no evidence that all putative state subclass members reside in the state where they purchased or leased their Class Vehicle. Factor (a) is thus ambiguous and could weigh in favor of the state of residence, the state of purchase, or a third unrelated state. The Court in *Maniscalco* aptly notes that, under Section 6 of the Restatement and New Jersey law, the interests of interstate comity weigh in favor of applying the law of a putative class member's state of residence, 709 F.3d at 209, which further complicates the issue.

Defendants also attack the "current owner" definition of the class as it applies to leased vehicles, arguing that it is unclear whether that includes the current lessee, the current owner-lessor, or both. (ECF No. 409 at 13). While Plaintiffs state in their opening brief that "the terms

11

'lease' and 'leased' used in the class definitions refer to lessees and not lessors," ("ECF No. 401 at 16 n.37), this is not clear from the definition of the class itself.[6]

Defendants are also correct that the use of the word "entities" in the class definitions creates definitional problems, as "entities" that purchase goods for resale cannot recover under the NJCFA. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 560–61 (D.N.J. 2002) ("We note that New Jersey 'courts have consistently concluded that purchaser[s] of wholesale goods for resale are not consumers within the meaning of the NJCFA.'") (quoting *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 469 (D.N.J. 1998)).[7]

Defendants do err, however, where they argue that the "former owners" definition "requires merits determinations regarding defect, causation, and damages." (ECF No. 409 at 18). This is because, as Defendants claim, a finding of a defect "would not resolve whether unidentified class members incurred out-of-pocket expenses related to the alleged defect." *Id.* All this would require, in the event of a finding of default, is some level of inquiry and review of individual files to identify class members, which is not a reason to deny class certification. *Byrd*, 784 F.3d at 171.

If the Court finds, in the alternative, that there is no defect, Defendants argue that these "former owners" will not be bound by the judgment. (ECF No. 409 at 19). The Court disagrees. The Sixth Circuit case that Defendants cite to support this proposition is entirely distinguishable. In *Randleman v. Fid. Nat'l Title Ins. Co.*, the Sixth Circuit addressed the certification of a class defined as those "entitled to relief." 646 F.3d 347, 352 (6th Cir. 2011). The Sixth Circuit found this class definition inappropriate because it encompassed the outcome of the litigation. That is

---

[6] Though not conclusive, it is informative that Plaintiffs' own class settlement administration and notice expert, Patrick Passarella, could not interpret the class definitions. (ECF No. 410, Ex. 35 at 65:15–18).

[7] Entities purchasing cars for retail are similarly prohibited from recovering under the California and Hawaii consumer protection statutes. *See Ewert v. eBay, Inc.*, Nos. C–07–02198, C–07–04487, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) (stating that entities cannot recover under the Consumer Legal Remedies Act if they are engaged in business practices); *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1052 (D. Haw. 2010) ("Chapter 480 was specifically designed to protect individual consumers rather than businesses.").

not the case here. The "former owners" portion of each subclass is defined as those who "can offer proof or otherwise be identified as having incurred out-of-pocket expenses related to the Sunroof Defect." (ECF No. 401 at 16). These "former owners" would be bound by the Court's decision that there is no defect in the sunroof drainage system on the Class Vehicles, and thus there would be no unlawful omission.

Despite the permissibility of individual inquiries to identify certain class members, the Court still finds that the putative state subclasses are not "defined with reference to objective criteria." *Byrd*, 784 F.3d at 163.

  ii. *The State Subclasses Cannot be Reliably or Feasibly Determined*

Defendants argue that there is no way Plaintiffs can determine which states the class members purchased their used Class Vehicles in, as required by the class definitions. (ECF No. 409 at 19). As the Third Circuit articulated in *Byrd*, Plaintiffs need not identify all class members at this stage; they simply must show that it can be done and provide evidence as to how. 784 F.3d at 163–64. Plaintiffs claim they have identified an administratively feasible scheme to identify class members, using data from IHS Markit. (ECF No. 401 at 21; ECF No. 401-1 ¶ 4). This data includes titles, registration transfers, and renewals in all 50 states, and includes original, intervening non-current, and current owners. (ECF No. 401-1 ¶ 5). Once Plaintiffs match that data with the Vehicle Identification Numbers ("VINs") provided by Volvo, Plaintiffs would obtain the mailing addresses necessary for notice.[8] (*Id.* ¶¶ 6–7). Plaintiffs have also identified a means to determine where a Class Vehicle was sold. IHS "tracks vehicle ownership through state title

---

[8] Previous class actions against Volvo indicate that Volvo maintains the records necessary to ascertain class members. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 WL 1192479, at *3 (D.N.J. Mar. 22, 2013) (noting that Volvo provided a list of over a 100,000 unique class members); Mem. in Supp. of Prelim. Approval of Settlement, *Trew v. Volvo Cars of N. Am., LLC*, No. 05-1379 (E.D. Cal. Feb. 2007) (noting that Volvo provided Class Member address information, which was supplemented by motor-vehicle registration data from R.L. Polk & Co).

and registration records," making it "possible to identify vehicles that have moved between states and were subsequently registered in another state."[9] (*Id.* ¶ 8). If that method of identification proved difficult, Plaintiffs have also shown that CARFAX, which maintains a database of over 17 billion records, provides a detailed history of an automobile, including the state in which it was bought and sold. (*See* ECF No. 412 at 5–6).

The evidence discussed in the prior paragraph establishes that Plaintiffs have also shown that they can identify former owners who have incurred out-of-pocket expenses. Defendants assert that the identification of such class members is impossible, because it would require unidentified class members to bring in repair records. (ECF No. 409 at 24). However, it is this very kind of proof of class membership that ensures the viability of Rule 23(b)(3) class actions. The Third Circuit noted that:

> There will always be some level of inquiry required to verify that a person is a member of a class; for example, a person's statement that she owned or leased [the product at issue] would eventually require anyone charged with administering the fund resulting from a successful class action to ensure that person is actually among [the class members]. Such a process of identification does not require a "mini-trial," nor does it amount to "individualized fact finding," . . . and indeed must be done in most successful class actions.

*Byrd*, 784 F.3d at 170–71 (quoting *Carrera*, 727 F.3d at 307)).

In fact, the Second Circuit decision Defendants rely on to support their assertion that certification of this class would constitute an impermissible opt-in class acknowledges the difference between an opt-in class and the necessity of a post-liability determination claim filing. *See Kern v. Siemens Corp.*, 393 F.3d 120, 126–27 (2d Cir. 2004) (noting that there is a critical difference between requiring unnamed plaintiffs to opt in prior to a determination of liability and requiring unnamed plaintiffs to take action to obtain ultimate relief). Defendants also raise the

---

[9] IHS has since bought R.L. Polk & Co.

concern that their due process right to challenge the evidence that the "out-of-pocket expenses were 'related' to a 'Sunroof Defect'" creates the likelihood of extensive mini-trials. (ECF No. 409 at 24). This due process right is specifically limited to Defendants' "ability to 'challenge the proof used to demonstrate class membership.'" *Byrd*, 784 F.3d at 171 (quoting *Carrera*, 727 F.3d at 307). Such a right does not result in an impermissible mini-trial. *See id.* (noting that the class was ascertainable despite the defendant's right to challenge evidence used to demonstrate class membership).

However, this Court still finds holes in the reliability of Plaintiffs' scheme to identify class members. As Defendants suggest, the bulk of the class is likely to consist of former owners. (ECF No. 409 at 20). These former owners must still prove the state in which they purchased the Class Vehicle. Using the CARFAX report appears administratively feasible for current owners, but for former owners who no longer know or possess the VIN number of their former Class Vehicle, such a method could be unwieldy. Furthermore, Plaintiffs have not provided the Court with any of the IHS data, which they suggest allows them to identify the state of purchase for former owners. As such, the Court has no way of assessing the reasonableness of Plaintiffs' proposed scheme for this subset of the proposed class. Finally, Plaintiffs have also failed to brief the Court on the percentage of Class Vehicles that may have changed hands in private transactions, such as Mr. Berg's private sale of his XC90 in July of 2010. Plaintiffs' have given no indication that such transactions show up on a CARFAX report, and in fact the CARFAX report for Mr. Berg's XC90—which Plaintiffs themselves submitted—shows no transaction in July 2010. (ECF No. 412-1, Ex. 8). Nor have Plaintiffs shown that such private person-to-person transactions show up in IHS data. Thus, the Court has doubts as to the ascertainability of that portion of each proposed state subclass. *See Byrd*, 784 F.3d at 164 (stating that a "party cannot merely provide assurances

to the district court that it will later meet Rule 23's requirements" and that "a party [cannot] 'merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.'") (quoting *Carrera*, 727 F.3d at 306–07).

Given the issues stated above, the Court finds that Plaintiffs' proposed state subclasses are not ascertainable. Ascertainability is a prerequisite to the Court's Rule 23(b)(3) analysis, and as such, the Court cannot conduct the necessary inquiry to certify Plaintiffs' proposed Rule 23(b)(3) class.[10] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012) (recognizing ascertainability as an "essential" prerequisite to a 23(b)(3) class action).

### C. Plaintiffs' Rule 23(b)(2) Class

Plaintiffs also seek certification of a Rule 23(b)(2) settlement class. Ascertainability is not a requirement for the certification of a Rule23(b)(2) class. *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015). Certification of a Rule 23(b)(2) class is appropriate where the "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs request an order that Volvo repair or replace the defective component in the Sunroof Drainage System, "extend the warranty to a reasonable period of time and, at a minimum, provide Class members with appropriate notification of the existence of the defect and the necessary maintenance instructions." (ECF No. 401 at 39–40). Such relief plainly can only benefit current owners of a Class Vehicle and not former owners. As such, Plaintiffs' request for class certification under Rule 23(b)(2) is denied. *See Gates v. Rohm and Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011) (noting that Rule 23(b)(2) relief is only appropriate where the injunction or declaratory judgment would provide relief to *each* class member). Plaintiffs suggest that "any

---

[10] The Court notes that Plaintiffs, in the event they seek recertification, should fully brief the predominance requirements as to all claims under the laws of each applicable state, as opposed to conducting the analysis solely under New Jersey law and appending the laws of the other four states to their brief.

16

class certified pursuant to Rule 23(b)(2) can apply only to those class members that currently own Class Vehicles," however, Plaintiffs do not propose a separate class definition for this class, and the split between current and former owners of the Class Vehicles remains relevant.

### D. Appointment of Additional Class Counsel

Plaintiffs counsel requests that this Court appoint McCune Wright Arevalo LLP as co-lead counsel, alongside Chimicles & Tikellis and Mazie Slater Katz & Freeman. (ECF No. 401 at 26–27). The Court reserves decision on Plaintiffs' counsel's request until Plaintiffs, if they so choose, move to recertify the class.

### IV. CONCLUSION

For the aforementioned reasons, the Court denies Plaintiffs' motion to certify a class pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) without prejudice, and with leave to move to recertify in a manner that is consistent with the guidance set forth herein. An appropriate order accompanies this Opinion.

DATED: December 6th, 2017

JOSE L. LINARES
Chief Judge, United States District Court