JOANNE NEALE, et. al.,

    *Plaintiffs*,

v.

VOLVO CARS OF NORTH AMERICA,
LLC, et al.,

    *Defendants.*

Civil Action No. 10-4407

OPINION

ARLEO, UNITED STATES DISTRICT JUDGE

    **THIS MATTER** comes before the Court on Plaintiffs Joanne Neale's, Keri Hay's, Kelly McGary's, Svein A. Berg's, Gregory P. Burns's, David Taft's, Jeffrey Kruger's, and Karen Collopy's (collectively, "Plaintiffs") Renewed Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), ECF No. 498. Defendants Volvo Cars of North America and Volvo Car Corporation ("Defendants" or "Volvo") oppose the Motion. ECF No. 500. For the reasons set forth below, Plaintiffs' Motion is **DENIED**.

## I.    BACKGROUND[1]

    This longstanding putative class action arises out of Defendants' sale of six Volvo vehicle models (the "Class Vehicles")[2] allegedly containing an undisclosed uniform design defect in their

---

[1] The background of this action has been discussed at length in prior opinions by this Court and the Third Circuit discussing class certification. See Neale v. Volvo Cars of N. Am., LLC, No. 10-4407, 2011 WL 1362470 (D.N.J. Apr. 11, 2011) ("Neale I"); Neale v. Volvo Cars of N. Am., LLC, No. 10-4407, 2013 WL 1223354 (D.N.J. Mar. 26, 2013) ("Neale II"); Neale v. Volvo Cars of N. Am., LLC, No. 10-4407, 2013 WL 5674355 (D.N.J. Oct. 16, 2013) ("Neale III"); Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353 (3d Cir. 2015) ("Neale IV"); Neale v. Volvo Cars of N. Am., LLC, No. 10-4407, 2017 WL 6055774 (D.N.J. Dec. 6, 2017) ("Neale V"). The Court incorporates the facts articulated in these opinions and herein discusses only those facts necessary to resolve the instant Motion.

[2] Plaintiffs define "Class Vehicles" as "the following models that came with a factory installed (OEM) sunroof: S40, S60, S80, V70 (model years 2004 to 2011); XC90 (model years 2003 to 2011); and V50 (model years 2005 to 2011)." ECF No. 499, at 1 n.1.

sunroof drainage systems (the "Sunroof Defect").  See Second Amended Complaint ("SAC") ¶ 1, ECF No. 66.

Plaintiffs allege that the Class Vehicles "incorporate the use of drain holes, drain tubes and sound traps in an attempt to direct water from the sunroof tray . . . to the underside of the vehicle." Id. ¶ 86.  The sound traps are located at the bottom of the drain tubes and employ a "plus-shaped" opening designed to allow water to exit the drainage system while minimizing wind noise.  See Certification of Charles E. Benedict ("Benedict Cert.") ¶¶ 5, 8.  Plaintiffs contend that the plus-shaped design causes the sound traps to clog, which results in water backing up into the drainage tubes and, ultimately, into the passenger compartment.  Id. ¶ 8.[3]

Plaintiffs are residents of New Jersey, California, Maryland, Massachusetts, Florida, and Hawaii who each purchased a Class Vehicle and each allegedly incurred out of pocket expenses to repair damages caused by the Sunroof Defect.  Id. ¶¶ 8-72.

## II.  PROCEDURAL HISTORY

The tortured history of this action now spans over a decade.  Plaintiffs filed their initial Complaint on August 27, 2010.  ECF No. 1.  On May 21, 2012, they filed the thirteen-count SAC, asserting claims under the laws of six states.[4]

---

[3] While the SAC discusses the defect in broader terms, Plaintiffs have confirmed that for purposes of class certification, "the Sunroof Defect is confined to the defective plus-shape sound traps contained in every Class Vehicle."  ECF No. 446, at 6 n.7.

[4] The SAC specifically alleges: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("NJCFA"), SAC ¶¶ 133-40 ("Count I"); (2) breach of express warranty, id. ¶¶ 141-52 ("Count II"); (3) breach of the implied warranty of merchantability, id. ¶¶ 153-61 ("Count III"); (4) common law fraud, id. ¶¶ 162-65 ("Count IV"); (5) breach of the duty of good faith and fair dealing, id. ¶¶ 166-69 ("Count V"); (6) violation of the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 1, et seq. ("Chapter 93A"), id. ¶¶ 170-73 ("Count VI"); (7) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202 ("FDUTPA"), id. ¶¶ 174-77 ("Count VII"); (8) violation of the Hawaii Uniform Deceptive Trade Practice Act, Haw. Rev. Stat. Ann. § 481A-3, id. ¶¶ 178-86 ("Count VII"); (9) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), id. ¶¶ 187-93 ("Count IX"); (10) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code. § 1770 ("CLRA"), id. ¶¶ 194-206 ("Count X"); (11) breach of express warranty, in violation of the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq. ("Song-Beverly"), id. ¶¶ 207-11 ("Count XI");

On March 26, 2013, the Court denied Defendants' respective motions for summary judgement, denied Plaintiffs' motion to certify a nationwide class, and granted Plaintiffs' motion to certify six statewide classes. <u>Neale II</u>, 2013 WL 1223354. The Court denied Defendants' subsequent motion for reconsideration on October 16, 2013. <u>Neale III</u>, 2013 WL 5674355. Defendants appealed, and the Third Circuit vacated class certification on July 22, 2015. <u>Neale IV</u>, 794 F.3d 353. The Third Circuit determined that this Court erred by failing to (a) include a "clear and complete summary of those claims, issues, or defenses subject to class treatment," <u>id.</u> at 369, or (b) perform a claim-by-claim analysis pursuant to Rule 23(b)(3) to determine whether common issues of law or fact predominate over individualized issues, <u>id.</u> at 370-73.

On remand, the Court denied Plaintiffs' renewed motion for class certification without prejudice. <u>Neale V</u>, 2017 WL 6055774. The Court did not reach the issues identified by the Third Circuit but held that Plaintiffs had failed to present ascertainable statewide classes under Rule 23(b)(3). <u>Id.</u> at *5-9. The Court further held that Plaintiffs' Rule 23(b)(2) classes could not be certified because they included former owners of Class Vehicles but sought injunctive relief that could only benefit current owners. <u>Id.</u> at *9.

Plaintiffs again moved for class certification on September 28, 2018.[5] ECF No. 431. This Court again denied that motion without prejudice, concluding that Plaintiffs had failed to prove that each proposed subclass was sufficiently numerous to satisfy Rule 23(a)(1). ECF No. 463. The Court granted Plaintiffs leave to refile their motion with further evidence of numerosity and

---

(12) failure to set forth terms of warranty in writing, in violation of Song-Beverly, <u>id.</u> ¶¶ 212-15 ("Count XII"); and (13) breach of implied warranty, in violation of Song-Beverly, <u>id.</u> ¶¶ 216-22 ("Count XIII").

[5] This action was reassigned to the undersigned on May 22, 2019. ECF No. 457.

permitted the parties to "incorporate by reference the remaining issues addressed but not decided in [the] prior motion for class certification." Id. at 5. The instant Motion followed.[6]

## III. PROPOSED CLASSES, REPRESENTATIVES, AND CLAIMS

Plaintiffs seek certification pursuant to Rule 23(b)(3) of four statewide classes of consumers residing in New Jersey, Massachusetts, California, and Florida,[7] defined as follows:

> All persons who at any time between April 29, 2004 and December 31, 2015, purchased or leased a Class Vehicle from an authorized Volvo dealership in [State] and also resided in [State] at the time of that purchase or lease; and, as of the date of the Court's class certification order, either: (a) still own that Class Vehicle; or (b) can offer proof or otherwise be identified as having incurred prior out-of-pocket expenses related to repairs associated with the Sunroof Defect, regardless of whether such person still owns or leases that Class Vehicle. Specifically excluded from the class is any person who is or was a lessor of the Class Vehicle.

(the "Rule 23(b)(3) Classes"). ECF No. 499, at 1-2.[8] Plaintiffs additionally seek certification of four statewide classes pursuant to Rule 23(b)(2), defined as:

> All persons who at any time between April 29, 2004 and December 31, 2015, purchased or leased . . . a Class Vehicle from an authorized Volvo dealership in [State] and also resided in [State] at the time of that purchase or lease; and, as of the date of the Court's class certification order still own that Class Vehicle. Specifically excluded from the class is any person who is or was a lessor of the Class Vehicle.

(the "Rule 23(b)(2) Classes"). Id. at 2. Persons who no longer own a Class Vehicle are therefore excluded from the Rule 23(b)(2) Classes.

---

[6] The parties have each accepted the Court's invitation to incorporate their prior briefing by reference. ECF No. 499, at 15; ECF No. 500, at 15-16. The Court has considered all relevant submissions in analyzing the instant Motion.

[7] Plaintiffs no longer seek certification of a nationwide class or a statewide class of Maryland or Hawaii residents. ECF No. 433, at 11 n.24; see also Neale II, 2013 WL 1223354, at *5-8 (denying certification of nationwide class).

[8] The Court hereinafter refers to persons falling within component (a) of the proposed Rule 23(b)(3) class definition as the "Current Owner" class members. Persons falling within component (b) are referred to as the "Out-of-Pocket" class members.

## A.    The New Jersey Classes

Plaintiffs Gregory Burns ("Burns") and Karen Collopy ("Collopy") seek certification of four claims on behalf of the New Jersey classes: (1) Count I (NJCFA); (2) Count II (breach of express warranty); (3) Count III (breach of implied warranty); and (4) Count V (breach of good faith and fair dealing).  ECF No. 433, at 13.

Burns and Collopy each reside in New Jersey.  SAC ¶¶ 39, 64.  Burns leased a new 2006 V50 from a New Jersey Volvo dealership in 2005 and subsequently purchased the vehicle.  Id. ¶¶ 40-41.  In March 2010, water leaked into the floorboard around the rear driver's side of Burns's V50.  Id. ¶ 42.  Burns paid $258.82 to a Volvo service center for repairs to the sunroof.  Id. ¶ 43.

Collopy purchased a used 2007 S40 from a New Jersey Volvo dealership in February 2007.  In February 2012, Collopy noticed water inside her vehicle and brought the car to a Volvo service center.  Id. ¶ 67.  A technician determined that one sunroof drainage tube was clogged and the other was disconnected.  Id. ¶ 68.  Collopy paid about $90 to repair the tubes and $1,100 to replace the water-damaged carpet.  Id. ¶ 69.

## B.    The California Classes

Plaintiff Jeffrey Kruger ("Kruger") seeks certification of five claims on behalf of the California classes: (1) Count II (breach of express warranty); (2) Count III (breach of implied warranty); (3) Count V (breach of good faith and fair dealing); (4) Count IX (UCL); and (5) Count X (CLRA).  ECF No. 433, at 13.

Kruger is a resident of California and purchased a new 2005 S40 from a California Volvo dealership in July 2005.  SAC ¶¶ 56-57.  In January 2012, Kruger noticed about an inch of water in the front driver's side footwell of his S40.  Id. ¶ 59.  After a third-party service center identified a clog on the left side of the sunroof drain, Kruger paid the center $308 to clean the sunroof drains,

remove the driver's seat and front carpet, and dry out the vehicle.  <u>Id.</u> ¶ 60.  Kruger sold his vehicle

on August 3, 2018.  <u>See</u> Declaration of Joel Neckers ("Neckers Decl.") Ex. 2, at 4, ECF No. 500.1.

### C.    The Florida Classes

Plaintiff Kelly McGary ("McGary") seeks certification of three claims on behalf of the

Florida classes: (1) Count II (breach of express warranty); (2) Count V (breach of good faith and

fair dealing); and (3) Count VII (FDUTPA).  ECF No. 433, at 13.

McGary is a resident of Florida and purchased a new 2004 Volvo XC90 from a Florida

Volvo dealership in 2004.  SAC ¶¶ 25-26.  In December 2009, McGary noticed water leaking into

her the driver's side of her XC90.  <u>Id.</u> ¶ 28.  McGary brought her vehicle back to the Volvo

dealership, which found that the sunroof drain was blocked.  The dealership removed the "A

pillar," modified the sunroof drains, and charged McGary over $600.  <u>Id.</u>  McGary returned to the

dealership the next month and informed the technician that water was still sloshing around.  <u>See</u>

McGary Dep. Tr. 193:11-200:24, Declaration of Peter W. Herzog III ("Herzog Decl.") Ex. 13,

ECF No. 438.6; <u>see also</u> Herzog Decl. Ex. 38 (invoice for January 2010 repairs), ECF No. 441.7;

SAC ¶ 29.  The invoice issued by the dealership on that occasion does not reference any further

repairs to the sunroof, but rather reflects a $180.33 charge for carpet cleaning and replacement of

an air conditioning drain.  Herzog Decl. Ex. 38.[9]

In December 2014, McGary transferred ownership of her vehicle to a business entity.  <u>See</u>

Herzog Decl. Ex. 25 ("McGary Resp. to Interrogatories") at 5, ECF No. 440.4.

---

[9] Specifically, the invoice notes a charge for the following service: "A/C DRAIN ON DRIVERS SIDE LEAKING INTO FLOORBOARD. REPLACED A/C DRAIN.  REMOVED DRIVERS CARPET AND DRIED.  INSTALLED CARPET."  Herzog Decl. Ex. 38.

### D.     The Massachusetts Classes

Plaintiff Joanne Neale ("Neale") seeks certification of four claims on behalf of the Massachusetts classes: (1) Count II (breach of express warranty); (2) Count III (breach of implied warranty); (3) Count V (breach of good faith and fair dealing); and (4) Count VI (Chapter 93A). ECF No. 433, at 13.

Neale is a resident of Massachusetts and purchased a used 2005 V50 from a Massachusetts Volvo dealership in October 2008.  SAC ¶¶ 8-9.  In March 2010, Neale heard a sloshing noise while driving and brought her car to the dealership.  Id. ¶ 11.  The dealership charged Neale about $590 to repair a clogged sunroof drain.  Id. ¶ 12.[10]

## IV.     ANALYSIS

A party seeking class certification must affirmatively establish each requirement of Rule 23 by a preponderance of the evidence.  Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012) (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 (3d Cir. 2008)). The Court must "rigorously analyze" all record evidence to ensure compliance.  Neale IV, 794 F.3d at 373 (citing Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)).  Further, the Court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."  Marcus, 687 F.3d at 591 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

The Court's analysis proceeds in two steps.  First, Plaintiffs must establish the viability of each proposed class through the prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  See Fed. R. Civ. P. 23(a); Reinig v. RBS Citizens, N.A., 912 F.3d 115, 124-25 (3d Cir. 2018).  Second, Plaintiffs must show that a class action may be maintained

---

[10] Plaintiffs do not proffer Keri Hay, David Taft, or Svein Berg as class representatives.

by meeting the requirements of at least one subsection of Rule 23(b).  See Fed. R. Civ. P. 23(b); Reinig, 912 F.3d at 125.  Plaintiffs move to certify claims for damages under Rule 23(b)(3) and claims for injunctive relief under Rule 23(b)(2).

## A.    Rule 23(a)

Defendants first argue that Plaintiffs have failed to establish three elements of Rule 23(a): numerosity, typicality, and adequacy.  The Court disagrees.

### 1.    Numerosity

The numerosity inquiry asks whether "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1).  In this Circuit, numerosity generally requires "more than 40 class members."  In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 426 (3d Cir. 2016) ("In re NFL").  The Court cannot rely on mere speculation as to the size of the class.  Instead, Plaintiffs have the burden to present "sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding."  Marcus, 687 F.3d at 596.  From there, the Court may "rely on 'common sense' to forgo precise calculations and exact numbers." Id. at 596-97.

The Court denied Plaintiffs' previous certification motion after determining that Plaintiffs had failed to present evidence of numerosity beyond mere speculation.  ECF No. 463 at 3-4. Plaintiffs have now cured this deficiency through a comparison of (a) sales data provided by Defendants with (b) registration data provided by Experian and state agencies.  See generally Declaration of Charles Lawson ("Lawson Decl.") ¶¶ 8-32, ECF No. 499.1; Certification of Matthew R. Mendelsohn ("Mendelsohn Cert.") ¶¶ 2-16, ECF No. 499.2.[11]    Using this

---

[11] Defendants provided Plaintiffs with spreadsheets containing the VINs for all new and certified pre-owned Class Vehicles sold within the four relevant states.  Mendelsohn Cert. ¶ 4.  Plaintiffs then obtained the registration data

methodology, Plaintiffs have identified significantly more than forty members of each class who purchased a Class Vehicle from an in-state Volvo Dealership, resided in-state at the time of purchase, and still owned the Class Vehicle as of June 2020.[12]   Specifically, Plaintiffs have identified 2,421 New Jersey Class members, 93 California Class members,[13] 1,789 Florida Class members, and 1,527 Massachusetts Class members.  Lawson Decl. ¶¶ 19, 23, 30.

Defendants do not dispute Plaintiffs' evidence but attack their methodology on two grounds.  Defendants first contend that Plaintiffs must separately demonstrate numerosity for each of the two components of their Rule 23(b)(3) class definition.  Essentially, Defendants argue that Plaintiffs' proposed class definition creates two subclasses which must independently satisfy the requirements of Rule 23: one class consisting of those who "still own" a Class Vehicle and another comprised of those who incurred "out-of-pocket expenses related to repairs associated with the Sunroof Defect."  Plaintiffs, however, have manifested a clear intent to treat both components of their Rule 23(b)(3) definition as part of one, unified class.  See ECF No. 501, at 3-6.  The Court declines to manufacture subclasses and will instead analyze whether Plaintiffs have satisfied each requirement of Rule 23 based on their proposed definitions.

Second, Defendants note that while Plaintiffs' data is current as of June 2020, the class definition includes only those persons who own a Class Vehicle "as of the date of the Court's class certification order."  But Plaintiffs need not "offer direct evidence of the exact number and

_____

associated with those VINs, which was refined to identify individuals who (1) registered a "new" vehicle, (2) held an active registration for the Class Vehicle; and (3) maintained an in-state address at the time of the initial registration.  Lawson Decl. ¶¶ 16-32.

[12] As Plaintiffs' proposed Rule 23(b)(2) and Rule 23(b) Classes each contain this set of current Class Vehicle owners, the same evidence satisfies numerosity as to each set of classes.

[13] Due to administrative limitations, Plaintiffs did not perform a comprehensive search of California registration data.  Mendelsohn Cert. ¶¶ 12-14.  Instead, Plaintiffs randomly selected 1000 of the 58,853 California VINs provided by Volvo and ran searches on only those VINs to generate a sample.  Id. ¶ 14; Lawson Decl. ¶ 28.

identities of the class members." Marcus, 687 F.3d at 596. The Court is satisfied that the June 2020 evidence provides adequate circumstantial evidence of numerosity and renders it highly unlikely that the membership of each class has dipped below forty. See, e.g., In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., No. 07-1871, 2014 WL 6684343, at *3 (E.D. Pa. Nov. 24, 2014) ("Although the number of potential class members continues to be a moving target, the Court finds that the numerosity factor weighs in favor of class certification."). The Court finds numerosity satisfied by a preponderance of the evidence.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To assess commonality, the Court asks whether the putative class members' claims "depend on a common contention," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Mielo v. Steak'n Shake Operations, Inc., 897 F.3d 467, 489 (3d Cir. 2018) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). The commonality inquiry is satisfied where "all putative class members were subjected to the same harmful conduct by the defendant," even in the presence of "legal and factual differences among the putative class members." In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig., 795 F.3d 380, 397 (3d Cir. 2015) (citation omitted).

Plaintiffs have identified common contentions central to the validity of their claims, namely that Defendants (a) sold vehicles containing a material, uniform design defect, and (b) failed to disclose the defect to consumers. See SAC ¶¶ 136, 172, 176, 189, 198 (consumer fraud violations based on intentional omission of the Sunroof Defect); id. ¶ 143 (breach of express warranty arising from the sale of defective vehicles); id. ¶ 157 (breach of implied warranty alleging that Sunroof Defect rendered Class Vehicles unmerchantable); id. ¶ 168 (breach of good faith and fair dealing

arising from failure to notify consumers of the Sunroof Defect).  The Court therefore finds that the commonality requirement is satisfied.  See Marcus, 687 F.3d at 597 (holding commonality satisfied where plaintiff sought to offer evidence about "whether [a product is] 'defective,' whether the defendants had a duty to disclose those defects, and whether the defendants did in fact fail to disclose those defects").[14]

### 3.    Typicality

Plaintiffs must next show that the claims of each class representative are "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  While closely related to commonality, the typicality inquiry seeks to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present."  Marcus, 687 F.3d at 598 (citation and quotations omitted).  The Third Circuit has adopted a "low threshold" for typicality.  In re NFL, 821 F.3d at 428 (citation omitted).  Even "pronounced factual differences" will not destroy typicality where there is a "strong similarity of legal theories" or where each claim "arises from the same practice or course of conduct."  Id. (citation omitted).  Defendants challenge typicality on two grounds.

First, Defendants argue that the class representatives are atypical because they each suffered out-of-pocket damages but seek to represent class members who have never experienced a water leak.  ECF No. 449, at 43-44.  Plaintiffs articulate two theories of damages: (1) out-of-pocket losses arising from repairs related to the Sunroof Defect; and (2) diminution-in-value or "benefit-of-the-bargain" damages arising from the sale of defective vehicles.  See, e.g., SAC ¶ 139. Class members who have never experienced a sunroof leak (and so have never needed repairs) may only seek the second variety of damages.  But each type of damages arises from the same

---

[14] Defendants do not specifically contest commonality.

alleged course of conduct by Defendants—the failure to disclose a material defect. Consequently, the variation in injuries suffered by the putative class are insufficient to destroy typicality. See, e.g., In re NFL, 821 F.3d at 428 (holding that the presence of "unique" injuries does not defeat typicality where "the same unlawful conduct" affected both the representatives and the putative class).[15]

Second, Defendants contend that Plaintiffs have not demonstrated that the alleged Sunroof Defect is uniform across all Class Vehicles. Though they do not dispute that each Class Vehicle utilizes sound traps with a "plus-shaped" opening, they maintain that the sound traps "have different sized openings in different models and model years," meaning "different risks of water leaks." ECF No. 449, at 44. Plaintiffs, however, contend that regardless of their size, the plus-shaped openings suffer from the same drainage issues. See, e.g., Benedict Cert. ¶ 21 (defining the alleged defect as "front sound traps with restrictive plus-shaped (+) openings[.]"); id. ¶¶ 24, 26-27 (opining that increases to the size of the opening are insufficient and that the "only way to eliminate the Sound Trap Defect" is to redesign the entire drainage system or "remove the restrictive '+' shaped exit from the sound trap"). In other words, the uniform design defect proffered by Plaintiffs is the shape of the opening, not its size. Indeed, this Court has previously determined that Plaintiffs have alleged a uniform defect despite "slight variations" in the length of the sound plugs and size of the openings across Class Vehicles. Neale II, 2013 WL 1223354, at *9.[16]

---

[15] Defendants further argue that class members without out-of-pocket losses lack a cognizable injury under state law. While New Jersey, California, and Florida each permit recovery of benefit-of-the-bargain damages arising from an unmanifested, latent defect upon satisfactory proof of damages, Massachusetts does not. See Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 885 (Mass. 2008). A Massachusetts Class member must therefore prove that he experienced a sunroof leak to recover. This factual variation does not defeat typicality under the Third Circuit's "low threshold;" however, it does present an evidentiary issue sufficient to defeat predominance. See infra Section IV.B.5.

[16] The Third Circuit did not disturb this portion of the Court's prior opinion.

Since Plaintiffs have alleged a uniform defect in the shape of the opening in sound plugs across all Class Vehicles, the fact that each representative owned "only one model . . . does not pose a typicality problem." Marcus, 687 F.3d at 599 ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.") (citations omitted). Plaintiffs have established typicality.

**4.     Adequacy**

Rule 23(a)(4) requires the Court to determine if the class representatives and class counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives are adequate if they demonstrate (1) "[a] minimal degree of knowledge" about the litigation; and (2) that no "fundamental" conflict of interest exists between the representatives and the class. In re NFL, 821 F.3d at 430-31 (citations omitted).

The Court finds that Plaintiffs have shown the requisite knowledge and reaffirms its prior finding that Plaintiffs "have actively overseen the prosecution of this case, participated in meetings and worked closely with counsel, responded to the Defendant's discovery requests, and have all been deposed by defense counsel." Neale II, 2013 WL 1223354, at *11. Moreover, Defendants have identified no fatal conflict of interest between the class representatives and the class at large. While Plaintiffs suffered out-of-pocket losses and seek to represent consumers who have not, the Third Circuit has previously considered a putative consumer class action arising from defective sunroof drains and found no fundamental conflict "between those class members who have already suffered leakage, and those who have not yet suffered leakage." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 185 (3d Cir. 2012);[17] see also Rossini v. PNC Fin. Servs. Grp.,

---

[17] In Dewey, the Third Circuit ultimately held that the class representatives were inadequate based on the structure of a proposed settlement agreement, which prioritized funds relating to models owned by the representatives over funds

Inc., No. 18-1370, 2020 WL 3481458, at *9 (W.D. Pa. June 26, 2020) (observing that plaintiffs "who suffered the most significant harm . . . have the strongest incentive" to litigate aggressively or settle for maximum value).

Defendants do not challenge the adequacy of class counsel.[18]  The Court has reviewed the resumes of Plaintiffs' proposed lead counsel, which demonstrate extensive experience in litigating class and complex actions.  See Certification of Benjamin F. Johns ("Johns Cert.") Exs. 9-11, ECF Nos. 435.9-435.11.  And during this decade-long litigation, counsel has demonstrated thorough knowledge of the applicable law and a willingness to dedicate considerable resources to representing the putative classes.  The Court finds that Plaintiffs have established the adequacy of class counsel.

Plaintiffs have therefore demonstrated adequacy and satisfied each requirement of Rule 23(a).

## B.      Rule 23(b)(3) – Predominance

Having fulfilled Rule 23(a), Plaintiffs must now show that a class action may be maintained under one of the three categories established by Rule 23(b).  Plaintiffs first seek Rule 23(b)(3) certification on behalf of consumers who suffered damages arising from their purchase of defective Class Vehicles.  To succeed, they must establish that (1) questions of law or fact "predominate"

---

relating to other models within the class definition.  681 F.3d at 187-90.  No similar conflict has yet manifested here. See id. at 184 (observing that "[a] conflict that is unduly speculative" is "not fundamental").

[18] Rule 23(g) governs the adequacy of class counsel.  See Udeen v. Subaru of Am., Inc., No. 18-17334, 2019 WL 4894568, at *5 (D.N.J. Oct. 4, 2019) (citing Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010)).  The Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

over individual questions, and (2) a class action is "superior" to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).[19] As the Court finds that Plaintiffs have failed to establish predominance as to any of their claims, the Court does not reach the issue of superiority.

"[P]redominance does not require that common questions will be answered, on the merits, in favor of the class;" the critical question is whether "common questions predominate over any questions affecting only individual [class] members." Neale IV, 794 F.3d at 373 (quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 459, 469 (2013)) (quotation marks omitted). This inquiry "begins . . . with the elements of the underlying cause of action." Id. at 370 (citing Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 131 (2011)). The Court must examine the nature of the evidence needed to satisfy each element and perform a "qualitative assessment of common versus individualized questions." Id. at 371 (citing Amgen Inc., 568 U.S. at 467).

The Third Circuit has cautioned that "[s]uits alleging defects involving motor vehicles often involve complicated issues of individual causation that predominate over common questions regarding the existence of a defect.") (citation and quotations omitted). Marcus, 687 F.3d at 604.

---

[19] Rule 23(b)(3) also implicitly requires Plaintiffs to prove that their proposed class is "ascertainable," meaning that "(1) the class is 'defined with reference to objective criteria;' and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (quoting Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013)). This Court has addressed the ascertainability of a prior iteration of Plaintiffs' proposed classes. See generally Neale V, 2017 WL 6055774, at *5-9. Though the Court identified several deficiencies in Plaintiffs' class definition (which Plaintiffs have since cured), it held that the prerequisite that Out-of-Pocket class members "offer proof or otherwise be identified as having incurred out-of-pocket expenses related to the Sunroof Defect" did not destroy ascertainability. Id. at *7-8.

The causation issues discussed below (which the Court did not specifically address in its prior opinion), cast doubt on the administrative feasibility of determining whether a former Class Vehicle owner has incurred expenses "related to repairs associated with the Sunroof Defect." Such determination would appear to require significantly more than a permissible review of "individual files." Byrd, 784 F.3d at 171. For example, repair records may be unlikely to precisely identify the defect challenged herein. A record simply indicating repairs to a "clogged sunroof drain" would not necessarily implicate the defective sound plugs absent further evidence and a factual finding. This is further complicated by the facts that (a) the class encompasses repairs made by third parties, meaning the relevant records are outside Defendants' control and must be individually authenticated; and (b) the relevant class members no longer possess their vehicles and cannot present them for inspection. Still, in light of the Court's determination that Plaintiffs cannot demonstrate predominance, the Court declines to revisit its prior holding or reach the issue of ascertainability.

This fundamental principal guides the Court's analysis of each claim subject to the instant Motion. To establish predominance, Plaintiffs must show that a group trial of this action will not devolve into a series of mini trials concerning causation or injury.

Plaintiffs seek certification of consumer fraud and warranty-based claims under the laws of New Jersey, California, Florida, and Massachusetts.[20] The Court examines each cause of action in turn.

### 1.    New Jersey Consumer Fraud Act (Count I)

Defendants argue that individual questions concerning injury and causation preclude predominance as to Plaintiffs' NJCFA claim. The Court agrees.

An NJCFA claim requires proof of "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (2007) (citation, alterations, and quotation marks omitted). Where, as here, the alleged unlawfulness is a "knowing omission," a plaintiff must further demonstrate that the defendant (a) "knowingly concealed" (b) "a material fact" (c) "with intention that plaintiff rely upon the concealment." Coba v. Ford Motor Co., 932 F.3d 114, 124 (3d Cir. 2019) (citing Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418 (App. Div. 2003)).

The questions of Defendants' knowledge, concealment, and intent are common questions that can be proven with uniform evidence. Plaintiffs have also presented evidence of a uniform "fact" in the form of the Sunroof Defect. See supra Section IV.A.3. The materiality of that fact is judged by an objective, "reasonable person" standard, Coba, 932 F.3d at 125-26, and is likewise

---

[20] The Court previously performed a choice-of-law analysis and determined that each putative class member's claims are governed by the law of her state of residence at the time of purchase. Neale V, 2017 WL 6055774, at *6 n.5; Neale II, 2013 WL 1223354, at *8.

susceptible to common proof.[21]  Plaintiffs have thus shown that Defendants' alleged "unlawful conduct" can be proven or disproven with common evidence.

The same cannot be said as to ascertainable loss and causation.   An ascertainable loss must be "quantifiable or measurable," but a plaintiff need not demonstrate an out-of-pocket loss where a diminution in the value of a product can be "calculated within a reasonable degree of certainty." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248-49 (2005).   Plaintiffs rely on separate theories of loss for the Out-of-Pocket and Current Owner components of the proposed New Jersey Rule 23(b)(3) Class, ECF No. 27-28, and must therefore demonstrate predominance as to both in order to obtain certification.   The Court addresses each theory and finds that neither is amenable to Rule 23(b)(3) certification.

### a.        Out-of-Pocket Theory

The Out-of-Pocket class members seek to recover costs incurred to repair damage caused by the Sunroof Defect.  Plaintiffs argue that predominance exists because such losses are "easily discernible" from repair records, relying on Schwartz v. Avis Rent a Car Sys., LLC, No. 11-4052, 2014 WL 4272018 (D.N.J. Aug. 28, 2014).  ECF No. 446, at 8.  In Schwartz, the plaintiff sought class certification on an NJCFA claim alleging that the defendant concealed a uniform $0.75 per day surcharge to customers participating in a rewards program.  Id. at 1.  The Court found that a "quantifiable or measurable" loss could be commonly proven through the defendant's transaction records, which reflected the charges.  Id. at *9.

---

[21] For example, Defendants allude to questions concerning (a) the failure rate of the Sunroof Defect; (b) the lack of a feasible alternative to the allegedly defective sound plugs; and (c) the benefits of the plus-shaped openings in reducing wind noise. ECF No. 449, at 12-13. Each of these questions can be answered with common evidence and bear directly on whether "a reasonable person would attach importance to [the alleged defect's] existence in determining his or her choice of action."  Coba, 932 F.3d at 125-26 (quoting Suarez v. E. Int'l Coll., 428 N.J. Super. 10 (App. Div. 2012)) (alterations and quotation marks omitted).

By stark contrast, Plaintiffs here must, as a threshold matter, rely on repair records provided by individual class members—and outside of Defendants' control.[22] Even more critically, this action does not involve a uniform surcharge charge that impacted all users of a product equally. Rather, the Court must undertake a potentially complex analysis of individual cases to determine whether a particular loss was caused by the Sunroof Defect, another aspect of a vehicle's sunroof drainage system, or something entirely different.[23] See, e.g., Marcus, 687 F.3d at 604, 606 (finding no predominance as to NJCFA claim seeking out-of-pocket cost of replacing "tires that went flat" due to individual questions concerning "whether each tire failed as a result of the allegedly concealed defect or as a result of unrelated issues"); Payne v. FujiFilm U.S.A., Inc., No. 07-385, 2010 WL 2342388, at *6 (D.N.J. May 28, 2010) ("To certify the class of all [product] owners, then determine the few that suffered malfunctions . . . and then determine which of those . . . malfunctions are attributable to the alleged . . . defect as opposed to the variety of other reasons for such . . . problems, would render the class action device nothing more than a facade for conducting a small number of highly individualized cases.").

Such problems of causation were conspicuously absent in Schwartz and defeat predominance here.

### b.    Diminution of Value Theory (Current Owners)

Plaintiffs next assert that current Class Vehicle owners suffered an ascertainable loss by purchasing vehicles infected with the Sunroof Defect, regardless of whether the defect manifested. To recover on a diminution-of-value theory, a consumer who suffered no out-of-pocket losses, and

---

[22] Plaintiffs do not limit the class definition to repairs made by Defendants. Further, Plaintiffs' damages expert concedes that he is not aware of any records showing repairs made by Volvo dealers outside of warranty or by third parties. See Expert Report of Walter Bratic ("Bratic Report") ¶ 27, ECF No. 435.13.

[23] As an example, Defendants point to evidence suggesting that one of the leaks alleged by McGary, SAC ¶ 29, may have been attributed to a faulty air conditioner, rather than the sunroof. See Herzog Decl. Ex. 38; supra n.9.

has not yet resold his vehicle, must demonstrate either (a) a loss in the product's market value "i.e., that the resale market for the specific vehicle had been skewed by the 'defect;'" or (b) other evidence sufficient to "infer a quantifiable loss" stemming from a lost "benefit-of-the-bargain." Thiedemann, 183 N.J. at 252 & n.8.[24]

Plaintiffs have presented no evidence that the Sunroof Defect diminishes the resale value of Class Vehicles. Rather, they contend that the existence of the Sunroof Defect deprived them of their bargain for vehicles "unencumbered by material defects," and that each class member has suffered a quantifiable loss equal to the cost of mitigating the Sunroof Defect. See ECF No. 446, at 8-9; Bratic Report § 5.1.2.[25]

As a threshold issue, Plaintiffs' theory is too speculative to satisfy the definition of ascertainable loss. For Current Owners who have experienced no leakage and suffered no out-of-pocket expenditures, the alleged class-wide "loss" stems from a purported need to repair a latent defect that, at some point in the future, may or may not manifest and create problems. In other words, they seek to recover the cost to remedy a problem that might not exist caused by a design flaw with no tangible impact on market value. This "hypothetical or illusory" loss is insufficient to support an NJCFA claim. Thiedemann, 183 N.J. at 248; see also, e.g., Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 242 (D.N.J. 2020) (dismissing NJCFA claim for lack of ascertainable loss where plaintiff alleged existence of latent defect that did not manifest until after

---

[24] The NJCFA permits a class-wide presumption of causation in a diminution-in-value case based on a material omission where a plaintiff demonstrates by a preponderance that "(1) that the alleged defects were not knowable to a significant number of potential class members before they purchased or leased their [vehicles], or (2) that, even if the defects were knowable, that class members were nonetheless relatively uniform in their decision making." Marcus, 687 F.3d at 611. The Court does not reach the issue of causation because Plaintiffs have not demonstrated an ascertainable loss.

[25] Plaintiffs' damages expert Walter Bratic ("Bratic") testified that he did not conduct a diminution-in-value analysis. Bratic Dep. Tr. 137:25-138:4, 156:1-9, Herzog Decl. Ex. 4, ECF No. 437.5. Plaintiffs have also not affirmatively demonstrated that an average consumer would view the Sunroof Defect as a material factor in deciding to purchase a used Class Vehicle. See infra Section IV.B.2.

expiration of vehicle's warranty); cf. Koronthaly v. L'Oreal USA, Inc., 374 F. App'x 257, 259 (3d Cir. 2010) (finding no Article III injury in NJCFA "benefit-of-the-bargain" claim because consumer failed to allege "she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect.").[26]

Plaintiffs' reliance on In re Mercedes-Benz Tele Aid Contract Litigation, 257 F.R.D. 46 (D.N.J. 2009), is misplaced. There, the court certified a class of consumers who purchased cars marketed as having an analog roadside assistance device, which the defendant allegedly knew would soon become obsolete and require an upgrade to a digital system. Id. at 48. The plaintiff identified two categories of loss. Consumers who purchased an upgrade suffered loss equal to the cost of their upgrade. Id. at 74. Consumers who did not purchase a digital upgrade, and therefore lost access to the roadside assistance they bargained for upon retirement of the analog service, likewise suffered loss equal to the cost of upgrading the service to "fulfill [their] expectation of a functioning . . . system." Id. at 73-74. Here, by contrast, class members who never experienced leakage have suffered neither out-of-pocket losses nor the inability to use their purchased product as intended.

Plaintiffs further contend that individualized damage calculations are insufficient to preclude class certification. This argument conflates two distinct issues: the presence of an ascertainable loss—an essential element of Plaintiffs' claim—and the specific amount of damages. "While obstacles to calculating damages may not preclude class certification, the putative class

---

[26] "Unnamed, putative class members need not establish Article III standing." Neale IV, 794 F.3d at 362. Still, despite the analytical distinction between the two doctrines, courts have recognized that the inability to establish an economic injury under Article III "may be fatal to . . . establishing an ascertainable loss or injury" in a state consumer fraud claim. Cottrell v. Alcon Lab'ys, Inc., No. 14-5859, 2015 WL 3889367, at *6 n.6 (D.N.J. June 24, 2015); see also Dicuio v. Brother Int'l Corp., No. 11-1447, 2015 WL 3403144, at *9 (D.N.J. May 27, 2015), aff'd, 653 F. App'x 109 (3d Cir. 2016) (recognizing that standing and ascertainable loss requirements are "interrelated"); cf. Neale IV, 794 F.3d at 368 (holding that questions as to the injuries suffered by unnamed class members may be relevant to the question of predominance and that "a properly formulated Rule 23 class should not raise standing issues").

must first demonstrate economic loss—that is, the fact of damage—on a common basis." <u>Harnish v. Widener Univ. Sch. of L.</u>, 833 F.3d 298, 306 (3d Cir. 2016) (citation and quotations omitted). Plaintiffs have not done so here.[27]

Absent expert testimony demonstrating that the Sunroof Defect skewed the market for Class Vehicles, or some other method for proving diminution of value on a class-wide basis, each class member must separately demonstrate that his or her Class Vehicle suffered an actual and quantifiable loss attributed to the Sunroof Defect. Such individualized questions preclude predominance on Plaintiffs' NJCFA claim.

## 2. California Legal Remedies Act (Count X)

Defendants next contend that individual questions of reliance and causation preclude predominance as to Plaintiffs' CLRA claim. The Court agrees.

The CLRA provides a cause of action to "any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful." Cal. Civ. Code § 1780. In contrast to the NJCFA's "ascertainable loss" requirement, the CLRA broadly permits recovery for "any damage." <u>See</u> <u>Steroid Hormone Prod. Cases</u>, 104 Cal. Rptr. 3d 329, 338 (Cal. App. 2010) ("'[A]ny damage' . . . is not synonymous with 'actual damages' and may encompass harms other than pecuniary damages.") (citation and quotation marks omitted). In <u>Nguyen v. Nissan N. Am., Inc.</u>, the Ninth Circuit held that the CLRA permitted suit based on a "benefit-of-the-bargain" theory that a "<u>defect</u> exists—and must be remedied—whether or not the <u>symptoms</u> have manifested yet," and the court accepted a measurement of damages tied to the "average cost of repair." 932 F.3d 811, 819, 821 (9th Cir. 2019) (emphasis in original). The Court

---

[27] To the extent Plaintiffs' damages expert suggests that Out-of-Pocket class members who no longer possess their vehicles have suffered a diminution of value, the same problems persist. Unless the Sunroof Defect systematically impacted the resale value of Class Vehicles, Plaintiffs cannot commonly prove that former owners suffered a diminution of value.

therefore assumes, without deciding, that Plaintiffs' out-of-pocket and diminution-of-value theories are each actionable under the CLRA.

A CLRA plaintiff must also show that her asserted damages were caused by the defendant's unlawful act. See, e.g., Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1164 (N.D. Cal. 2008). However, the CLRA permits "a class-wide inference of reliance and causation" if a plaintiff demonstrates that (1) "uniform misrepresentations were made to the class;" and (2) "the misrepresentations were material." In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig., No. 11-7382, 2019 WL 2521958, at *7 (D.N.J. June 18, 2019) ("In re Tropicana") (citing In re 5-Hour Energy Mktg. & Sales Practices Litig., No. 13-2438, 2017 WL 2559615, at *6-7 (C.D. Cal. June 7, 2017)); see also Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 596 (C.D. Cal. 2008) ("If materiality is shown, reliance and causation may be presumed as to the entire class.")).

A representation or omission is "material" if "a reasonable consumer would attach importance to its existence or nonexistence in determining what action to take in a particular transaction." In re Tropicana, 2019 WL 2521958, at *7 (citing Steroid Hormone Prod. Cases, 104 Cal. Rptr. 3d at 338-39). Importantly, where a plaintiff seeks to avail itself of a class-wide presumption of causation, he must affirmatively demonstrate its applicability at the class certification stage to prove predominance. See Marcus, 687 F.3d at 611 (holding that factual findings sufficient to invoke a similar presumption under the NJCFA are "critical to the predominance analysis" and "cannot be side-stepped"); In re Tropicana, 2019 WL 2521958, at *7 (finding no predominance as to CLRA claim because plaintiff failed to demonstrate materiality of alleged misrepresentations by a preponderance).

Here, the record is devoid of any evidence that a reasonable consumer would consider the Sunroof Defect material in deciding to purchase a Class Vehicle. Plaintiffs have presented no

evidence as to consumer behavior,[28] merely arguing in a footnote that there is "no conceivable benefit to water leaking into" a vehicle. ECF No. 433, at 29 n.42. However true this statement is, it misses the point. The inquiry is not whether a reasonable consumer would want a pool in her vehicle, but rather whether the risk of water leaks, balanced against the benefits of the plus-shaped design of the sound plugs, would dissuade her from purchasing a Class Vehicle. On one hand, Plaintiffs' expert recognizes that the plus-shape is designed to minimize wind noise. Benedict Cert. ¶ 5. On the other, the record evidence indicates that the vast majority of Class Vehicle owners will never experience leakage.[29] As the Third Circuit has explained, in the context of a latent defect in "run-flat" tires:

> The evidence might suggest that a significant number of class members could have known of the alleged "defects," but decided to purchase or lease their cars at the same price anyway. This may be so because other class members may consider the . . . "defects" to be simply trade-offs. Some purchasers or lessees may have found that the significant safety and convenience benefits RFTs offer in the event of a "flat" tire outweighed their downsides. . . . Others may simply have had the means to purchase or lease the luxury car of their choice and brush off how "exorbitantly" expensive it is to replace their tires and how frequently they must do that.

Marcus, 687 F.3d at 611-12. On this record, nothing permits the Court to determine how a reasonable consumer informed of the Sunroof Defect would react. Plaintiffs have therefore failed

---

[28] As discussed above, Plaintiffs have also failed to show that the existence of the Sunroof Defect impacts the market value of Class Vehicles. See supra Section IV.B.1.b.

[29] In 2012, a Volvo engineer estimated that only 0.5% of Class Vehicles had suffered a clogged sunroof drainage system. Bisaccia Dep Tr. 76:1-77:15, Herzog Decl. Ex. 3, ECF No. 437.4. Plaintiffs contend that this figure is "drastically underestimated," ECF No. 499, at 10, but they have failed to offer any evidence supporting a contrary percentage. Indeed, Plaintiffs relied solely upon the 0.5% figure in arguing for numerosity. Id. Further, Plaintiffs' evidence purporting to show that the Sunroof Defect is a "widespread problem" merely suggests that Volvo employees were aware of the Sunroof Defect. See ECF No. 446, at 2 & n.1. At bottom, Plaintiffs have provided no alternative basis to measure the frequency of leakage.

to demonstrate the materiality of Defendants' alleged omission by a preponderance, cannot invoke the presumption of causation, and cannot establish predominance as to their CLRA claim.[30]

### 3. California Unfair Competition Law (Count IX)

Defendants argue that Plaintiffs' UCL claim is judged by the same standard as their CLRA claim and fails the predominance test for the same reason. The Court does not entirely agree, but nonetheless finds predominance lacking.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. California courts have interpreted this language to authorize three independent bases for recovery: unlawfulness, unfairness, and fraud. Pfizer Inc. v. Superior Ct., 105 Cal. Rptr. 3d 795, 801 (Cal. App. 2010).

Prevailing plaintiffs under the UCL are limited to restitution or injunctive relief. Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003). In calculating restitution, the UCL requires only "some reasonable basis of computation," and an "approximation" will suffice. Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 989 (9th Cir. 2015) (citation and quotations omitted). Still, restitution "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." Id. (citing Colgan v. Leatherman Tool Grp., Inc., 38 Cal. Rptr.3d 36 (Cal. App. 2006)); see also In re Vioxx Class Cases, 103 Cal. Rptr. 3d 83, 100-01 (Cal. App. 2009) (holding that while class-wide UCL restitution does not require "individualized proof of injury," it must be susceptible to calculation on a class-wide basis); cf. Comcast Corp., 569 U.S. at 34

---

[30] Defendants have presented evidence of consumer behavior, ECF No. 449.2, which Plaintiffs previously moved to strike, ECF No. 444. As Plaintiffs have failed to present affirmative evidence of materiality, the Court need not consider Defendants' evidence. To the extent Plaintiffs wished to renew their motion to strike by incorporating their prior class certification briefing, the Court denies their application as moot.

(holding that a Rule 23(b)(3) class may not be certified unless plaintiffs establish that damages are capable of class-wide measurement and consistent with their theory of liability).

Plaintiffs' proposed Rule 23(b)(3) class seeks restitution under all three theories of liability contemplated by the UCL. Plaintiffs predicate their claim of "unlawfulness" on Defendants' alleged CLRA violation. See Klein v. Chevron U.S.A., Inc., 137 Cal. Rptr. 3d 293, 327 (Cal. App. 2012) ("Section 17200's 'unlawful' prong borrows violations of other laws. . . . [A] violation of the CLRA . . . may form the predicate 'unlawful act[.]'") (citations and quotation marks omitted). Similarly, UCL fraud claims are interpreted "in tandem" with fraud claims under the CLRA. See In re Tropicana, 2019 WL 2521958, at *7 (collecting cases); see also In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009) (holding that under the UCL's fraud prong, a presumption of reliance arises "wherever there is a showing that a misrepresentation was material."). Since Plaintiffs have not shown predominance as to their CLRA clam, they have likewise failed to prove predominance as to their unlawfulness and fraud claims under the UCL.

California courts are in "considerable disagreement" as to the standards governing Plaintiffs' claim of "unfairness." DeFrank v. Samsung Elecs. Am., Inc., No. 19-21401, 2020 WL 6269277, at *14 (D.N.J. Oct. 26, 2020). They typically permit such claims to proceed if one of three tests are satisfied:

> (1) a "balancing test" considering the "reasons, justifications and motives of the alleged wrongdoer" compared to the practice's impact on its alleged victim, (2) a "competitor tethering test," where unfairness must be related to a legislatively declared policy or a threatened impact on competition, or (3) the test set out in section 5 of the Federal Trade Commission Act, which asks if the consumer injury is substantial, if the injury is outweighed by countervailing benefits, and if the consumers themselves could have reasonably avoided the injury.

Id. (citing Morgan v. AT&T Wireless Services, Inc., 177 Cal. Rptr. 3d 768, 784-85 (Cal. Ct. App. 2009)). Plaintiffs have not demonstrated predominance as to any of these tests.

First, under the balancing test, "a plaintiff's individual expectations about the business practice are relevant to determining the extent of its harm." Menagerie Prods. v. Citysearch, No. 08-4263, 2009 WL 3770668, at *14 (C.D. Cal. Nov. 9, 2009) (citing S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 85 Cal. Rptr. 2d 301, 321 (Cal. App. 1999)). The resulting need for individualized inquiries—both as to a class member's "expectations" and to the practice's "impact" on the victim—renders this species of unfairness claim unsuitable for class-wide resolution. Id.

Second, Plaintiffs have not articulated a "legislatively declared policy" separate from the CLRA to serve as a predicate for the "tethering test."

Third, under the FTC test, Plaintiffs have shown no ability to measure the predicate "injury" to Out-of-Pocket class members who no longer own their vehicle—or their requested award of restitution—on a class-wide basis.[31] See Webb v. Carter's Inc., 272 F.R.D. 489, 503 (C.D. Cal. 2011) (holding that the Court can consider the "aggregate or average injury" in determining whether a practice is "unfair" as to a class). Plaintiffs have proffered an expert report purporting to calculate the total out-of-pocket damages suffered by the proposed class. See Bratic Report ¶¶ 26-31. However, the Court may not "uncritically accept" such opinion testimony without first conducting a "rigorous analysis" as to its persuasiveness. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 323-24.

---

[31] This is an issue distinct from the question of whether unnamed class members individually suffered a cognizable injury. California law makes clear that unnamed UCL class members need not possess standing under state law, In re Tobacco II Cases, 207 P.3d at 31-38, while the Third Circuit has held the same as to Article III of the Constitution, Neale IV, 794 F.3d at 362. But even if Plaintiffs need not show that each class member was injured under the UCL, they must still demonstrate the extent to which the class was injured as a whole.

Plaintiffs' expert concedes that he is unaware of any records reflecting either (a) repairs made by Volvo dealers that were not covered by warranty; or (b) repairs made by third parties. Bratic Report ¶ 27. Instead, Bratic proposes to estimate class-wide out-of-pocket damages using the following three-step methodology. At step one, Bratic would refer to Volvo's "warranty database" to "determine the number of warranty claims that have been paid" for each model and model year. Id. ¶¶ 27-28. Bratic would then "divide those figures by the number of vehicles" that were still in service during each time period, which he claims would yield "the percentage of vehicles still in service on which warranty claims related to the Sunroof . . . Defect were made." Id. ¶ 28. At step two, Bratic would "use these percentages to determine the likelihood that vehicles experienced the Sunroof . . . Defect after they are no longer covered under the warranty up through the present date." Id. He asserts this would "yield an estimate of the number of repairs that occurred outside of the warranty period." Id. At step three, Bratic would multiply the total number of repairs by the "average repair cost" to yield total out-of-pocket costs. Id.

The Court finds Bratic's proposed methodology unpersuasive for several reasons. First, the Court cannot determine whether Volvo's warranty database contains data sufficient to identify repairs attributable to the Sunroof Defect. Bratic suggests only that the database reflects "repairs related to sunroof drainage"[32] and concedes that he had not fully reviewed or analyzed the data. Id. ¶ 28. Second, Bratic does not explain how he intends to "use the[] percentages" of warranty claims to calculate the likelihood that a car will later experience the Sunroof Defect. And even if he had, the fact that a class member "experienced" the defect does not necessarily mean she suffered out-of-pocket damages as a result.

---

[32] As noted above, a record reflecting general repairs related to sunroof drainage would not necessarily implicate the Sunroof Defect without more information.

Finally, and most problematically, Bratic's methodology bears no logical relation to the class Plaintiffs seek to certify. It is underinclusive because it purports to measure the percentage of consumers who experienced the Sunroof Defect after expiration of the warranties but not those who were denied warranty coverage or elected to seek repairs from a third-party service center during the warranty period.[33] Simultaneously, it is overinclusive because it purports to calculate the percentage of all Class Vehicles that experienced the Sunroof Defect post-warranty, whereas the Class Definition is limited to consumers who purchased a Class Vehicle directly from Defendants.

The Court is unpersuaded by Bratic's report because it fails to provide even an "approximation" of the aggregate injury suffered by, or class-wide restitution available to, Out-of-Pocket class members.[34] And without a sufficient basis for class-wide measurement, any quantum of "injury" or restitution depends on individual proof of damages resulting from the Sunroof Defect.[35] See Clark v. Prudential Ins. Co. of Am., 289 F.R.D. 144, 189 (D.N.J. 2013) (denying certification of UCL unfairness claim because "individualized considerations predominate the inquiry as to conduct, harm or injury, and equitable relief"); In re Facebook, Inc., PPC Advert. Litig., 282 F.R.D. 446, 461 (N.D. Cal. 2012), aff'd, 588 F. App'x 733 (9th Cir. 2014) (finding no

---

[33] The Class definition makes no reference to the warranty period.

[34] The Court need not determine whether Plaintiffs have shown the ability to measure injury or restitution as to Current Owner class members. Certification of a California class consisting only of current owners is presently impossible because Kruger, Plaintiffs' proposed California representative, has sold his Class Vehicle and would not belong to such class. See Necker Decl. Ex. 2.

Regardless, Bratic's analysis of aggregate repair costs is similarly deficient because it measures the total cost to mitigate the Sunroof Defect in all "Class Vehicles still in use" and does not account for (a) consumers who purchased Class Vehicles from third parties or outside the class period or (b) former owners who suffered no conceivable injury because they never experienced leakage, may never have even known the alleged defect existed, and resold their vehicles at fair market value. See Bratic Report ¶¶ 21-25.

[35] Plaintiffs' damages model is also not "consistent with its liability case," Comcast Corp., 569 U.S. at 35, because it provides no methodology to determine whether, or to what extent, a particular class member suffered out-of-pocket loss.

predominance because plaintiffs "ha[d] not established that the appropriateness of and entitlement to restitution can be said to constitute a common question that can be resolved for all members of the class in a single adjudication").

Plaintiffs have therefore failed to demonstrate predominance as to their UCL claims.

### 4.    Florida Deceptive and Unfair Trade Practices Act (Count VII)

Defendants argue that Plaintiffs cannot show predominance as to their FDUTPA claim due to, among other things, individual questions as to causation and damages.  The Court agrees.

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  A consumer seeking damages must establish "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983 (11th Cir. 2016) (citing City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008)).  "Actual damages" under the FDUTPA means "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  Id. at 986 (citing Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984)) (quotation marks omitted). Plaintiffs' FDUTPA claim suffers from the same shortcomings as their NJCFA claim.  First, individual questions of causation and injury defeat predominance as to the Out-of-Pocket class members.  See supra Section IV.B.1.a.  Second, Plaintiffs have offered no method for calculating the decrease in market value suffered by Current Owners, which is the sole permissible measure of damages under the FDUTPA.[36]  See supra Section IV.B.1.b.

---

[36] Like the NJCFA, the FDUTPA permits a class-wide inference of causation in at least some diminution-of-value cases.  See, e.g., Carriuolo, 823 F.3d at 986; Just. v. Rheem Mfg. Co., 318 F.R.D. 687, 696-97 (S.D. Fla. 2016).  The Court need not determine the parameters of this presumption in light of Plaintiffs' inability to prove a decrease in market value with common evidence.

Plaintiffs argue that the FDUTPA does not require manifestation of a defect as a prerequisite for recovery and urges the Court to accept damages "represented by the cost to remedy the Sunroof Defect." ECF No. 433, at 35. The Court agrees that manifestation of a defect is not necessarily required to recover under the FDUTPA. See Collins v. DaimlerChrysler Corp., 894 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004). However, the cases relied upon by Plaintiffs show that any measure of recovery—whether a defect manifests or not—depends on whether the defect impacts the product's market value. See id. at 990-91 (defining alleged injury arising from defective seatbelts as "insufficient product value"); Carriuolo, 823 F.3d at 987 (holding that diminution of value can be proven on a class-wide basis by measuring alleged misrepresentation's aggregate impact of "negotiating leverage" and "market demand"); Davidson v. Apple, Inc., No. 16-4942, 2018 WL 2325426, at *21 (N.D. Cal. May 8, 2018) (denying Rule 23(b)(3) certification on FDUTPA claim where record showed that alleged defect manifested in 5.6 percent of products, and plaintiff's damages failed to measure "how much consumers overpaid . . . assuming a roughly 5.6 percent or less chance that consumers would experience the . . . defect").[37]

Plaintiffs have not demonstrated that the FDUTPA permits recovery for the cost to remedy an undisclosed, latent defect without showing that the alleged defect tangibly impacts the product's market value. They have consequently failed to establish predominance on their FDUTPA claim.

### 5. Massachusetts Consumer Protection Law (Count VI)

Defendants maintain that Plaintiffs' Massachusetts Chapter 93A claim depends on individualized inquiries as to whether the Sunroof Defect manifested. Again, the Court agrees.

---

[37] Davidson considered this issue in terms of whether the plaintiff's damages model "matche[d] her theory of liability." 2018 WL 2325426, at *21 (citing Comcast, 569 U.S. at 35). But whether expressed as part of Plaintiffs' prima facie case or damages model, the result is the same: Plaintiffs must provide some method for (a) determining whether the Sunroof Defect decreased the market value of Class Vehicles; and (b) measuring that reduced market value on a class-wide basis.

Chapter 93A provides a cause of action to a consumer who has "'been injured by another person's use or employment of an unfair or deceptive act or practice." Iannacchino, 888 N.E.2d at 885 (quoting Mass. Gen. Laws c. 93 § 9). The Massachusetts Supreme Court has limited the scope of cognizable "injuries" under Chapter 93A. "[A] bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product that is 'defective,' or suffers from 'safety-related defects,' does not suffice to state a viable claim." Id. at 888 (citing Schaer v. Brandeis Univ., 735 N.E.2d 373 (Mass. 2000)).

Where a plaintiff alleges an unlawful omission but suffered no personal injury or property damage, she must identify a "legally required standard," i.e., a regulatory standard mandated by the government, that "the vehicles were at least implicitly represented as meeting, but allegedly did not." Id.; see also In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), No. 03-4558, 2010 WL 2813788, at *77-78 (D.N.J. July 9, 2010) ("[M]ere allegations of a 'defect' unmoored to a violation of a legally required standard does not suffice to state a claim for injury based on purely economic loss under [Chapter 93A].").[38]

Plaintiffs have not alleged that the Class Vehicles were in violation of a regulatory standard or other government-mandated requirement. Each class member—whether seeking out-of-pocket or diminution-of-value damages—must therefore prove personal injury or property damage caused by the Sunroof Defect. As with Plaintiffs' other consumer protection claims, such questions defeat predominance on their Chapter 93A claim.

---

[38] Plaintiffs argue that Iannacchino is limited to claims alleging a manufacturer's implicit representation of compliance with regulations, relying on Crane v. Sexy Hair Concepts, LLC, No. 17-10300, 2017 WL 8728961 (D. Mass. Oct. 10, 2017). Crane, however, held only that Iannacchino does not apply to claims arising from affirmative misrepresentations. Id. at *4 & n.3. It is inapposite to this action, which arises from an alleged omission.

### 6.      Warranty Claims

Defendants further argue that individual questions as to manifestation and causation prevent predominance as to Plaintiffs' claims for breach of implied warranty, breach of express warranty, and breach of the implied covenant of good faith.  The Court agrees.

Each of Plaintiffs' warranty claims require proof of causation.  See Marcus, 687 F.3d at 600 n.8.[39]  And once again, individual questions as to whether each class member suffered damages caused by the Sunroof Defect plague Plaintiffs' claims on behalf of Out-of-Pocket class members.  See supra Section IV.B.1.a; Marcus, 687 F.3d at 604-05 (reversing certification of implied warranty, express warranty, and good faith and fair dealing claims due to individual questions as to whether alleged defect caused out-of-pocket injuries).

To the extent Plaintiffs bring their warranty-based claims on a diminution-of-value theory, they have failed to demonstrate predominance for independent reasons, which the Court addresses in turn.

### a.      Breach of Express Warranty (Count II)

A plaintiff asserting breach of express warranty must prove (1) defendant's "affirmation of fact or promise" related to goods; (2) that defendant's statement became "part of the basis of the bargain;" and (3) defendant's breach of the express warranty.  See Elias v. Ungar's Food Prod., Inc., 252 F.R.D. 233, 250 (D.N.J. 2008); Weinstat v. Dentsply Internat., Inc., 103 Cal. Rptr. 3d 614, 625-26 (Cal. App. 2010); Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1389 (S.D. Fla. 2014); Softub, Inc. v. Mundial, Inc., 53 F. Supp. 3d 235, 252 (D. Mass. 2014).

---

[39] Plaintiffs maintain, and Defendants do not dispute, that the elements of these claims are materially similar under each of the relevant state's law.

Plaintiffs allege that Defendants breached express warranties that (a) the Class Vehicles were "of high quality and, at minimum, would actually work properly," and (b) Defendants would repair and replace defective systems. SAC ¶¶ 142-44. They contend that class certification is appropriate because these claims "arise out of uniform contracts: Volvo's new vehicle and certified pre-owned limited warranties." ECF No. 433, at 40. The Court is unpersuaded.

At the threshold, Plaintiffs have pointed to no record evidence suggesting that each class member received a materially uniform express warranty. The Court may not simply accept their claim of uniformity to find predominance, which like all Rule 23 requirements, must be established by a preponderance of the evidence. Without such evidence, an express warranty claim requires individual determinations as to whether each class member received an express warranty and, if so, the warranty's scope.

Moreover, Defendants have proffered a sample warranty, applicable to 2006 Class Vehicles, which limits Defendants' obligations to "repairs required to Volvo passenger vehicles due to defects in material or workmanship and occurring under normal use" during a period of four years or 50,000 miles. See ECF No. 72.9 at 13.[40] Thus, even assuming the express warranties permit recovery for diminution of value—an issue the Court does not reach—each class member must still separately prove that they discovered the Sunroof Defect during the warranty period, that they requested repairs related to the Sunroof Defect, and that Defendants denied such repairs.[41]

See, e.g., Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 525 F. App'x 94, 105-06 (3d Cir. 2013) ("New Jersey courts have intimated that plaintiffs can only recover for breach of warranty if the

---

[40] Plaintiffs have not disputed this characterization of Defendants' warranty obligations.

[41] Some courts have held that questions as to whether a consumer presented a vehicle for repair or was denied repairs do not defeat predominance where such information can be gleaned from the defendant's own records. See, e.g., Schwartz, 2014 WL 4272018, at *13; In re Myford Touch Consumer Litig., No. 13-3072, 2016 WL 7734558, at *25 (N.D. Cal. Sept. 14, 2016). Here, however, Plaintiffs have not affirmatively demonstrated that Defendants' warranty records can identify requested repairs attributable to the Sunroof Defect. See supra p.27; Bratic Report ¶ 27.

defects were discovered during the warranty period."); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) ("The general rule [under California law] is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed.").[42]

Lastly, though Plaintiffs allude to allegations that the limitations in Defendants' warranties are "unconscionable," ECF No. 446, at 27-28, they have failed to suggest why the warranties are unconscionable or what common proof they intend to introduce to prove unconscionability. Critically, an express warranty is not unconscionable simply because a manufacturer "created a limited warranty designed to avoid fixing the defect," even if the defendant "knew with certainty" a malfunction would occur just after the warranty expires. See Argabright v. Rheem Mfg. Co., 258 F. Supp. 3d 470, 482-83 (D.N.J. 2017) (collecting cases). Without more information concerning the nature of Plaintiffs' unconscionability claim, the Court cannot determine whether it is subject to common proof.

In short, Plaintiffs have not demonstrated that either core element of their express warranty claims—the existence of an express warranty and its breach—is subject to common proof. Common questions therefore do not predominate.

---

[42] Relatedly, claims for breach of express or implied warranty under California law require proof of an actual malfunction or proof that a malfunction was substantially certain to occur. See, e.g., Am. Honda Motor Co. v. Superior Ct., 132 Cal. Rptr. 3d 91, 96 (Cal. App. 2011) ("[W]hether each proposed class member's third gear malfunctioned, if it will malfunction, how it malfunctioned and why it malfunctioned are individual questions not amenable to common proof.").

The SAC alleges that the Sunroof Defect "inevitably" causes damages. SAC ¶ 2. However, as the certainty of malfunction is a fact "necessary to determine whether the predominance requirement is met," Plaintiffs must prove it by a preponderance at the class certification stage. See Marcus, 687 F.3d at 611; cf. Am. Honda Motor Co., 132 Cal. Rptr. 3d at 98 ("[T]he party moving for class certification must provide . . . evidence of a defect that is substantially certain to result in malfunction during the useful life of the product. This is an issue that must be considered not only to determine the merits of a plaintiff's claim, but also in a class certification motion."). As discussed above, nothing in the record suggests the Sunroof Defect is substantially certain to cause a malfunction. To the contrary, the only record evidence suggests a malfunction is highly unlikely. See supra n.29.

### b. Breach of Implied Warranty of Merchantability (Count III)

The sale of a vehicle implies a warranty that the vehicle will "provide[] safe and reliable transportation." Greene v. BMW of N. Am., No. 11-4220 2013 WL 5287314, at *2 (D.N.J. Sept. 17, 2013) (citation omitted). To recover for breach of the implied warranty, Plaintiffs must show "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were was caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." Marcus, 687 F.3d at 601 n.8 (citing In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II), No. 03-4558, 2008 WL 4126264, at *19 (D.N.J. Sept. 2, 2008)).

Assuming that a breach of implied warranty claim can be maintained based solely on diminution of value, the factfinder must still individually determine whether each Class Vehicle provided "safe and reliable transportation" notwithstanding the Sunroof Defect. In this regard, New Jersey, California, and Massachusetts courts[43] have each imposed some form of manifestation requirement on implied warranty claims. See Stevenson v. Mazda Motor of Am., Inc., No. 14-5250, 2015 WL 3487756, at *13 (D.N.J. June 2, 2015) ("[C]ourts in this District and others have held that the warranty of merchantability is not breached where a car has been driven for years before a defect manifested."); Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 285 (D.N.J. 2011) ("Even if the purported defect has manifested in all of the brewers purchased within the class period, the Court will have to make individual inquiries as to the cause and extent of the defect."); Am. Honda Motor Co., 132 Cal. Rptr. 3d at 96 (holding that California warranty claims require either proof of malfunction or proof that the defect is "substantially certain to manifest in a future malfunction"); Iannacchino, 888 N.E.2d at 889 (holding that where a

---

[43] Plaintiffs do not seek certification of an implied warranty claim under Florida law.

Chapter 93A claim and Massachusetts implied warranty claim are each "based on the same economic theory," the same "injury" requirement applies to both claims).

To prevail, each class member must separately prove that they experienced leakage caused by the Sunroof Defect and that such leakage rendered the Class Vehicle unusable or unsafe. Consequently, common questions do no not predominate over Plaintiffs' implied warranty claims.

### c. Breach of Implied Covenant of Good Faith and Fair Dealing (Count V)

A claim for breach of the implied covenant of good faith and fair dealing consists of at least three elements: (1) an enforceable contract between the parties; (2) some degree of "bad faith" or a "lack of good faith;" and (3) that the defendants' bad faith actions denied the plaintiffs of the benefit of the bargain originally intended by the parties. See Irwin Katz & Assoc., Inc. v. Concepts in Health, Inc., No. 13-1217. 2017 WL 593502, at *23 (D.N.J. Feb. 14, 2017); Thrifty Payless, Inc. v. The Americana at Brand, LLC, 160 Cal. Rptr. 3d 718, 729-30 (Cal. App. 2013); Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 & n.5 (Mass. 2004).[44]

Plaintiffs allege that Defendants breached the covenant of good faith by (a) "failing to notify [class members] of the [Sunroof Defect]" and (b) "failing to fully and properly repair this defect." SAC ¶ 168. Plaintiffs do not meaningfully address the implied covenant as a separate claim, merely contending that Defendants' "knowing misconduct" will be proven with uniform evidence, ECF No. 433, at 42, and suggesting that their good faith claim arises from Defendants' "warranties," ECF No. 446, at 28.

Insofar as Plaintiffs rely on Defendants' alleged failure to repair, the Court finds predominance lacking for the same reasons expressed above with regards to Plaintiffs' express

---

[44] Breach of the implied covenant of good faith and fair dealing is not an independent cause of action under Florida law. Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306, 1313 n.10 (11th Cir. 2009).

warranty claim—that is, the presence of individual issues concerning manifestation of the defect and requests for repairs. Further, Plaintiff's "failure to notify" theory cannot rely on Defendants' alleged pre-purchase failure to disclose the Sunroof Defect, because at that point no enforceable contract between the parties existed. For Current Owners who never experienced leakage, the question therefore becomes whether, by failing to notify class members of the latent Sunroof Defect during the warranty period, Defendants somehow interfered with the class members' right to obtain a repair-and-replace remedy. This theory presents several problems.

First, Plaintiffs have again failed to demonstrate the existence of a uniform, enforceable contract amongst all class members. See supra Section IV.B.6.a.

Second, assuming the sample warranty provided by Defendants is materially similar across all class members, any implied obligation to disclose latent defects would directly contradict the general rules that (1) a manufacturer may limit its liability through a warranty, Argabright, 258 F. Supp. 3d at 482-83, and (2) an express warranty does not extend to defects that lay dormant during the warranty period, Gotthelf, 525 F. App'x at 105-06. See also Irwin Katz & Assoc., Inc., 2017 WL 593502, at *24 ("[T]he implied covenant cannot create rights and duties not otherwise provided for in the existing contractual relationship, and instead focuses on the manner of performance.").

Third and finally, while the expectations of parties to a bargain are judged by an objective standard, a factfinder must still examine each transaction to determine the parties' reasonable expectations. See e.g., Wilson v. Amerada Hess Corp., 168 N.J. 236, 246 (2001). Plaintiffs' proposed class consists of both new and used car buyers who purchased their respective Class Vehicles from different Volvo dealerships throughout their respective states.[45] Plaintiffs have not

---

[45] This fact distinguishes the instant matter from the cases relied upon by Plaintiffs. Schwartz, 2014 WL 4272018, at *1, involved allegations of a uniform surcharge accompanying uniform contracts entered into through the Internet. In

explained what evidence they will use to prove these potentially varied consumer expectations on a class-wide basis. See, e.g., Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1032 (8th Cir. 2010) (affirming denial of class certification on claim for breach of implied covenant arising from sale of annuities because "expectations are likely to vary among members of the putative class based on, among other things, each purchaser's individual interaction with sales agents").

Plaintiffs have therefore failed to demonstrate predominance as to any of their claims. The Court denies certification of the Rule 23(b)(3) Classes.

## C.      Rule 23(b)(2) – Injunctive Relief

Defendants last argue that certification of the Rule 23(b)(2) Classes are inappropriate. The Court agrees.

Rule 23(b)(2) requires a showing that Defendants have "acted or refused to act on grounds generally applicable to the class," and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Beck v. Maximus, Inc., 457 F.3d 291, 301 (3d Cir. 2006) (citing Fed. R. Civ. P. 23(b)(2)). A plaintiff seeking Rule 23(b)(2) certification must also show that the class is "cohesive," such that an "indivisible" remedy will benefit all class members. Gates v. Rohm & Haas Co., 655 F.3d 255, 264 (3d Cir. 2011) (citing Wal-Mart Stores, Inc., 564 U.S. at 350). The Court has "discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998) (citation omitted).

Plaintiffs request certification of four statewide classes consisting solely of consumers who "as of the date of the Court's class certification order still own [a] Class Vehicle." ECF No. 499,

---

re Checking Account Overdraft Litig., 307 F.R.D. 656, 673 (S.D. Fla. 2015), likewise arose from "standardized account agreement[s] and overdraft practices."

at 2. The SAC seeks an injunction requiring Defendants to (a) "repair, recall, and/or replace the Class Vehicles;" (b) "extend the applicable warranties to a reasonable period of time," and (c) "provide [class members] with appropriate curative notice regarding the existence and cause of the design defect." SAC at 61-62.

At the outset, Plaintiffs' proposed California and Florida Rule 23(b)(2) Classes fail because neither has a class representative. Kruger (California) and McGary (Florida) no longer own their respective Class Vehicle. See Necker Decl. Ex. 2; McGary Resp. to Interrogatories, at 5. The Court also may not certify Plaintiffs' NJCFA or Massachusetts Chapter 93A claims because Plaintiffs may not pursue those claims on behalf of class members who have not experienced leakage. See supra Sections IV.B.1.b & IV.B.5; see also Clark v. Prudential Ins. Co. of Am., 736 F. Supp. 2d 902, 920 (D.N.J. 2010) ("Ascertainable loss is a required element of a NJCFA claim, whether the plaintiff seeks injunctive relief or damages.").

Finally, the Court declines to certify Plaintiffs' warranty claims under New Jersey and Massachusetts law because the proposed classes lack cohesiveness. The individualized issues discussed above in connection with the Rule 23(b)(3) inquiry, supra Section IV.B.6, similarly destroy the "indivisible nature" of the requested injunctive relief. See Wal-Mart Stores, Inc., 564 U.S. at 350 (holding that Rule 23(b)(2) certification is inappropriate unless conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them"); Barnes, 161 F.3d at 142 ("A [Rule 23](b)(2) class may require more cohesiveness than a [Rule 23](b)(3) class").[46]

---

[46] Rule 23(b)(2) seeks to remedy "group" injuries. Barnes, 161 F.3d at 143 n.18. Consequently, "[t]he members of a [Rule 23](b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender." Id. (citation and quotation marks omitted). Here, by contrast, the proposed class members seek relief arising from their individual and independent interactions with Defendants.

Moreover, the relief sought by Plaintiffs relates primarily to money damages. Courts in this District have denied Rule 23(b)(2) certification on this ground where, as here, a proposed class "simultaneously seek[s] an affirmative injunction requiring . . . repairs to be made and the monetary costs of those repairs." See, e.g., In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), No. 03-4558, 2012 WL 379944, at *39 (D.N.J. Feb. 6, 2012);[47] Maloney v. Microsoft Corp., No. 09-2047, 2011 WL 5864064, at *2 n.1 (D.N.J. Nov. 21, 2011).

Plaintiffs have consequently failed to prove their right to Rule 23(b)(2) certification.

## V.     CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification, ECF No. 498, is **DENIED**. An appropriate order follows.

Dated: July 15, 2021

> */s Madeline Cox Arleo*
> HON. MADELINE COX ARLEO
> UNITED STATES DISTRICT JUDGE

---

[47] Like Plaintiffs here, the proposed class in <u>Ford Motor Co.</u> additionally sought an injunction "requiring Ford to warn all potential purchasers of the unsafe nature of the E–350." 2012 WL 379944, at *38.